Marc N. Bernstein (SBN 145837)
mbernstein@blgrp.com
The Business Litigation Group, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone:  415.765.6634
Facsimile:   415.283.4804

Gene J. Brockland (Mo. State Bar No. 32770)
Christopher O. Miller (Mo. State. Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amdunsendavislaw.com
comiller@amundsendavislaw.com
Amundsen Davis, LLC
120 South Central, Suite 700
St. Louis, MO 63105
Telephone:  314.719.3732
Facsimile:   314.719.3733

William J. O'Brien (SBN 99526)
wobrien@onellp.com
One LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA  92660
Telephone:  310.866.5157
Facsimile:   310.943.2085

*Attorneys for Plaintiff, Donald Wakefield*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br><br>**PLAINTIFF DONALD WAKEFIELD'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: December 12, 2022<br>Time:            1:30 P.M.<br>Courtroom:    9B<br>Complaint Filed:  September 27, 2021<br>Trial Date:  February 21, 2023<br><br>*Assigned to: Hon. Cormac Carney* |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................1

II.    UNCONTROVERTED MATERIAL FACTS ...........................2

III.   SUMMARY JUDGMENT IS APPROPRIATE ABSENT GENUINE DISPUTES OF
       MATERIAL FACT ...........................................5

IV.    OLEN IS INDISPUTABLY LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT ......6

       A.    Mr. Wakefield's Owns a Valid Copyright in *Untitled* .....................7

       B.    The Unauthorized Public Display Of *Human Nature's Many Faces* and
             *A Tear Must Fall* Infringed Mr. Wakefield's Copyright In *Untitled* ..8

       C.    *Human Nature's Many Faces* and *A Tear Must Fall* Were Publicly
             Displayed by Olen Without Authorization from at Least January 19,
             2018, until 2021 ...........................................9

             1.    *Human Nature's Many Faces* and *A Tear Must Fall* Were
                   Publicly Displayed at Quantum Town Center from 2018 to 2021
                   ........................................................9

             2.    Quantum Town Center is Owned and Controlled by Olen .....10

             3.    The Public Display at Quantum Town Center Was Unauthorized
                   ........................................................10

V.     OLEN IS ALSO LIABLE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT ......12

VI.    OLEN IS LIABLE FOR VICARIOUS COPYRIGHT INFRINGEMENT AS WELL ........13

VII.   OLEN IS LIABLE FOR WILLFUL COPYRIGHT INFRINGEMENT AND STATUTORY
       DAMAGES UNDER 17 U.S.C. §504 ...........................13

       A.    Courts Find Willfulness as a Matter of Law Even on Facts Less
             Compelling than Those Here ...........................13

       B.    Olen Violated the *Wakefield I* Permanent Injunction .......................16

       C.    Olen Submitted a False Declaration ..................................17

VIII.  THE COUNTERCLAIMS FAIL BECAUSE WAKEFIELD'S RELEASE DOES NOT
       EXTEND TO  OLEN'S WILLFUL INFRINGEMENT THREE YEARS LATER .........18

i

A.     Releases for Future Intentional Torts Are Unenforceable ..................18

B.     The *Wakefield II* Settlement Agreement Does Not Release Claims for Future Infringement ...........................................................................19

IX.    CONCLUSION ...............................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ............................................... 5

*American Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) .................................. 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................ 5, 6

*Appel v. Boston Nat'l Title Agency, LLC*,
3:18-CV-0873-RSH-AHG, 2022 WL 3582776 (S.D. Cal. Aug. 19,
2022) ................................................................ 19

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
352 F. Supp. 2d 1119 (C.D. Cal. 2005) ........................ 7

*Atl. Recording Corp. v. Media Group, Inc.*,
CV0006122FMCMCX, 2001 WL 37132610 (C.D. Cal. Aug. 14,
2001) ............................................................ 15, 16

*Bell v. Wilmott Storage Services, LLC*
(9th Cir. 2021) 12 F.4th 1065 .................................. 6

*Broad. Music, Inc. v. Crawford*,
1:12-CV-01903-JLT, 2014 WL 1285660 (E.D. Cal. Mar. 28, 2014).......... 15, 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................ 5

*Clark v. Bear Stearns & Co., Inc.*,
966 F.2d 1318 (9th Cir.1992) .................................. 7

*Dolman v. Agee*,
157 F.3d 708 (9th Cir. 1998) ............................... 14, 16

*Erickson Productions, Inc. v. Kast*
(9th Cir. 2019) 921 F.3d 822 ................................. 13

iii

*Farnham v. Superior Court (Sequoia Holdings, Inc.)*,
　60 Cal. App. 4th 69, 70 Cal. Rptr. 2d 85 (1997) .................................................19

*Frittelli, Inc. v. 350 N. Canon Drive, LP*,
　202 Cal. App. 4th 35, 135 Cal. Rptr. 3d 761 (2011) .........................................19

*Kamilche Co. v. United States*,
　53 F.3d 1059 (9th Cir. 1995) ...............................................................................7

