Spencer M. Sax
Sachs Sax Caplan
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, FL 33487
Tel: (561) 994-4499
Fax: (561) 994-4985
Email: ssax@ssclawfirm.com
*Pro Hac Vice*

Julie A. Ault, Esq. (Bar No. 186914)
Kaelee Gifford, Esq. (Bar No. 303533)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:   (949) 719-7212
Fax:   (949) 719-7210
Email: jault@olenproperties.com

Attorneys for Olen Properties Corp. and Igor Olenicoff

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>              Plaintiff,<br><br>    vs.<br><br>OLEN PROPERTIES CORP., IGOR OLENICOFF, JOHN LIANG and Does 1 through 10 inclusive,<br><br>              Defendants. | CASE NO.  8:21-cv-1585-CJC-DFM<br><br>The Hon. Cormac Carney<br><br>**DEFENDANTS', OLEN PROPERTIES CORP. AND IGOR OLENICOFF, RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: September 27, 2021<br>Hearing Date: January 9, 2023<br>Hearing Time: 1:30 p.m.<br>Trial Date: February 21, 2023 |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................... 1

II. RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS ........................... 2

III. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ..................... 2

IV. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM
FOR COPYRIGHT INFRINGEMENT ................................................... 3

    A.  Plaintiff's Claims Fail as a Matter of Law Because the Settlement Agreement
    Entered into Between the Parties Precludes His Claims ............................ 3

    B.  Plaintiff's Copyright Claims are Barred by the Statute of Limitations ............. 10

    C.  Plaintiff Has Not Met His Burden to Show that He is Entitled to Summary
    Judgment on the Issue of Infringement .................................... 13

        i. Infringement is an Issue of Fact for Trial ........................... 13
        ii. No Damages .......................................................... 14

V. CONTRIBUTORY COPYRIGHT INFRINGEMENT ................................. 15

VI. VICARIOUS COPYRIGHT INFRINGEMENT ..................................... 15

VII. THERE IS NO LIABILITY FOR WILLFUL COPYRIGHT INFRINGEMENT
AND NO ENTITLEMENT TO STATUTORY DAMAGES ............................ 15

    A.  There is No Willful Conduct and Plaintiff's Case Law is Distinguishable ....... 15

    B.  Defendants Did Not Violate the Permanent Injunction ...................... 21

    C.  Plaintiff's Claim that Olen Submitted a False Declaration is Without Merit and
    does Not Establish Willfulness ............................................. 23

VIII. THE COUNTERCLAIMS AND SETTLEMENT AGREEMENT ..................... 25

IX. CONCLUSION ................................................................... 25

CASE NO.  8:21-cv-1585-CJC-DFM
Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................................................3

*Atl. Recording Corp. v. Media Group, Inc.*, CV0006122FMCMCX, 2001 WL 37132610
    (C.D. Cal. Aug. 14, 2001) ...............................................................20

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999).......5

*Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 624(9th Cir. 2010). ..............13

*Broad. Music, Inc. v. Crawford*, 1:12-CV-01903-JLT, 2014 WL 1285660 (E.D. Cal. Mar.
    28, 2014)..........................................................................20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................2

*Dolman v. Agee*, 157 F.3d 708 (9th Cir. 1998).................................................................16

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004).........................................................3

*Fire Insurance Exchange v. HAGD, Inc.,* 2003 WL 1521898 (Cal. Ct. App., Mar. 25,
    2003, No. F039989)..........................................................................9

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768 (9th Cir. 2018)..................................13

*Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525 (9th Cir. 1987) ...........................13

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007)................................................................14

*Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, LACV0900914JAKJCX, 2013 WL
    12084741 (C.D. Cal. Mar. 8, 2013). ...................................................................9

*L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, CV 08-1836ODW(PJWX), 2009 WL 789877
    (C.D. Cal. Mar. 23, 2009)..........................................................................20

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006).................................................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................3

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042 (9th Cir. 2020) ............11

*Oracle USA, Inc. v. SAP AG*, 2010 WL 334446 (N.D. Cal. 2010) ...................................14

*Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) .....................19

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). ......................................10

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir.1994) ......................................11

*Sanrio, Inc. v. Ronnie Home Textile, Inc*. CV1406369RSWLJEMX, 2016 WL 5956096
(C.D. Cal. Jan. 5, 2016) ................................................................................21

*Sega Enter. Ltd. v. MAPHIA*, 948 F.Supp. 923 (N.D.Cal.1996) ......................20

*Societe Civile Succession Guino v. Renoir*, 305 Fed. Appx. 334 (9th Cir. 2008) ............16

*Swafford v. Int'l Bus. Machines Corp*., 408 F. Supp. 3d 1131 (N.D. Cal. 2019). ...............4

*United States ex rel Giles v. Sardie*, 191 F. Supp. 2d 1128 (C.D. Cal. 2000) ....................8

*Wall Mountain Co., Inc. v. Edwards*,. C 08-2579 PVT, 2010 WL 4940778 (N.D. Cal.
Nov. 30, 2010) ..............................................................................................20

*Winet v. Price*, 4 Cal. App. 4th 1159 (1992) ....................................................6

**Statutes**

17 U.S.C. § 101 ................................................................................................10

17 U.S.C. § 106(5) ...........................................................................................10

17 U.S.C. § 504(b) ...........................................................................................15

17 U.S.C. § 504(c)(2) ........................................................................................17

17 U.S.C.A. § 507(b) ........................................................................................10

Cal. Civ. Code § 1574 ........................................................................................4

iv

Defendants, OLEN PROPERTIES CORP. and IGOR OLENICOFF, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56(b) and Local Rule 56-1, hereby file their Response in Opposition to Plaintiff's, DONALD WAKEFIELD ("WAKEFIELD"), Motion for Partial Summary Judgment and, in support, state:

## I. INTRODUCTION

Before the instant lawsuit, Plaintiff had twice sued Defendants for copyright infringement, in 2012 ("*Wakefield I*") and 2017 ("*Wakefield II*"). The crux of *Wakefield II* was the discovery of additional copies of *Untitled* that neither Wakefield nor the Defendants were aware of at the time of the trial in *Wakefield I*. In *Wakefield II*, Defendants admitted and put Plaintiff on notice that they had no independent recollection, inventory, records, or other method of unequivocally identifying the total number of pieces of the subject sculptures. On or about January 18, 2018, the parties executed a Settlement Agreement and Mutual General Release (the "Settlement Agreement"), the purpose of which was "to settle and compromise all disputes and controversies existing among the Parties" with Defendants paying the Plaintiff $110,000.00, which was additional to $450,000 previously paid pursuant to the judgment in *Wakefield I*.

Notwithstanding the Settlement Agreement, Plaintiff brought the instant action against Defendants claiming, for a third time, copyright infringement of the same copyright which was the subject matter of *Wakefield I*, *Wakefield II*, and the Settlement Agreement, this time adding factually void allegations of fraud and RICO. Specifically, Plaintiff is asserting claims over two sculptures in Boynton Beach, Florida that Plaintiff asserts have been on public display since 2014 (the "Boynton Beach sculptures").

Plaintiff's claims fail as a matter of law because:

(1) determination regarding the enforceability of the Settlement Agreement is a predicate to deciding any of Plaintiff's claims for copyright infringement. If the Court agrees with Defendant's position, the case ends there. If the Court finds any merit to Plaintiff's position that the Settlement Agreement should be rescinded due to fraud, Plaintiff is not entitled to summary judgment on his claims because factual issues exist;

(2) they are barred by the Settlement Agreement, in which the parties declared their intention to release all claims, including unknown or unsuspected claims and all future claims;

(3) they are barred by the statute of limitations, as the claims accrued in 2014 and Plaintiff did not bring the instant lawsuit until 2021; and

(4) Plaintiff has failed to establish any facts showing willfulness or fraud on the part of either of the Defendants to justify rescinding the Settlement Agreement. As such, his Motion for Partial Summary Judgment must be denied.

## II. RESPONSE TO STATEMENT OF UNCONTROVERTED FACTS

Pursuant to Local Rule 56-1, Defendants have simultaneously filed a Statement of Genuine Disputes, which is expressly adopted and incorporated herein by reference.

## III. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which he seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If, and only if, the moving party meets its initial burden, the opposing

2

party must then set out specific facts to establish a genuine issue to defeat the motion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment for the moving party is not proper unless a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *Id*. A genuine dispute of a material fact is "one that could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## IV. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM FOR COPYRIGHT INFRINGEMENT

### A. Plaintiff's Claims Fail as a Matter of Law Because the Settlement Agreement Entered into Between the Parties Precludes His Claims

First and foremost, determination regarding the enforceability of the Settlement Agreement is a predicate to deciding any of Plaintiff's claims for copyright infringement. If the Court agrees with Defendant's position that the Settlement Agreement is unambiguous and the release contained therein encompasses all claims that were brought, could have been brought, or may be brought by Wakefield, including the instant lawsuit, as argued below, the case ends there. If the Court does not agree with Defendants' position and finds any merit to Plaintiff's position that the Settlement Agreement should be rescinded due to fraud, Plaintiff is not entitled to summary judgment on his claims. For one, Plaintiff has not moved for summary judgment on his claim for Fraud in the Inducement to overcome the Settlement Agreement. Moreover, under California law,

3

whether a plaintiff reasonably relied on representations is ordinarily a question of fact and creates a genuine issue of material fact, precluding summary judgment on a fraud claim. *Swafford v. Int'l Bus. Machines Corp*., 408 F. Supp. 3d 1131, 1146–47 (N.D. Cal. 2019). *See also* Cal. Civ. Code § 1574 (whether fraud has occurred "is always a question of fact").

Plaintiff's claims in the Complaint are barred because the terms of Settlement Agreement are unambiguous, and the various release provisions are extremely broad and encompassing of all claims that were brought, could have been brought, or may be brought by Wakefield against the Defendants.

First, Paragraph 3.1 entitled "General Release by Wakefield" provides:

> Wakefield . . . ***forever releases and discharges*** the Olen Parties . . . from ***any and all claims,*** demands, debts, liabilities, accounts, obligations, costs, expenses, liens, actions, cause of action (at law, in equity, or otherwise), rights, rights of action, rights of indemnity (legal or equitable), rights to subrogation, rights to contribution ***and remedies of any nature whatsoever, known or unknown***, . . . ***suspected or unsuspected***, that ***Wakefield may have against the Olen Parties***, including, but not limited to ***any actions relating directly or indirectly to any transactions, affairs or occurrences between them to date***, including, but not limited to all loss, liability, damages, claims, charges, complaints or demand ***and including any claims set [sic] related to the causes of action for copyright infringement as set forth in the Wakefield Actions***." SGD[1] at ¶7 (emphasis added).

Also, Paragraph 1.2 provides:

> The purpose of this Agreement is to settle and compromise ***all disputes and controversies existing among the Parties*** hereto, ***including but not***

---

[1] Referring to Defendants', Olen Properties Corp. and Igor Olenicoff, Statement of Genuine Disputes in Opposition to Plaintiff's Motion for Partial Summary Judgment (hereinafter "SGD") filed with this Motion.

***limited to any and all claims that are raised or might have been raised in the 2017 Action***." SGD at ¶3 (emphasis added).