*Kashani v. Tsann Kuen China Enter. Co.*,
　118 Cal. App. 4th 531, 13 Cal. Rptr. 3d 174 (2004) .........................................19

*L.A. Printex Indus., Inc. v. Lia Lee, Inc.*,
　CV 08-1836ODW(PJWX), 2009 WL 789877 (C.D. Cal. Mar. 23,
　2009) ..................................................................................................... 14, 16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
　658 F.3d 936 (9th Cir. 2011) ..............................................................................12

*Oyeniran v. Holder*,
　672 F.3d 800 (9th Cir. 2012) ................................................................................7

*Parklane Hosiery Co., Inc. v. Shore*,
　439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)........................................7

*Peer Int'l Corp. v. Pausa Records, Inc.*,
　909 F.2d 1332, 1335 (9th Cir. 1990) .............................................................14, 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
　494 F.3d 788 (9th Cir. 2007) .........................................................................12, 13

*Sanrio, Inc. v. Ronnie Home Textile, Inc.*,
　CV1406369RSWLJEMX, 2016 WL 5956096 (C.D. Cal. Jan. 5,
　2016) ..................................................................................................... 15, 18

*Sega Enter. Ltd. v. MAPHIA*,
　948 F.Supp. 923 (N.D.Cal.1996) ..................................................................13, 15

*SI 59 LLC v. Variel Warner Ventures, LLC*,
　29 Cal. App. 5th 146, 239 Cal. Rptr. 3d 788 (2018) .........................................18

*Soremekun v. Thrifty Payless, Inc.*,
　509 F.3d 978 (9th Cir. 2007) ................................................................................5

*Wall Mountain Co., Inc. v. Edwards*,
  C 08-2579 PVT, 2010 WL 4940778 (N.D. Cal. Nov. 30, 2010)................ 15, 16

*Yeager v. Bowlin*
  693 F.3d 1076 (9th Cir. 2012) .......................................................... 10

**Statutes**

17 U.S.C. §106.............................................................................. 6, 10

17 U.S.C. §106(1), (2), (5)................................................................. 6

17 U.S.C. §504..................................................................*passim*

Cal. Civ. Code § 1668................................................................. 18, 19

Copyright Act ............................................................. 6, 10, 13, 19

RICO ............................................................................................ 3

**Other Authorities**

Fed R. Civ. P. 56(a) .......................................................................... 5

Fed. R. Civ. P. 56(c)(1)(A)–(B)......................................................... 6

Fed. R. Civ. P. 56(c)(2)..................................................................... 6

Fed. R. Civ. P. 56(g) ........................................................................ 6

**PLAINTIFF DONALD WAKEFIELD'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.   INTRODUCTION

Some seven years after being found liable for infringing Plaintiff Donald Wakefield's copyrighted sculpture *Untitled* seven times at commercial properties in California—and after then having been caught concealing an eighth infringing sculpture at another California property—Defendants Igor Olenicoff and Olen Properties Corp. (collectively, the "Olen Parties") were caught again.   Mr. Wakefield received a tip disclosing that the Olen Parties had lied about and concealed two more infringing sculptures, which were on public display at an Olen property in Florida.  Despite an award of $450,000 by the jury in the original lawsuit, and despite the permanent injunction prohibiting further infringement and ordering them to remove and destroy all of their knockoff sculptures, the Olen Parties decided to defy the Court, rely on blatantly false representations of compliance, and gamble that Mr. Wakefield would never find out what they were doing on the other side of the country.

The Olen Parties have no real defense to Mr. Wakefield's claim of copyright infringement.  The validity of Mr. Wakefield's copyright and the infringement of that copyright by the knockoffs that the Olen Parties call *Human Nature's Many Faces* and *A Tear Must Fall* were already determined after a full jury trial in the first Wakefield lawsuit.  The Olen Parties openly admit that the infringing works were displayed on their properties years after they represented that all such works had been destroyed.   Instead, they attempt to somehow derive protection from a settlement agreement that they fraudulently obtained while concealing the infringements in Florida.  In a classic case of blaming the victim, they even purport to sue Mr. Wakefield for supposedly violating the settlement.  But that fraudulently obtained agreement does not and cannot exempt them from liability for their concealed acts of post-settlement infringement.  The Court should bring this charade to an end and grant Mr. Wakefield partial summary judgment on his claims for copyright infringement against Olen and on both of the Olen Parties' counterclaims

1

for breach of the settlement agreement.