Paragraph 2.3 provides:

> Wakefield covenants and represents that he has not filed any complaints, grievances, charges, or lawsuits against the Olen Parties, with any governmental agency or court, and ***that he will not do so at any time hereafter***, with respect to the matters released under this Agreement . . . ." SGD at ¶6 (emphasis added).

Paragraph 4.1(b) provides:

> Wakefield is, through this Agreement, releasing the Olen Parties from ***any and all claims*** he may have against them . . ." SGD at ¶19-20 (emphasis added).

The Federal Circuit construed similar release language in *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, and noted that the release included "***very broad language***, such as 'release and forever discharge,' 'any and all manner of action or actions,' 'relating to any acts, omissions or statements made [ ],' and 'including, but not limited to, any and all claims that were or could have been asserted [ ] in the [present lawsuit].' General language such as these phrases have consistently been held by the courts to constitute a waiver . . . of all 'claims based upon events occurring prior to the date of the release.'" 194 F.3d 1367, 1371 (Fed. Cir. 1999) (*quoting Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (1976)). The Ninth Circuit also construed similar release language in a federal copyright case. *See Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (release "of and from each and every claim" is "exceptionally broad" and constitutes a waiver of all claims within the scope of the language). The exceptionally broad release language

5

present in the Settlement Agreement between Plaintiff and Defendants shows their intent to waive all claims between them.

Second, the plain meaning of the release language unequivocally demonstrates that the parties intended for all "known or unknown" and "suspected or unsuspected" claims to be included and extinguished by the release. Paragraph 3.1 of the Settlement Agreement specifically states that "Wakefield . . . forever releases and discharges the Olen Parties . . . from any and all claims, . . . and remedies of any nature whatsoever, ***known or unknown*** (except for those arising as a result of a breach of any provision of this Agreement), ***suspected or unsuspected*** that Wakefield may have against the Olen Parties, . . ." SGD at ¶7, 9-10 (emphasis added). Paragraph 3.3 provides that "the releases provided for in this Agreement extend to all claims, ***whether or not claimed or suspected*** . . . ." SGD at ¶16.

California courts have construed similar release language to include all claims between the parties. In *Winet v. Price*, the court reviewed the lower court's granting of summary judgment for defendant that an earlier settlement agreement and general release between the parties precluded the present claims. The release at issue "provided for release of 'any and all ... claims, ... damages and causes of action whatsoever, of whatever kind or nature, *whether known or unknown, or suspected or unsuspected* . . .'" 4 Cal. App. 4th 1159, 1162-63 (1992). The court held that the inclusion of that language meant that "the release was designed to extinguish all claims extant among the parties" and that "Winet expressly assumed the risk of unknown claims." *Id*. at 1168. Also, the court would not look to parol evidence, as it is "admissible only to prove a meaning to which the language is 'reasonably susceptible,' not to flatly contradict the express terms of the agreement." *Id*. at

6

1167 (internal citations omitted). If any credence was given to an argument that a release of unknown or unsuspected claims was not intended to include unknown or unsuspected claims, a release could never effectively encompass unknown claims. *Id*.

Importantly, Defendants did not install the Boynton Beach sculptures after entering into the Settlement Agreement. They were in place in 2014. SGD at ¶33. Thus, it was not a future act. Rather, it was a later-discovered unknown or unsuspected claim when entering into the Settlement Agreement. Also, in *Wakefield II*, Plaintiff alleged that Defendants failed to disclose the location of all copies of *Untitled*. At the time the parties entered into the Settlement Agreement, Plaintiff had a pending Motion for Sanctions for Defendants' failure to disclose additional copies in *Wakefield I* in which Defendants responded by advising that they had no documentation with which to accurately verify the number or location of sculptures which had been delivered as much as a decade earlier. SGD at ¶63-64.  Plaintiff was on notice that there could be additional sculptures and that the release was full and final as it related to the copyright at issue, for known and unknown claims.

Third, the plain meaning of the waiver of rights under Civil Code § 1542 is further evidence that the parties intended for all claims to be extinguished, including unknown and unsuspected claims. The 1542 waiver in the Settlement Agreement states that the parties "understand that the releases provided for in this Agreement extend to all claims, whether or not claimed or suspected, up to and including the date of execution hereof, and constitute a waiver of each and all of the provisions of [Code Section 1542]." SGD at ¶16. The parties also "acknowledge that the effect and import of this provision has been fully explained to them and that they are aware of its contents and legal effect." SGD at ¶16.

7

The *Winet* court discussed a similar explicit 1542 waiver and that the client had advice of independent counsel. 4 Cal. App. 4th at 1163–64. In *Winet¸* the release stated that it applied "TO ALL UNKNOWN OR UNANTICIPATED RESULTS OF THE TRANSACTIONS AND OCCURRENCES DESCRIBED ABOVE, AS WELL AS THOSE KNOWN AND ANTICIPATED, and upon advice of legal counsel, all Parties do hereby waive any and all rights under California Civil Code § 1542, which section has been duly explained . . . ." *Id.* Under those circumstances, where the parties were represented by counsel who explained the import of the release in general and of the waiver of section 1542 in particular, the parties expressly assumed the risk of unknown claims. *Id.  See also United States ex rel Giles v. Sardie*, 191 F. Supp. 2d 1128, 1134 (C.D. Cal. 2000) (granting summary judgment where "it is hard to imagine a more clearly worded statement of the parties' intentions with regard to unknown claims" and the express 1542 waiver was "further evidence" of the parties' intentions to include all unknown claims). Accordingly, as in *Winet*, the parties plainly intended this clear and direct language to be effective and to release all claims, known or unknown, suspected or unsuspected. SGD at ¶17.