## II.   UNCONTROVERTED MATERIAL FACTS

This is the third lawsuit that Mr. Wakefield has had to file against the Olen Parties for copyright infringement based on their unauthorized display of copies of his large, granite sculpture referred to as *Untitled.*

Mr. Wakefield's first lawsuit against the Olen Parties (*Wakefield I*) took place in this District and concerned seven knockoff copies or forgeries of *Untitled* that were on public display at Olen-controlled properties in California.  (Statement of Undisputed Material Facts ("SUMF") at ¶¶1-2.) At trial, the jury was presented evidence of Mr. Wakefield's copyright registration (SUMF at ¶4) and photographs of the knockoff sculptures displayed on the Olen Parties' properties in California, which they referred to as *Human Nature's Many Faces* and *A Tear Must Fall*. (SUMF at ¶¶6, 8.)[1]  The Olen Parties were represented by counsel. (SUMF at ¶9.) Following the close of evidence, the jury returned a verdict finding that: Mr. Wakefield owned a valid copyright in the sculpture *Untitled* (SUMF at ¶10); the Olen Parties committed direct, contributory and vicarious infringement of the copyright (SUMF at ¶¶11-15); and Mr. Wakefield sustained actual damages totaling $450,000 (SUMF at ¶16).

Following the jury's verdict in *Wakefield I*, the Court entered a permanent injunction against the Olen Parties, barring them from infringing Mr. Wakefield's copyrighted sculpture and ordering them to destroy all copies of *Human Nature's Many Faces* and *A Tear Must Fall*.  (SUMF at ¶17.)  The jury verdict and permanent injunction from *Wakefield I* were later upheld on appeal by the Ninth Circuit Court

---

[1] During the course of the *Wakefield I* litigation, the Olen Parties repeatedly referred to the infringing sculptures by the names *Human Nature's Many Faces* and *A Tear Must Fall*.  Their use of these names for those sculptures, as well as for the ninth and tenth infringing sculptures at issue in this case, reinforces the applicability of collateral estoppel in this case and is not intended to indicate that they constitute separate works from the copyrighted sculpture at issue, *Untitled.*

of Appeals. (SUMF at ¶18.) Thereafter, the Olen Parties filed sworn declarations with the Court in *Wakefield I* representing that all of the infringing works had been removed from and destroyed in July of 2017. (SUMF at ¶¶23-26.)

Mr. Wakefield filed his second lawsuit against the Olen Parties (*Wakefield II*) after discovering another, eighth infringing copy on display that had not been previously disclosed by the Olen Parties during *Wakefield I*. (SUMF at ¶¶20-22.) This second lawsuit was resolved by way of a settlement agreement (the "Settlement Agreement") between the parties executed on January 18, 2018. (SUMF at ¶¶27-28.) The Olen Parties' counsel assured Mr. Wakefield's counsel that all copies of the sculptures had been destroyed. (SUMF at ¶¶24-25.) Olen Properties filed a Notice of Compliance with the Court, stating that "all copies of *Human Nature's Many Faces* and *A Tear Must Fall* have been removed and destroyed." (SUMF at ¶26.)

The instant case arose following the discovery of two more previously undisclosed infringing copies of Mr. Wakefield's copyrighted sculpture, those two being the ninth and tenth copies now discovered. As a result of receiving a tip, Mr. Wakefield learned that, despite the Olen Parties' prior representations about having destroyed all of the infringing works, Olen continued to publicly display a copy of *Human Nature's Many Faces* and *A Tear Must Fall* at its property in Florida from January 19, 2018, until sometime in 2021. (Wakefield Decl. at ¶¶9-11 & Exs. A-B; SUMF at ¶¶29-33.) Following his discovery of these additional, previously undisclosed infringing copies, Mr. Wakefield filed this lawsuit against the Olen Parties for direct, contributory and vicarious copyright infringement and statutory damages for under 17 U.S.C. §504 because the infringement was committed willfully (Counts I-III); civil conspiracy (Count IV); fraud in the inducement of the *Wakefield II* Settlement Agreement (Count V); and civil RICO (Count VI).

For their part, the Olen Parties have each filed counterclaims against Mr. Wakefield for allegedly breaching the *Wakefield II* Settlement Agreement by filing

the instant action (Counterclaim Count I) and further asking the Court to order specific performance of the *Wakefield II* Settlement Agreement (Counterclaim Count II) by way of dismissing Mr. Wakefield's claims in this lawsuit or ordering him to return the consideration previously paid by the Olen Parties as part of the same.[2]

The Court should now enter partial summary judgment in favor of Mr. Wakefield and against Olen on his claims of direct, contributory and vicarious copyright infringement and statutory damages under 17 U.S.C. §504 because the Olen Parties are collaterally estopped from denying that Mr. Wakefield owns the copyright in *Untitled* and that the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* constitutes infringement of that copyright. Undisputed facts establish that Olen publicly displayed *Human Nature's Many Faces* and *A Tear Must Fall* on its property at Quantum Town Center in Boynton Beach, Florida, from January 19, 2018, until sometime in 2021, without authorization.

The Court should further enter summary judgment in favor of Mr. Wakefield on the Olen Parties' counterclaims for the alleged breach and specific performance of the *Wakefield II* Settlement Agreement, because that fraudulently obtained agreement does not shield the Olen Parties from liability for future infringement taking place after the agreement was executed, and because it is unenforceable under California law to the extent it precludes liability for the Olen Parties' intentional, unlawful acts.