Fourth, the plain meaning of the release language unequivocally shows the parties intended for future claims to be extinguished. Under Paragraph 2.3, Wakefield covenanted and agreed that he had not filed any lawsuits with respect to the matters released under the Settlement Agreement "and ***that he will not do so at any time hereafter***." SGD at ¶6 (emphasis added). Under Paragraph 3.1, Wakefield "***forever releases and discharges*** the Olen Parties . . . from any and all claims . . . that Wakefield ***may have*** against the Olen

Parties" SGD at ¶7 (emphasis added). Under Paragraph 4.1(b), Wakefield released "the Olen Parties from any and all claims he *may have* . . ." SGD at ¶19.

Courts have found that 'may have' language bars future claims. *See e.g. Augustine Med.,* 194 F.3d at 1371. "[T]he phrase 'may have' is necessarily future-oriented. In the context of the Settlement Agreement, it implies a *future possibility*" of having a claim. *Id.* (emphasis in original). Because "may have" language is "prospective in nature," its inclusion in the settlement agreement barred future claims that arose after the date of the settlement agreement that were related to actions taken on or before the date of the settlement agreement. *Id. See also Fire Insurance Exchange v. HAGD, Inc.,* 2003 WL 1521898, at *4 (Cal. Ct. App., Mar. 25, 2003, No. F039989) (interpreting "has, may have or may claim to have" language as applying only to claims existing at the time of execution is "logically and linguistically unsound."

Also, the phrase "hereafter" as used in Paragraph 2.3 shows an intent to apply to future claims. SGD at ¶6. In *Kim Laube & Co., Inc. v. Wahl Clipper Corp.*, the release at issue included claims that they "may now or hereafter have." LACV0900914JAKJCX, 2013 WL 12084741, at *10 (C.D. Cal. Mar. 8, 2013). "May" indicates an intent to include uncertain claims and thus includes unknown claims. "Hereafter" indicates an intent to include future claims. "If the Release had been designed to include only claims known [] at the time that the Release was signed, this language would have been unnecessary." *Id*.

The terms of Settlement Agreement are unambiguous, extremely broad and all, and encompassing all claims. As such, Plaintiff's current claims are barred, as they were released under the Settlement Agreement.

9

## B. __Plaintiff's Copyright Claims are Barred by the Statute of Limitations__

A three-year statute of limitations applies to civil actions for copyright infringement. *See* 17 U.S.C.A. § 507(b) ("[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued"). *See also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) as amended on denial of reh'g and reh'g en banc (Oct. 25, 2004) (copyright claim must be filed within three years after accrual). In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, the United States Supreme Court explained that "the limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief.' A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." 572 U.S. 663, 670 (2014). Thus, under the Copyright Act's three-year limitations period, an infringement is only actionable within three years of its occurrence, and "the infringer is insulated from liability for earlier infringements of the same work." *Id.* at 671.

Here, Plaintiff's claim is founded on the allegation that Defendants violated Plaintiff's copyright by ***publicly displaying*** the Boynton Beach sculptures, which is in violation of 17 U.S.C. § 106(5). *See* Plf's MPSJ at p. 10. Under 17 U.S.C. § 101, the statutory definition of "display[ing] a work publicly" is to display the work "at a place open to the public" 17 U.S.C. § 101. As Plaintiff states in his Motion, "Olen public displayed *Human Nature's Many Facts* and *A Tear Must Fall* on its commercial property at Quantum Town Center, in Boynton Beach, Florida, from 2014 until sometime in 2021, without authorization." *See* Plf's MPSJ at p. 6. *See also* SGD at ¶33. Thus, Plaintiff concedes that his claims arose when Defendants allegedly "publicly displayed" the two Boynton Beach

sculptures at Quantum Town Center and that Quantum Town Center qualifies as a place open to the public. Plaintiff also concedes that Defendants did not conceal the sculptures (otherwise they would not have been deemed on public display). Finally, Plaintiff concedes that the public display started in 2014. SGD at ¶33. Therefore, under the Copyright Act, the public display began in 2014, and thus the purported infringing act occurred in 2014. Plaintiff's claims for copyright infringement are time barred, as they were on display more than three years before the institution of this lawsuit.

While Plaintiff may argue that his claims did not begin to run until he discovered the Boynton Beach sculptures in 2021, this argument is without merit. Where a party discovers, or ***reasonably should have discovered***, an alleged infringement, the limitations period begins to run. *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (*quoting Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019)) (emphasis added). *See also Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994) (In the Ninth Circuit, the term "accrue," as it is used in § 507(b), has been held to be the moment when the copyright holder "has knowledge of a violation or ***is chargeable with such knowledge***.")(emphasis added).

The Ninth Circuit has held that a plaintiff is "deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the [claim].'" *Oracle Am., Inc.*, 971 F.3d at 1047 (*quoting Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001)).  As such, "'suspicion' of copyright infringement '***place[s] upon [the plaintiff] a duty to investigate*** further into possible infringements of [its] copyrights.'" *Id*. at 1047-1048 (citations omitted) (emphasis

11

added). This is the case even when a plaintiff does not actually conduct a further investigation. "'[E]quity will impute to [the plaintiff] knowledge of facts that would have been revealed by reasonably required further investigation.'" *Id*. (*quoting Wood*, 705 F.2d at 1521). Under these circumstances, a plaintiff also cannot attempt to argue that a defendant fraudulently concealed infringement when that plaintiff had constructive knowledge of the facts giving rise to the claim. *Id*. (*citing Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).