////

////

---

[2] The Court previously dismissed the Olen Parties' other counterclaim for a declaratory judgment regarding the validity of Mr. Wakefield's copyright registration for *Untitled* because the same issue was previously litigated in *Wakefield I* and the Olen Parties are barred from re-litigating it under the doctrine of issue preclusion. (Doc. 91).

4

### III.   SUMMARY JUDGMENT IS APPROPRIATE ABSENT GENUINE DISPUTES OF MATERIAL FACT.

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the

moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252. "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact − including an item of damages or other relief − that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## IV.   OLEN IS INDISPUTABLY LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT.

"To establish direct copyright infringement, [the plaintiff] must show that he owns the copyright, and that [the defendant] violated one of the exclusive rights in copyright set forth in 17 U.S.C. §106." *Bell v. Wilmott Storage Services, LLC* (9th Cir. 2021) 12 F.4th 1065, 1071. Under the Copyright Act, this includes a violation of an owner's exclusive rights to: "reproduce the copyrighted work in copies"; "prepare derivative works based upon the copyrighted work"; and "display the copyrighted work publicly." 17 U.S.C. §106(1), (2), (5).

Mr. Wakefield is entitled to summary judgment against Olen for direct copyright infringement because the jury in *Wakefield I* already determined that (A) he owns the copyright to *Untitled;* and (B) the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* constitutes infringement of the copyright; additionally, it is undisputed that (C) Olen publicly displayed *Human Nature's Many Faces* and *A Tear Must Fall* on its commercial property at Quantum Town Center in Boynton Beach, Florida, from 2014 until sometime in 2021, without authorization.

////

////

6

### A.    Mr. Wakefield's Owns a Valid Copyright in *Untitled*.

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir.1992).  "The rationale underlying the doctrine is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided a second time."  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1124 (C.D. Cal. 2005).  "Collateral estoppel … has dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979)

To invoke collateral estoppel, a party must demonstrate: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012).  "[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995).

Applied here, collateral estoppel precludes the Olen Parties from challenging the validity of Mr. Wakefield's copyrights to *Untitled*.  This was an element of Mr. Wakefield's claims in *Wakefield I* for infringement of the very same copyrighted sculpture.  Indeed, whether or not Plaintiff was the owner of a valid copyright in *Untitled* was the very first question answered by the jury in the special verdict delivered at trial.  (SUMF at ¶10.)  So there is no doubt that the ownership issue was actually litigated and decided in *Wakefield*.  And because the Olen Parties were represented by counsel (SUMF at ¶9) and actively litigated through trial and appeal all the way to seeking review by the Supreme Court (SUMF at ¶18), there is also no question that they had a full and fair opportunity to litigate the issue of ownership

7

in *Wakefield I*.  Accordingly, collateral estoppel precludes Olen from challenging the determination in *Wakefield I* that Mr. Wakefield is the valid owner of the copyright in the sculpture, *Untitled*.

### B.     The Unauthorized Public Display Of *Human Nature's Many Faces* and *A Tear Must Fall* Infringed Mr. Wakefield's Copyright In *Untitled*.

The jury's determination in *Wakefield I* also collaterally estops Olen from re-litigating whether the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* constituted infringement of Mr. Wakefield's copyright in *Untitled*.

This issue is also identical to what the jury decided in *Wakefield I*.  Although the location of the public display is different in this case, the issue of whether the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* alone infringes upon Mr. Wakefield's copyright in *Untitled* is the same.  At the trial in *Wakefield I*, the jury was presented photographs of *Untitled* and the unauthorized knock-offs displayed at Olen's properties in California, which the Olen Parties referred to as *Human Nature's Many Faces* and *A Tear Must Fall*.  (SUMF at ¶¶5-8.)  After the close of evidence, the jury determined that these displays infringed upon Mr. Wakefield's copyright.  (SUMF at ¶11.)  Indeed, in their unsuccessful appeal of the jury's determine in *Wakefield I*, the Olen Parties admitted that this was an issue, stating in their appellate brief:

> Wakefield is an artist who contended that two sculptures ("*Human Nature's Many Faces*" ("*Human Nature*") and "*A Tear Must Fall,*" ("*Tear*")) infringed sculpture entitled "*Untitled . . . .*"

(SUMF at ¶19.)

There can be no dispute that the Olen Parties vigorously contested this issue at trial in *Wakefield I*, in their failed appeal to both the Ninth Circuit Court of Appeals, and even in a petition to United States Supreme Court for certiorari

(SUMF at ¶18), leaving no dispute that they had a full and fair opportunity to litigate the issue.

For these reasons, collateral estoppel precludes re-litigation over whether the unauthorized public display of the sculptures referred to by the Olen Parties as *Human Nature's Many Faces* and *A Tear Must Fall* constituted infringement of Mr. Wakefield's copyrighted work *Untitled*.   As was determined in *Wakefield I*, displaying those works without authorization constituted infringement.

### C. *Human Nature's Many Faces* and *A Tear Must Fall* Were Publicly Displayed by Olen Without Authorization from at Least January 19, 2018, until 2021.