The case of *Oracle America, Inc. v. Hewlett Packard Enterprise Company* is particularly instructive here. In that case, Oracle conceded that it "had concerns" about potential copyright infringement as early as 2010. 971 F.3d at 1048. It also conceded that it made inquiries after receiving reports of potential copyright infringement. *Id*. In that case, the Ninth Circuit held that Oracle therefore had a duty to conduct a reasonable investigation. Likewise, in the instant case, Plaintiff clearly had concerns about infringement as he filed *Wakefield I* and *Wakefield II*. Also, Plaintiff admitted that he undertook an investigation of Olen's various properties to search for purported copies of his sculpture, including in California, Nevada, and Florida. SGD at ¶37. Plaintiff's investigation occurred sometime around 2012, 2013, or 2014, and no one prevented him from doing additional investigation in later years, including 2015, 2016, 2017, or 2018, including when he discovered the additional copies that led to *Wakefield II* or prior to entering into the Settlement Agreement. SGD at ¶38. Finally, in the Declaration in Support of the Response to Plaintiff's Motion for Sanctions in *Wakefield II*, Defendants admitted and put Plaintiff on notice that they had no independent recollection, inventory, records, or

other method of unequivocally identifying the total number of pieces of the subject sculptures. SGD at ¶64.

Accordingly, Plaintiff had constructive knowledge and thus had a duty to investigate to discover the Boynton Beach sculptures that had been on display, as Plaintiff alleges, since 2014. His failure to undertake a further investigation at the time cannot be used prevent the running of the statute of limitations. Further, there is no evidence of concealment. Plaintiff was able to find the sculptures upon a diligent search and has not presented any evidence in discovery that demonstrates that he was prevented from finding the sculptures prior to releasing all claims in the Settlement Agreement in 2018. As such his claims are time barred.

### C. Plaintiff Has Not Met His Burden to Show that He is Entitled to Summary Judgment on the Issue of Infringement

### i. Infringement is an Issue of Fact for Trial

To establish a claim for copyright infringement, a plaintiff must show that 1) he owns the copyright in the allegedly copied work; 2) defendant had access to the work; and 3) plaintiff's and defendant's works are substantially similar. *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 528 (9th Cir. 1987). The plaintiff bears the burden of proving substantial similarity. *Id*. This is a fact-specific inquiry. *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). Thus, summary judgment is "not highly favored" on questions of substantial similarity. *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018).

13

Here, Plaintiff has not submitted any evidence to support his present claims. Rather, he requests that the Court adopt the findings of the jury in *Wakefield I*. However, as this Court addressed in its October 14, 2022 Order Granting Plaintiff's Motion to Dismiss Count III of Defendants' Counterclaims and Strike Affirmative Defenses of Invalidity, "the issue in this case of whether the Florida sculptures infringe Plaintiff's *Untitled* copyright was not decided in *Wakefield I*; the validity of Plaintiff's *Untitled* copyright was." 10/14/22 Order [Dkt. 91] at p. 5. Accordingly, Plaintiff still has the burden to prove his claims for copyright infringement, contributory copyright infringement, and vicarious copyright infringement, and he has not met his burden at this stage.

## ii. No Damages

Under § 504(b, actual damages must be suffered "as a result of the infringement." 17 U.S.C. § 504(b). A causal link between the infringement and the monetary remedy sought is a predicate to recovery of actual damages. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d at 708. Thus, courts apply general tort principles of causation and damages. *Oracle USA, Inc. v. SAP AG*, 2010 WL 334446, *1 (N.D. Cal. 2010) (*citing Polar Bear*, 384 F.3d at 708). *See also Jarvis v. K2 Inc.*, 486 F.3d 526, 533–34 (9th Cir. 2007)). This is Plaintiff's burden to prove. *Id.* Under this framework, "actual damages are generally determined by the loss in the fair market value of the copyright, 'measured by the profits lost due to the infringement or the value of the use of the copyrighted work to the infringer.'" *Id.* at *2 (*quoting Polar Bear*, 384 F.3d at 708). "Excessively speculative claims of damages are to be rejected." *Id.* (*quoting Jarvis*, 486 F.3d at 534).

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff has not supported his claims with any evidence of actual damages. Regarding the sculpture at issue in this case, *Untitled*, Plaintiff testified that he never sold it. Rather, he only received compensation for his time in creating the sculpture from the co-designer, Joseph Glickman. SGD at ¶39. Plaintiff also testified that he did not know if it had been resold. SGD at ¶40. Further, Plaintiff testified that he has not sold a sculpture through an art gallery and that he has not sold or contributed a sculpture through a public art program in more than ten years. SGD at ¶41-42. He has not received compensation for sale of any sculpture or any other art in about ten years. SGD at ¶43. Any value that Plaintiff assigns to the Boynton Beach sculptures is entirely speculative, as there is no market for his sculptures. Plaintiff has also not disclosed any expert to testify to actual damages. Under the applicable tort principles of causation and damages, Defendants purported infringement has not caused Plaintiff any actual damages. Accordingly, Plaintiff's claims fail.

## V. CONTRIBUTORY COPYRIGHT INFRINGEMENT

For the reasons set for in Section IV above, Plaintiff is also not entitled to summary judgment on his claim for Contributory Copyright Infringement.

## VI. VICARIOUS COPYRIGHT INFRINGEMENT

For the reasons set for in Section IV above, Plaintiff is also not entitled to summary judgment on his claim for Contributory Copyright Infringement.