Lastly, Mr. Wakefield is entitled to summary judgment against Olen on his claim for direct copyright infringement because there is no dispute that Olen publicly displayed the infringing copies known as *Human Nature's Many Faces* and *A Tear Must Fall* on its property in Florida from January 19, 2018, until sometime in 2021.

1. <u>*Human Nature's Many Faces* and *A Tear Must Fall* Were Publicly Displayed at Quantum Town Center from 2018 to 2021.</u>

Olen and Olenicoff both flatly admit in their separately filed Answers in the instant case that *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed from 2018 to 2021 at Quantum Town Center. (Doc. 62, at ¶¶38-39; Doc. 63, at ¶¶38-39.)  These are judicial admissions that "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Further, Mr. Olenicoff repeated this admission during his recent deposition and testified that *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed until approximately 2021 at Quantum Town Center.  (SUMF at ¶¶29-30; *see also* Wakefield Decl. at ¶¶9-11 & Exs. A-B (Mr. Wakefield personally saw the sculptures on public display and photographed them.).)  This evidence conclusively

establishes that both *Human Nature's Many Faces* and *A Tear Must Fall* were on public displayed at Olen's property. *See Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.")

 2. <u>Quantum Town Center is Owned and Controlled by Olen.</u>

There is also no dispute that Quantum Town Center is a commercial and retail property complex owned and controlled by Olen. (SUMF at ¶¶31-33.) Olen acknowledged this in a sworn affidavit it filed earlier in this case, stating that Quantum Town Center is a retail property complex operated by Olen and owned by an Olen subsidiary called Quantum Town Center, LLC (Doc 22-2, ¶¶5-9) by and sworn deposition testimony by Mr. Olenicoff on behalf of Olen and as its corporate representative in a different lawsuit earlier this year. (Brockland Decl., Ex. 25 at 10:13-18 (Olenicoff 1-31-22 Deposition Transcript).) Accordingly, the undisputed facts are that *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed at a commercial and retail property complex owned and controlled by Olen duringthe period from January 18, 2018, until 2021.

 3. <u>The Public Display at Quantum Town Center Was Unauthorized.</u>

Lastly, there is no dispute that Olen was not authorized to publicly display *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center. (SUMF at ¶34.)

Under the Copyright Act, the "exclusive right" to publicly display copies of *Untitled* or derivative works belonged to Mr. Wakefield. 17 U.S.C. §106. In his sworn declaration, Mr. Wakefield states unequivocally that he never gave permission to either of the Olen Parties to display his sculpture. *Id.* This leaves no dispute. Only Mr. Wakefield could authorize the display at Quantum Town Center. His sworn declaration establishes that he never did, and the Olen Parties do not allege otherwise.

Olen cannot create a dispute by pointing to Mr. Wakefield's release of "unknown" and "unsuspected" claims in the *Wakefield II* Settlement Agreement either. First, the agreement does not authorize any display of Mr. Wakefield's copyrighted sculpture by the Olen Parties. There is no mention of the Florida knockoffs—which the Olen parties were concealing from Mr. Wakefield—and the parties' clear intent was that all infringing sculptures were eliminated. Nor is there any mention of Quantum Town Center in the release, or any of Olen's Florida properties for that matter. None of the terms in the *Wakefield II* Settlement Agreement even hint at giving the Olen Parties the right to display Mr. Wakefield's copyrighted sculpture at Quantum Town Center. So the agreement cannot create any genuine dispute about whether the display at Quantum Town Center was authorized.

Second, even if Mr. Wakefield's release could somehow be interpreted as a sort of *post hoc* license for any "known or unknown" infringing displays, it would only extend to the date of the settlement itself: January 18, 2018. Even then, there could be no dispute over whether the display was authorized after that date. Accordingly, it remains undisputed that the display was unauthorized during the period from January 19, 2018, until sometime in 2021, when the unauthorized copies were apparently removed.

There is no dispute that *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed on Olen's property without Mr. Wakefield's authorization from January 19, 2018, until sometime in 2021. Because the jury in *Wakefield I* already determined that Mr. Wakefield is the rightful owner of the copyright in *Untitled* and that the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* infringe that copyright, Mr. Wakefield is entitled to summary judgment against Olen for direct copyright infringement.

////

////

## V.    OLEN IS ALSO LIABLE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT.

Contributory liability for copyright infringement requires a showing that the defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  "Material contribution turns on whether the activity in question substantially assists direct infringement," *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) (internal quotation omitted).

There is no dispute that Olen had knowledge that the infringing works, *Human Nature's Many Faces* and *A Tear Must Fall*, were publicly displayed at Quantum Town Center from January 18, 2018, until sometime in 2021.  (SUMF at ¶35.)  The name and location of each was, indeed, included in the application Olen submitted to the City of Boynton Beach Art Commission in 2014 as part of its effort to satisfy municipal ordinances regarding the display of art in public places. (*Id.*) This leaves no question that Olen materially contributed to the public display of those infringing works at Quantum Town Center.