## VII. THERE IS NO LIABILITY FOR WILLFUL COPYRIGHT INFRINGEMENT AND NO ENTITLEMENT TO STATUTORY DAMAGES

### A. There is No Willful Conduct and Plaintiff's Case Law is Distinguishable

15

Plaintiff is not entitled to damages under § 504(c)(2) for willful infringement. "Willful" means acting with knowledge that one's conduct constitutes copyright infringement. 17 U.S.C. § 504(c)(2); *Dolman v. Agee*, 157 F.3d 708, 715 (9th Cir. 1998). A person who believes reasonably and in good faith that conduct does not constitute infringement does not act willfully. *Societe Civile Succession Guino v. Renoir*, 305 Fed. Appx. 334, 339 (9th Cir. 2008), as amended on denial of reh'g (Apr. 1, 2009) (*citing Peer Int'l. Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir.1990). Here, Plaintiff does not have evidence of willfulness.

Mr. Olenicoff was not aware or did not remember that the sculptures in Boynton Beach existed (SGD at ¶51), that he did not have any recollection of whether either sculpture was on public display at Quantum Town Center in Boynton Beach, Florida (SGD at ¶48-49), and that he did not know when either sculpture was first placed on public display at Quantum Town Center (SGD at ¶50). He entered into the Settlement Agreement in good faith and without an intent to deceive and with the understanding that it would forever end all claims with Mr. Wakefield. SUF at ¶26-28. Olen Properties corporate representative, Dale Lyon, testified that the only individual involved with the installation in Boynton Beach was Alfred Lafave. SGD at ¶56. Mr. Lafave left employment with Olen Properties around March 14, 2014. SGD at ¶58-59. He was no longer employed at the time that the Judgment was entered nor when the Settlement Agreement was negotiated or signed to impute his knowledge to Olen or Olenicoff, nor for anyone at Olen to ask him about that process. SGD at ¶58-59. Accordingly, at the time of the Judgment for injunctive

relief in *Wakefield I*, neither Mr. Lyon nor anyone else employed by Defendants at that time, was aware that the sculptures were on display at Quantum Town Center. SGD at ¶52.

Also, Plaintiff did not have any facts to contest this testimony. At the time of entering into the Settlement Agreement, he was not aware of any facts that Mr. Olenicoff or Olen Properties knew of the existence of any sculptures similar to *Untitled* other than those that were the subject of *Wakefield I and II.* (SGD at ¶68); that Mr. Olenicoff was personally aware of what sculptures were at Quantum Town Center in Boynton Beach, Florida (SGD at ¶60); or that Mr. Olenicoff or Olen Properties hid the existence of sculptures in Boynton Beach. (SGD at ¶69). Moreover, Plaintiff testified that he is not aware of any facts to dispute that "the pieces ordered from China were received in various shipments, that there were complications with the orders, and that sometimes the shipments included things that were not ordered (SGD at ¶65); that neither Mr. Olenicoff or Olen Properties maintained records of what items were received from China or the locations where sculptures were installed (SGD at ¶66); or that Olen Properties does not maintain any inventory of artwork or sculptures (SGD at ¶67). Finally, Mr. Wakefield does not have any facts that Olen Properties was aware of the exact number and location of pieces of art sold to it by the Chinese artist (SGD at ¶61), or that Defendants intentionally hid sculptures (SGD at ¶62).

Moreover, Wakefield's Answers to Interrogatories do not provide any further facts to support his allegations. Wakefield asserts only that he "believes that Olenicoff was aware of the infringing sculptures being installed in 2014." SUF at ¶70-71. Nothing more was asserted, and Plaintiff has not presented any other evidence.

17

Defendant Olen Properties and its subsidiaries employ around 400 individuals and have 150 projects, with 6 million square feet of office space and 17,000 apartments across the country. SUF at ¶44-46. It is not unreasonable that they would not have had any independent recollection of the Boynton Beach sculptures or knowledge that they were publicly displayed. In fact, there are hundreds of pieces of artwork and sculptures at Olen headquarters alone. SUF at ¶47. Also, the Settlement Agreement does not have a provision requiring Defendants to investigate whether additional sculptures exist or locations of said sculptures or wherein Defendants made any representations that they undertook an investigation as to the location of additional potential sculptures. SUF at ¶24-25.

Moreover, in the absence of any evidence of willfulness or fraud, Plaintiff is bound by the provisions of the Settlement Agreement, which provides at Paragraph 5.5 provides:

> "This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto . . ."

SUF at ¶21. The import of this provision was to bind the parties only to those representations and understandings contained within the Settlement Agreement. SUF at ¶22. "There cannot be justifiable reliance on precontractual representations when there is a merger clause in the contract. As a result, a fraud claim based on precontractual representations cannot be sustained when the contract has a merger clause." *DeKellis v. Microbilt Corp.*, 131 F.3d 146 (9th Cir. 1997) (internal citations omitted).

Plaintiff asserts that courts repeatedly find willfulness as a matter of law. However, the cases cited by Plaintiff are distinguishable in that they dealt with circumstances where, despite a known copyright, a defendant ignored the copyright and continued to copy or distribute the copyrighted work. *See Peer Intern. Corp. v. Pausa Records, Inc*., 909 F.2d at 1335-36 (finding willfulness because there was deposition testimony that defendants received an unambiguous notice of termination of licenses should they fail to pay royalties, that defendants then failed to account for and pay royalties, and that they ignored the revocation and continued to manufacture and distribute the copyrighted phonorecords); *Dolman*, 157 F.3d at 715 (finding willfulness where the purported infringer knew that there was a question as to the ownership of song copyrights, was told by counsel that the situation was "a mess," and was presented with evidence that the copyright owner was the true owner). In contrast, here, there is no evidence that Defendants knew about the copyrighted work when the pieces were originally ordered or that they have any information about the sculptures.