It is also undisputed that, by the time all of its appeals were exhausted in *Wakefield I* in 2017, Olen was well aware that *Human Nature's Many Faces* and *A Tear Must Fall* infringed Mr. Wakefield's copyrights.  Lest there be any doubt, the permanent injunction entered against Olen in *Wakefield I* identified those infringing works by name. (SUMF at ¶17.)

Accordingly, there is no dispute that Olen knew about the infringement at Quantum Town Center from January 19, 2018, until 2021 and had directly participated in putting them there in the first place to satisfy municipal ordinances. For these reasons, Mr. Wakefield is entitled to partial summary judgment against Olen on the issue of liability for contributory copyright infringement.

////

////

## VI.   OLEN IS LIABLE FOR VICARIOUS COPYRIGHT INFRINGEMENT AS WELL.

Vicarious liability for copyright infringement is established by showing that the defendant "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."  *Perfect 10, Inc. v. Visa Intern. Service Ass'n* (9th Cir. 2007) 494 F.3d 788, 802.

The first element of vicarious liability is undisputed in view of Olen's admission to operating the retail and commercial property where *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed from January 19, 2018, until 2021.  (SUMF at ¶¶31-33.)  The second element is also easily satisfied, because Olen admits to its patent relationship with Quantum Town Center and prior efforts to display the infringing works in order to satisfy the Boynton Beach municipal requirements regarding public displays of art.   (SUMF at ¶¶33, 35.) So Olen's financial interest in the infringement is clear as well.

Mr. Wakefield is also entitled to summary judgment against Olen on the issue of liability for vicarious copyright infringement, because there is no dispute that Olen oversaw the infringing conduct and had a direct financial interest in it.

## VII.   OLEN IS LIABLE FOR WILLFUL COPYRIGHT INFRINGEMENT AND STATUTORY DAMAGES UNDER 17 U.S.C. §504.

### A.   Courts Find Willfulness as a Matter of Law Even on Facts Less Compelling than Those Here.

"[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  *Erickson Productions, Inc. v. Kast* (9th Cir. 2019) 921 F.3d 822, 833 Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment.  *Sega Enter. Ltd. v. MAPHIA*, 948 F.Supp. 923, 936 (N.D.Cal.1996).  But ***where it is undisputed that a defendant had prior notice of***

13

*the infringement*—as it is here—courts have repeatedly found willfulness as a matter of law. *See e.g. Peer Int'l Corp. v. Pausa Records*, Inc., 909 F.2d 1332, 1335–36 (9th Cir.1990) (willfulness as a matter of law where defendants received notice of the termination of their license and they continued to sell the copyrighted work anyway); *see also Dolman v. Agee*, 157 F.3d 708, 715 (9th Cir. 1998) ("Because Agee continued to infringe on the song copyrights when he knew that there was a question as to their ownership, and when he was presented with evidence that Dolman was the true owner, the district court did not err in finding that Agee's infringement was willful.").  For example, in *Peer International*, the Ninth Circuit affirmed a summary judgment of willful infringement and an award of $4 million in statutory damages, even though the defendant submitted a "declaration that it was not [its] intention to infringe upon the plaintiffs' copyrights," in view of an admission by the defendant's witness that it had continued to manufacture and distribute products after being notified of license termination.  909 F.2d at 1335-36.  The court held that, "To refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief."  *Id.* at 1336 (citing 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[B], at 14–40.3 (1989)).  The same reasoning must apply even more strongly in the present case, where the defendants were notified of infringement—not just by a licensor—but by a jury, a District Judge, and even the Ninth Circuit, by means of an infringement verdict, damage award, and permanent injunction.  (*See* SUMF 10-18.)

Similar results have obtained in multiple other cases, where courts found willful infringement as a matter of law, even on facts less compelling than those of this case.   For example, in *L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, CV 08-1836ODW(PJWX), 2009 WL 789877, at *7 (C.D. Cal. Mar. 23, 2009), the court found willfulness as a matter of law where the defendant sold the accused product nearly seven months after it "had notice of Plainitff's cease and desist letter.  And

in *Wall Mountain Co., Inc. v. Edwards*, C 08-2579 PVT, 2010 WL 4940778, at *2 (N.D. Cal. Nov. 30, 2010), the court granted summary judgment of willful infringement because the defendant had resumed selling accused products after being notified of the plaintiff's copyright claims, without investigating them. The court held:

> Despite having been notified of Plaintiff's copyright claims, and despite having taken no steps to ascertain whether his sales of the DVDs violated Plaintiff's copyrights, Defendant resumed sales of the DVDs. At a minimum, this constituted reckless[] disregard for the possibility that his sales of the DVDs violated Plaintiff's copyrights.