Further, while Plaintiff argues that other courts have found willfulness on less compelling facts, the cases cited by Plaintiff to support his position are factually and legally distinguishable. In each case cited by Plaintiff, there was continued distribution or copying of products like songs, DVDs, and garments. There were future acts after there was a known copyright. None of those cases dealt with a situation similar to that with which the Court is presented in the instant lawsuit – ***namely, where a sculpture was placed on public display, a single act, in the past***. SGD at ¶33. Further, in the instant case, Defendants immediately removed the Boynton Beach sculptures once they were placed on notice of

19

the current lawsuit (*See* SGD at ¶55), whereas in each of the cases cited by Plaintiff, the party continued to infringe, even after notice. *See L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, CV 08-1836ODW(PJWX), 2009 WL 789877, at *7 (C.D. Cal. Mar. 23, 2009) (still offering infringing garments for sale nearly seven months after receiving cease and desist letter); *Wall Mountain Co., Inc. v. Edwards*,. C 08-2579 PVT, 2010 WL 4940778, at *2 (N.D. Cal. Nov. 30, 2010) (continuing to sell copyrighted DVDs after being notified of Plaintiff's copyright claims to the DVDs); *Broad. Music, Inc. v. Crawford*, 1:12-CV-01903-JLT, 2014 WL 1285660, at *6 (E.D. Cal. Mar. 28, 2014) (defendant knew she lacked authorization to play plaintiff's copyrighted music because a representative for plaintiff telephoned defendant on twenty-two occasions, and on a number of those occasions, spoke to persons associated with the establishment's operation); *Sega Enter. Ltd. v. MAPHIA*, 948 F.Supp. 923, 936 (N.D.Cal.1996) (operator of electronic bulletin board from which users could copy copyrighted videogames knowingly allowed the users to upload and download games, expressly solicited others to upload games to his bulletin board, and sold or planned to sell copiers used to play games); *Atl. Recording Corp. v. Media Group, Inc.*, CV0006122FMCMCX, 2001 WL 37132610, at *5 (C.D. Cal. Aug. 14, 2001) (defendant acknowledged need to screen customer orders for suspected copyright infringement, that it had the ability to determine who owned a copyright to a sound recording and chose not to, and that it did not necessarily stop filling orders once it became aware that a customer sought to have an infringing order manufactured).

Finally, Plaintiff has made an unsubstantiated claim that Defendants concealed their infringement. This is a nonsensical position in that the Boynton Beach sculptures were, as

20

Plaintiff concedes in his Complaint, on public display. Plaintiff has not submitted any evidence that Defendants concealed the infringement by hiding the sculptures or making them inaccessible to the general public, as was the circumstance in the case cited by Plaintiff to support his argument, *Sanrio, Inc. v. Ronnie Home Textile, Inc*. CV1406369RSWLJEMX, 2016 WL 5956096, at *9 (C.D. Cal. Jan. 5, 2016) ((finding willfulness as a matter of law where defendants took steps to conceal their infringement by "by storing the infringing merchandise in a separate part of Defendants' store, concealed in opaque packaging, and not accessible to the general public …. [and] accessible only to Defendants' employees and customers who had gained Defendants' trust"). Rather, the evidence shows that Defendants were unaware of the Boynton Beach sculptures and thus of any purported infringement to establish that such infringement was willful.

## B. Defendants Did Not Violate the Permanent Injunction

First, Defendants did not violate the Permanent Injunction, and the Ninth Circuit has already interpreted what injunctive relief was ordered in the Judgment. In its March 6, 2017 Memorandum, the Ninth Circuit ruled, *inter alia*, that the "district court did not abuse its discretion in ordering the destruction of ***the six infringing sculptures***, . . ." *See* SGD at ¶75 (emphasis added). Based on the ruling from the Ninth Circuit, it is clear that the intent of the injunction entered as part of the Judgment was to address the six sculptures that were at issue in *Wakefield I*.

After the appeal, the district court entered the Amended Judgment awarding Plaintiff damages, but the original Judgment was not superseded by the later Amended Judgment.

21

Rather, the Amended Judgment states "[t]his judgment incorporates and supplements the injunctive order previously entered against Defendants. *See* SGD at ¶76. Accordingly, there was no subsequent broadening of the injunctive relief granted in the Judgment. Anything arguing to the contrary is a misinterpretation of the district court and the Ninth Circuit's rulings. Further, the Judgment, the Ninth Circuit Memorandum, and the Amended Judgment are devoid of any language requiring Defendants to investigate and/or identify any potential additional copies of the sculpture. As such, there was no violation.

Next, Plaintiff makes the unsupported legal conclusion that the mere fact that the Boynton Beach sculptures existed and were on display means that Defendants violated the injunction and that the purported infringement was willful. The only support Plaintiff provides is an application to the City of Boynton Beach for Art in Public Places for these pieces to be part of that program. As discussed in more detail in Section VII(A), *supra*, the only person involved was Alfred Lafave, who left employment with Olen Properties around March 14, 2014. SGD at ¶56, 58-59, long before the Judgment was entered or the Settlement Agreement was negotiated and signed. Accordingly, at the time of the entry of the Judgment for injunctive relief in *Wakefield I*, Defendants were unaware that the sculptures were on display at Quantum Town Center. *See* SGD at ¶48-52. Again, Plaintiff did not have any facts to contest this testimony. *See* SGD at ¶60-61, 65-69).

22

In short, how could Defendants destroy sculptures that they did not even know existed? Under these circumstances, there was no willfulness. Plaintiff wants to impute knowledge on Defendants despite repeated evidence that they did not have any independent recollection of the Boynton Beach sculptures nor were aware that they were on display.