*Id.*; *see Broad. Music, Inc. v. Crawford*, 1:12-CV-01903-JLT, 2014 WL 1285660, at *6 (E.D. Cal. Mar. 28, 2014) (willfulness as a matter of law where Defendant continued infringement after receiving several telephone calls from copyright owner's representatives); *Sega Enterprises Ltd. v. MAPHIA*, 948 F. Supp. 923, 936 (N.D. Cal. 1996); *Atl. Recording Corp. v. Media Group, Inc.*, CV0006122FMCMCX, 2001 WL 37132610, at *5 (C.D. Cal. Aug. 14, 2001) (willfulness as a matter of law where Defendant admitted that it did not stop filling customer orders for products known to be infringing). There can be no question that the same result should follow here, where Olen had lost a jury trial on infringement of mr. Wakfield's sculpture, had lost on appear. Had been required to pay damages, and had been permanently enjoined from further infringement and ordered to destroy all copies of *Human Nature's Many Faces* and *A Tear Must Fall*. (*See* SUMF at ¶10-18.)

Still further proof of Olen's willfulness is provided by its concealment of the infringement. *See Sanrio, Inc. v. Ronnie Home Textile, Inc.*, CV1406369RSWLJEMX, 2016 WL 5956096, at *9 (C.D. Cal. Jan. 5, 2016) (finding willfulness as a matter of law where defendants took steps to conceal their infringement by "by storing the infringing merchandise in a separate part of

15

Defendants' store, concealed in opaque packaging, and not accessible to the general public …. [and] accessible only to Defendants' employees and customers who had gained Defendants' trust"). There can be no dispute that Olen falsely represented on multiple occasions that it had destroyed these infringing works (SUMF at ¶¶23-26) when, in fact, it had not. (SUMF at ¶¶29-30.) These undisputed facts further demonstrate that Olen's continued infringement was willful.

### B. Olen Violated the *Wakefield I* Permanent Injunction.

Olen's continued display of the very same infringing works that the Court in *Wakefield I* ordered be destroyed as part of its permanent injunction is more than enough to show willfulness. *See Peer*, 909 F.2d at 1335–36. The permanent injunction was abundantly clear: Olen must destroy all copies of *Human Nature's Many Faces* or *A Tear Must Fall.* (SUMF at ¶17.) The injunction ended with: "The Court expects strict compliance with this Judgment." (Brockland Decl., Ex. 11.)

That Olen undisputedly continued to publicly display the infringing sculptures for years thereafter leaves no question that the infringement was willful. Over and over again, defendants with far less official notice than the permanent injunction following a contested jury trial received by Olen have been found to willfully infringe as a matter of law for continuing. *See, e.g., Peer*, 909 F.2d at 1335–36 (willfulness found as matter of law where defendants received notice of the termination of their license and they continued to sell the copyrighted work anyway); *Printex*, 2009 WL 789877, at *7 (willfulness as a matter of law when defendant still sold copyrighted garment 7 months after receiving cease and desist letter); *Wall Mountain Co., Inc.,* 2010 WL 4940778, at *2 (willfulness as a matter of law where Defendant resumed selling copyrighted DVDs after being notified of Plaintiff's copyright claims); *Atl. Recording Corp.*, 2001 WL 37132610 at *5 (willfulness as a matter of law where Defendant admitted that it did not stop filling customer orders for products known to be infringing); *Dolman*, 157 F.3d at 715 (willfulness as a matter of law where Defendant continued to infringe on song

16

copyrights after being presented with evidence that he was not true owner of copyright); *Broad. Music, Inc.*, 2014 WL 1285660 at *6 (willfulness as a matter of law where Defendant continued infringement after receiving several telephone calls from copyright owner's representatives).

Just as with those defendants, there is no dispute about whether Olen's continued infringement here was willful.  Olen knew that *Human Nature's Many Faces* and *A Tear Must Fall* infringed upon Mr. Wakefield's copyright.  Olen knew that the Court in *Wakefield I* had ordered it to destroy all of those works.  And Olen continued to publicly display them anyway.  If that is not willful infringement, then nothing is.

### C.    Olen Submitted a False Declaration.

In addition to the permanent injunction that Olen ignored and violated, it is also undisputed that Olen concealed the infringement by falsely representing on multiple occasions that:

- "all copies and derivative works of *Untitled* had been removed from all Olen controlled properties in July of 2017" (SUMF at ¶23); and

- "all copies of *Human Nature's Many Faces* and *A Tear Must Fall* have been removed and destroyed."  (SUMF at ¶26.)

Both representations were made in writing and filed by Olen with this Court during the course of *Wakefield I* and *Wakefield II*.  *Id.*  Both representations were, we know now, false.  And it is undisputed that, at the time each was made, copies of *Human Nature's Many Faces* and *A Tear Must Fall* were on public display at Olen's property in Florida. (SUMF at ¶¶29-30.)  They had not, as Olen repeatedly represented in writing, destroyed all their knockoffs.  Instead, they continued to be displayed two more of them publicly at Olen's property for years thereafter.