Finally, the Judgment in *Wakefield I* clearly states that "(6) The Court expects strict compliance with this Judgment, ***unless the parties mutually agree otherwise.***" *See* SGD at ¶73 (emphasis added). In his Motion, Plaintiff failed to include the second, emphasized portion of this paragraph, perhaps to sway the Court to believe that there was no caveat wherein the Court left it to the parties to amend the relief, if desired. In reality, the parties did mutually agree otherwise when they entered into the Settlement Agreement. Paragraph 3.1, which was Wakefield's general release of claims in favor of Defendants, included a sentence that was crossed out and initialed by the parties. SGD at ¶11. The crossed-out language providesd "Nothing in this Agreement shall be construed to mean that Wakefield is waiving or releasing claims to enforce this Agreement, or any relief granted in the 2012 Action." SGD at ¶12. Accordingly, the implication was that Wakefield was waiving enforcement of the relief granted in *Wakefield I*. SGD at ¶13-15. Therefore, Defendants did not violate the Judgment.

## C. Plaintiff's Claim that Olen Submitted a False Declaration is Without Merit and does Not Establish Willfulness

In *Wakefield II*, in response to a Motion for Sanctions for Defendants' failure to disclose additional copies, Defendants admitted and put Plaintiff on notice that they had no

23

independent recollection, inventory, records, or other method of identifying the total

number of pieces of the subject sculptures. SGD at ¶63. Specifically, Mr. Olenicoff stated:

> 3. The pieces ordered from China were received in various shipments, there were numerous complications after the orders were placed, and at times the shipments contained less items than expected or alternate pieces that were not even ordered. In short, the delivery of the sculptures was entirely disorganized.

> 4. Neither Olen nor I maintained any records of what items were received from China or the locations where the sculptures were installed, as these pieces, like all the others in the Olen collection, were simply not a prominent part of the business operations of Olen.

> 5. Olen has artwork and sculptures at nearly every property in its portfolio which includes over six million square feet of office space. Additionally, there are hundreds of pieces of artwork and sculptures at the Olen headquarters. The Olen art collection pieces were acquired and placed over the last five decades to satisfy my personal passion for art, and not for any commercial purpose.

> 6. By the time of the Original lawsuit and the related discovery process, I had no independent recollection of the details of the purchase of sculptures from China. Had any further inquiry been done by Wakefield on the issue of placement of a piece at 2 Venture in Irvine, the Olen Parties would have informed him that there are no business records at Olen, or kept personally by me, to verify the exact number or location of the "Human Nature's Many Faces" sculpture and the responses provided in discovery were based solely upon the memory of the individuals involved and interviews with existing operational staff.

SGD at ¶64. Therefore, it is disingenuous for Plaintiff to argue that Defendant filed a false

declaration when the Declaration specifically states that Defendants admitted that they had

no independent recollection, records, or other method of identifying the total number or

location of sculptures. Further, Defendants have put forth evidence that they did not have

any independent recollection of the Boynton Beach sculptures nor were aware that they

24

were on display in Florida. *See* SGD at ¶48-53. Finally, as stated in Section VII(B), *supra*, the understanding and intent of the Judgment was to destroy the sculptures which were the subject of *Wakefield I*, which Defendants did.

## VIII. THE COUNTERCLAIMS AND SETTLEMENT AGREEMENT

The Settlement Agreement has complete preclusive effect on Plaintiff's causes of action in the instant lawsuit. The alleged infringement involving the Boynton Beach sculptures was not a future intentional wrongdoing. The sculptures were on display, by Plaintiff's own admission, back in 2014. Thus, it was an existing claim, albeit potentially unknown or unsuspected by Plaintiff, at the time that the parties entered into the Settlement Agreement in 2018. Plaintiff cannot seriously dispute that his claim arose prior to the date of the Settlement Agreement. Also, Plaintiff cannot rely on a mere legal conclusion that the infringement was willful when he has submitted no evidence in this case to substantiate that claim. As such, Plaintiff has, in fact, breached the Settlement Agreement by bringing this action, and he is not entitled to summary judgment on the Counterclaims.

## IX. CONCLUSION

In conclusion, determination regarding the enforceability of the Settlement Agreement is a predicate to deciding any of Plaintiff's claims for copyright infringement. If the Court agrees with Defendant's position, Wakefield's claims are barred by the Settlement Agreement, in which the parties declared their intention to release all claims, including unknown or unsuspected claims and all future claims. Plaintiff's claims are also barred by the statute of limitations, as the claims accrued in 2014 and Plaintiff did not bring

the instant lawsuit until 2021. Finally, Plaintiff has failed to establish any facts showing willfulness or fraud on the part of either of the Defendants to justify rescinding the Settlement Agreement.

WHEREFORE Defendants, OLEN PROPERTIES CORP. and IGOR OLENICOFF, respectfully request that this Honorable Court deny Plaintiff's Motion, enter judgment in favor of Defendants and against Plaintiff, DONALD WAKEFIELD as to Plaintiff's Complaint; enter judgment in favor of Defendants and against Plaintiff, as to Defendants' Counterclaims for Breach of Settlement Agreement and Specific Performance, and grant such other and further relief as this Court deems just and proper.

Dated: December 12, 2022.

/s/ Spencer Sax
SPENCER M. SAX
SACHS SAX CAPLAN
Attorneys for Olen Properties Corp. and Igor Olenicoff

26

## CERTIFICATE OF SERVICE

    **I hereby certify that on December 12, 2022, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send a Notice of Electronic Filing to the following CM/ECF registrants:**

Marc N Bernstein
Business Litigation Group PC
150 Spear Street Suite 800
San Francisco, CA 94105

William J O'Brien
One LLP
23 Corporate Plaza Drive, Suite 150-105
Newport Beach, CA 92660

Gene J. Brockland
SmithAmundsen LLP
120 South Central, Suite 710
St. Louis, MO 63105

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed on December 12, 2022 at Newport Beach, California.

*/s/Kaelee Gifford*
Kaelee Gifford