There is no doubt, either, that these falsehoods concealed Olen's continued ongoing infringement in Florida.   Telling Mr. Wakefield and the Court that all of the copies of *Human Nature's Many Faces* and *A Tear Must Fall* had been destroyed

17

concealed the fact that Olen was actually still publicly displaying them on its property in Florida thousands of miles away. These undisputed efforts to conceal the infringement further compel but one conclusion: that Olen's infringement was willful. *See Sanrio, Inc.* 2016 WL 5956096, at *9 (willfulness as a matter of law where defendants took steps to conceal their infringement "by storing the infringing merchandise in a separate part of Defendants' store, concealed in opaque packaging, and not accessible to the general public …. [and] accessible only to Defendants' employees and customers who had gained Defendants' trust.") Accordingly, the Court should enter summary judgment in favor of Mr. Wakefield and against Olen for his claim for statutory damages under 17 U.S.C. §504.

## VIII. THE COUNTERCLAIMS FAIL BECAUSE WAKEFIELD'S RELEASE DOES NOT EXTEND TO OLEN'S WILLFUL INFRINGEMENT THREE YEARS LATER.

Finally, Mr. Wakefield is entitled to summary judgment on the Olen Parties' counterclaims for breach and specific performance of the *Wakefield II* Settlement Agreement. The settlement was not breached. Mr. Wakefield's release did not give the Olen Parties a free pass to willfully infringe Mr. Wakefield's copyrights three years later.

### A.    Releases for Future Intentional Torts Are Unenforceable.

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668.

California courts have repeatedly held that §1668 bars enforcement of any contractual release from liability for future intentional wrongs. *See, e.g., SI 59 LLC v. Variel Warner Ventures*, LLC, 29 Cal. App. 5th 146, 148, 239 Cal. Rptr. 3d 788, 790 (2018) ("section 1668 negates a contractual clause exempting a party from responsibility for fraud or a statutory violation only when all or some of the elements of the tort are concurrent or future events at the time the contract is signed");

18

*Frittelli, Inc. v. 350 N. Canon Drive, LP*, 202 Cal. App. 4th 35, 43, 135 Cal. Rptr. 3d 761, 769 (2011); *Farnham v. Superior Court (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69, 71, 70 Cal. Rptr. 2d 85, 86 (1997).

The public policy underlying §1668 is sound. Nobody can contract for permission to commit future deliberate wrongdoing. Get-out-of-jail-free cards do not exist outside of *Monopoly*. Entering into a settlement agreement does not allow the settling parties to commit intentional torts against each other in the future without recourse. Yet, this is exactly the basis for the Olen Parties' counterclaims. They claim that the release contained in the *Wakefield II* Settlement Agreement precludes liability for their willful copyright infringement years occurring years later and that Mr. Wakefield breached the settlement by bringing claims for such in the instant lawsuit. Their counterclaims fail under §1668 because they would require enforcing the release in a way that exempts them from liability for their violations of the Copyright Act and willful infringement years after the date of the *Wakefield II* Settlement Agreement. *See Appel v. Boston Nat'l Title Agency, LLC*, 3:18-CV-0873-RSH-AHG, 2022 WL 3582776, at *6 (S.D. Cal. Aug. 19, 2022) ("Section 1668 prevents exemption of liability for future intentional wrong"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543, 13 Cal. Rptr. 3d 174, 181 (2004) ("a violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable as contrary to the public policy of California").

**B.  The *Wakefield II* Settlement Agreement Does Not Release Claims for Future Infringement.**

Even if a release of future intentional wrongdoing could be enforced enforceable under California law, the Olen Parties' counterclaims would still fail, because the settlement did not include a release of any future claims. Indeed, the stated purpose of the *Wakefield II* Settlement Agreement was, "to settle and compromise all disputes and controversies ***existing among the Parties***." (Brockland Decl., Ex. 21 at §1.2. (emphasis added); SUMF at ¶28.) The terms go on to

19

specifically state that "the releases provided for in this Agreement extend to all claims, whether or not claimed or suspected, ***up to and including the date of execution hereof***." (Brockland Decl., Ex. 21 at §3.3 (emphasis added).) In case there was any doubt about whether the release included claims for future intentional wrongdoing, the Parties each acknowledged therein that:

> Wakefield is, through this Agreement, releasing the Olen Parties from any and all claims he may have against them ***arising before the execution of this Agreement.***

(*Id.* at §4.1.)

There can be no dispute that Mr. Wakefield's release was limited to claims arising on or before January 18, 2018, the date of the *Wakefield II* Settlement Agreement. Accordingly, the Olen Parties counterclaims fail because the release does not, and cannot under California law, exempt them from liability for future willful copyright infringement.

## IX.  CONCLUSION

For all of the reasons explained above, Mr. Wakefield is entitled to summary judgment on his claims against Olen for direct, contributory and vicarious copyright infringement, for willful infringement, and for statutory damages under 17 U.S.C. §504, as well as on the Olen Parties' counterclaims for breach and specific performance of the *Wakefield II* Settlement Agreement.


Dated: November 14, 2022          Respectfully submitted,


                                        */s/ William J. O'Brien*
                                        William J. O'Brien of One LLP

                                        *Attorneys for Plaintiff, Donald Wakefield*

20