Spencer M. Sax
Sachs Sax Caplan
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, FL 33487
Tel: (561) 994-4499
Fax: (561) 994-4985
Email: ssax@ssclawfirm.com
*Pro Hac Vice*

Julie A. Ault, Esq. (Bar No. 186914)
Kaelee Gifford, Esq. (Bar No. 303533)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:   (949) 719-7212
Fax:   (949) 719-7210
Email: jault@olenproperties.com

Attorneys for Olen Properties Corp. and Igor Olenicoff

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>                              Plaintiff,<br><br>      vs.<br><br>OLEN PROPERTIES CORP., IGOR OLENICOFF, JOHN LIANG and Does 1 through 10 inclusive,<br><br>                              Defendants. | CASE NO.  8:21-cv-1585-CJC-DFM<br>The Hon. Cormac Carney<br><br>**DEFENDANTS', OLEN PROPERTIES CORP. AND IGOR OLENICOFF, STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: September 27, 2021<br>Hearing Date: January 9, 2023<br>Hearing Time: 1:30 p.m.<br>Trial Date: February 21, 2023 |

### DEFENDANTS', OLEN PROPERTIES CORP. AND IGOR OLENICOFF, STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, OLEN PROPERTIES CORP. ("OLEN") and IGOR OLENICOFF ("OLENICOFF") (collectively "Olen Parties"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, hereby file their Statement of Genuine Disputes in Response to Plaintiff's Motion for Partial Summary Judgment and state:

### A. The Settlement Agreement Precludes Summary Judgment for Plaintiff

1.    The parties then entered into a Settlement Agreement and Mutual General Release on or about January 18, 2018 (the "Settlement Agreement"), the purpose of which was to resolve all disputes between the parties and filed a joint stipulation of dismissal of Wakefield II. *See* Case No. 8:17-cv-01147-AG-DFM at [Dkt. 24]; Sax Decl. Ex. 1 (Settlement Agreement), which Decl. is attached hereto as Exhibit A.

2.    The Settlement Agreement at Paragraph 1.1 provides:

> **Wakefield Action.** Two consolidated actions entitled **Donald Wakefield v. Igor Olenicoff and Olen Properties, Inc., et al.**, Case Nos. SACV12-2077 AG (RNBx) ("2012 Action") and 8:17-cv-01147-AG-RNB ("2017 Action") are pending in the United States District Court, Central District of California, Southern Division (collectively the "Wakefield Actions"). In the Wakefield Actions, Wakefield's Complaints assert causes of

> action against the Olen Parties for copyright infringement of a sculpture known as "Untitled."

Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 1.1.

3.    The Settlement Agreement at Paragraph 1.2 provides:

> **Purpose.** The purpose of this Agreement is to settle and compromise ***all disputes and controversies*** existing among the Parties hereto, ***including but not limited to any and all claims*** that are ***raised or might have been raised*** in the 2017 Action.

Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 1.2 (emphasis added).

4.    Paragraph 1.2 was meant to be all encompassing for any claims, known or unknown, including any claims that could be brought. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:13-17; 114:5-16.

5.    Mr. Wakefield acknowledges that the purpose of the Settlement Agreement was to settle and compromise all disputes and controversies existing among the parties, as set forth in Paragraph 1.2 of the agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 98:11-22.

6.    The Settlement Agreement at Paragraph 2.3 provides in relevant part:

> **No Other Claims.**   Other than the Wakefield Actions and a complaint filed with the FBI in 2012, Wakefield covenants and represents that he has not filed any complaints, grievances, charges, or lawsuits against the Olen Parties, with any governmental agency or court, and ***that he will not do so at any time hereafter,*** with respect to the matters released under this Agreement. . . .

Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 2.3 (emphasis added).

7.    The Settlement Agreement at Paragraph 3.1 provides:

> **General Release by Wakefield.** Wakefield . . . ***forever releases and discharges the Olen Parties*** . . . from **any and all claims**, demands, debts, liabilities, accounts, obligations, costs, expenses, liens, actions, cause of action (at law, in equity, or otherwise), rights, rights of action, rights of indemnity (legal or equitable), rights to subrogation, rights to contribution ***and remedies of any nature whatsoever***, ***known or unknown*** (except for those arising as a result of a breach of any provision of this Agreement), ***suspected or unsuspected***, that Wakefield ***may have*** against the Olen Parties, including, but not limited to any actions relating directly or indirectly to any transactions, affairs or occurrences between them to date, including, but not limited to all loss, liability, damages, claims, charges, complaints or demand and in***cluding any claims set [sic] related to the causes of action for copyright infringement as set forth in the Wakefield Actions.***

Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 3.1 (emphasis added).

8.    The significance of including the language "remedies of any nature whatsoever" in Paragraph 3.1 was to release any claims that could occur of any kind. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 115:9-18.

9.    The significance of including the language "known or unknown" in Paragraph 3.1 was, in plain English, to bar any claims by Mr. Wakefield that he could come up with, even those that he was unaware of.  Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 115:19-116:2.

10.     The significance of including the language "suspected or unsuspected" in Paragraph 3.1 was to release any further claims, even if Mr. Wakefield did or did not suspect he had further claims. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:3-9.

11.     Paragraph 3.1 of the Settlement Agreement included a last sentence that was crossed out and initialed by the parties. Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 3.1; Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24; Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 105:18-106:1.

12.     The crossed-out language provides: "Nothing in this Agreement shall be construed to mean that Wakefield is waiving or releasing claims to enforce this Agreement, *or any relief granted in the 2012 Action*." Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 3.1 (emphasis added); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24; Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 105:18-106:1.

13.     The intent of crossing out the last sentence was to remove the language from the Settlement Agreement (Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 106:7-11; 108:3-8) and to remove any possibility of Mr. Wakefield coming back to Defendants with further claims (Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24).

14.     The further intent of the crossing out the last sentence was to waive enforcement of the injunctive relief granted in Wakefield I (the 2012 Action) which

required destroying sculptures to avoid any possibility of Mr. Wakefield reopening any claims. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:25-117:8, 12-16.

15.    Wakefield was aware that Defendants would rely on the removal of the crossed-out language. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 108:21-25.

16.    The Settlement Agreement at Paragraph 3.3 provides:

> **California Civil Code Section 1542.** The Parties understand that the releases provided for in this Agreement extend to all claims, ***whether or not claimed or suspected***, up to and including the date of execution hereof, and constitute a waiver of each and all of the provisions of California <u>Civil Code</u> Section 1542, which reads as follows:
>
> > **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**
>
> The Parties hereby acknowledge that the effect and import of this provision has been fully explained to them and that they are aware of its contents and legal effect.

Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 3.3 (italicized emphasis added).

17.    The significance of including Paragraph 3.3 was to include another provision to ensure finality and further reinforce that release of all claims, including those that were unclaimed or unsuspected, as well as to waive this specific provision of the California Code. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 117:20-118:15; 119:10-14.

18. Further, the acknowledgment of the import of the provision and explanation of its effect was included to avoid Mr. Wakefield asserting he did not understand what he was signing and to provide further reassurance that this was a full and final release. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 118:16-119:2.

19. The Settlement Agreement at Paragraph 4.1(b) provides:

> Wakefield is, through this Agreement, releasing the Olen Parties from ***any and all claims*** he may have against them arising before the execution of this Agreement.

Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 4.1(b) (emphasis added).

20. The significance of including Paragraph 4.1(b) was to forever waive any claims that Mr. Wakefield had against the Olen Parties.  Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 119:19-120:2.

21. The Settlement Agreement at Paragraph 5.5 provides:

> <u>**Entire Agreement.**</u> ***This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof***, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein. ***No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto.*** No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties hereto.

Sax Dec. Ex. 1 (Settlement Agreement) at ¶ 5.5 (emphasis added).

22.     The import of this provision was to bind the parties only to those representations and understandings contained within the Settlement Agreement. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 120:3-19.

23.     The Settlement Agreement is devoid of any provision that would allow Mr. Wakefield to pursue additional claims against Defendants if there were other sculptures in existence. Sax Dec. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 128:6-11.

24.     The Settlement Agreement is devoid of any provision requiring Defendants to investigate whether additional potential sculptures exists or locations of said sculptures. Sax Dec. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 138:9-12.

25.     The Settlement Agreement is devoid of any provision wherein Defendants made any representations that they undertook an investigation as to the location of additional potential sculptures. Sax Dec. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 138:13-16.

26.     Mr. Olenicoff entered into the Settlement Agreement in good faith and without intent to deceive Mr. Wakefield or to hide any information from him. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 127:16-23.

27.     Mr. Olenicoff entered into the Settlement Agreement with the understanding that it would forever end all claims that Mr. Wakefield could ever assert against him and Olen Properties. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:2-7, 11-12.  His intent was to make sure he and Olen Properties were done with Mr. Wakefield forever and would not have an ongoing attack by Mr. Wakefield. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:2-7, 11-12; 114:20-24.

28.     Mr. Olenicoff would not have signed the Settlement Agreement if he had known that Mr. Wakefield had the ability to continue to sue the parties. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:13-17.

29.     Mr. Wakefield does not deny signing the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 96:14-16.

30.     Mr. Wakefield acknowledges that both parties' counsel drafted the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 96:24-97:2.

31.     Mr. Wakefield acknowledges that no one stopped him from seeking legal advice as to the meaning and significance of the language in the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 112:25-113:8; 115:13-16.

32.     Mr. Wakefield acknowledges that he did not have any settlement discussions with anyone for Defendants regarding whether he had the right to make other claims in the

future if he subsequently discovered other sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 116:20-25, 117:4.

## B. The Boynton Beach Sculptures at Quantum Town Center Were Publicly Displayed in 2014 and Prior to Entering into the Settlement Agreement in 2018, Thereby Barring Plaintiff's Claims

33.     The sculptures were already in existence and in place in 2014, as conceded by Plaintiff in his Complaint. See [Dkt. 1] Complaint at ¶¶ 38-39.

34.     Sculptures were installed at Quantum Town Center and publicly displayed beginning in 2008. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 35:25-36:4, 36:12-15.

35.     Several pieces were added up until 2013. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 36:15-16.

36.     Mr. Wakefield is not aware of any facts to dispute that Mr. Olenicoff ordered the piece Human Nature's Many Faces and derivative works prior to 2008. Some of the pieces have placards indicating a date of 2005. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 127:12-20; 128:1-12.

37.     Mr. Wakefield asserts that he did investigation of Olen's various properties to search for purported copies of his sculpture, including in California, Nevada, and Florida. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 119:13-16; 22-25.

38.     Mr. Wakefield's investigation occurred sometime around 2012, 2013, or 2014, and no one prevented him from doing additional investigation in later years,

including 2015, 2016, 2017, or 2018. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 122:13-23.

## C. Plaintiff has Not Suffered Damages and his Valuation is Speculative

39.     Mr. Wakefield never sold *Untitled*. He only received compensation for his time in creating the sculpture from the co-designer, Joseph Glickman. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 10:2-24.

40.     Plaintiff did not know if *Untitled* had been resold. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 13:2-4.

41.     Mr. Wakefield has not sold a sculpture through an art gallery in about ten years. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 24:15-20.

42.     Mr. Wakefield has not sold or contributed a sculpture through a public art program in more than ten years. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 27:21-25.

43.     Mr. Wakefield has not received compensation for sale of any sculpture or any other art in about ten years. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 29:4-25.

## D. Plaintiff Has No Evidence of Willfulness

44.     Olen itself does not have any employees. Olen has a management company that employs all employees, which amounts to around 400 individuals. Sax Decl. Ex. 4

(Transcript of Lyon Dep.) at 16:9-10; Lyon Decl. at ¶ 3, which Decl. is attached hereto as Exhibit B.

45.     Olen and its subsidiaries manage or own around 6 million square feet of office space and 17,000 apartments across the country. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 17:25-18:5.

46.     Olen and its subsidiaries manage or own around 150 projects across the country. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 51:12-15.

47.     There are hundreds of pieces of artwork and sculptures at Olen headquarters alone. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 124:16-21.

48.     Mr. Olenicoff did not have any recollection of whether the sculpture Human Natures Many Faces was on public display at Quantum Town Center in Boynton Beach, Florida. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 31:16-21.

49.     Mr. Olenicoff did not have any recollection of whether the sculpture A Tear Must Fall was on public display Quantum Town Center in Boynton Beach, Florida. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 31:23–32:3.

50.     Mr. Olenicoff did not know when either sculpture was first placed on public display at Quantum Town Center. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 33:16-18.

51.    Mr. Olenicoff was not aware or did not remember that the sculptures in Boynton Beach existed. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 49:13-14.

52.    At the time of the entry of the Judgment for injunctive relief in *Wakefield I*, Mr. Lyon was not aware that the sculptures were on display at Quantum Town Center. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 48:28-49:1.

53.    At the time the Notice of Compliance was filed in *Wakefield I,* Olen Properties was not aware that the sculptures were displayed at Quantum Town Center Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 60:2-7. 9-13.

54.    Mr. Lyon did not learn of their display at Quantum Town Center until the instant lawsuit. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 54:7-13.

55.    Defendants immediately removed the Boynton Beach sculptures once they were placed on notice of the current lawsuit, Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 52:12-19.

56.    The only individuals involved with the installation of any sculptures at Quantum Town Center were Steve Fike (now deceased) and his successor Alfred Lafave, both VPs of Construction. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 36:17-22.

57.    The only individual who knew that the Boynton Beach sculptures were on display at Quantum Town Center was Mr. Lafave. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 49:22-50:2.

58.    Mr. Lafave is no longer with Olen Properties. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 38: 8-14.

59.    Mr. Lafave's employment with Olen Properties ended on or about March 14, 2014, before entry of the Judgment in Wakefield I, before the Settlement Agreement, and before the Notice of Compliance. Lyon Decl. at ¶ 4.

60.    Mr. Wakefield is not aware of any facts to indicate that Mr. Olenicoff was personally aware of what sculptures were at Quantum Town Center in Boynton Beach, Florida. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 124:4-7.

61.    Mr. Wakefield is not aware of any facts that would lead him to believe that Olen Properties was aware of the exact number and location of pieces of art sold to it by the Chinese artist, other than that his assertion that Mr. Olenicoff loved artwork. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 126:13-23.

62.    Mr. Wakefield is not aware of any facts to indicate that the Defendants intentionally hid any sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 127:9-11.

63.    In *Wakefield II*, in response to a Motion for Sanctions for Defendants' failure to disclose additional copies, Defendants admitted and put Plaintiff on notice that they had no independent recollection, inventory, records, or other method of unequivocally identifying the total number of pieces of the subject sculptures. *See* 8:17-cv-01147-AG-

1

2

3

DFM at [Dkt. 21-2] Declaration of Igor M. Olenicoff in Support of Opposition to Motion

for Sanctions.

4

64.    Specifically, Mr. Olenicoff stated in the Declaration:

5

6

7

8

> 3. The pieces ordered from China were received in various shipments, there were numerous complications after the orders were placed, and at times the shipments contained less items than expected or alternate pieces that were not even ordered. In short, the delivery of the sculptures was entirely disorganized.

9

10

11

12

> 4. Neither Olen nor I maintained any records of what items were received from China or the locations where the sculptures were installed, as these pieces, like all the others in the Olen collection, were simply not a prominent part of the business operations of Olen.

13

14

15

16

17

18

> 5. Olen has artwork and sculptures at nearly every property in its portfolio which includes over six million square feet of office space. Additionally, there are hundreds of pieces of artwork and sculptures at the Olen headquarters. The Olen art collection pieces were acquired and placed over the last five decades to satisfy my personal passion for art, and not for any commercial purpose.

19

20

21

22

23

24

25

26

> 6. By the time of the Original lawsuit and the related discovery process, I had no independent recollection of the details of the purchase of sculptures from China. Had any further inquiry been done by Wakefield on the issue of placement of a piece at 2 Venture in Irvine, the Olen Parties would have informed him that there are no business records at Olen, or kept personally by me, to verify the exact number or location of the "Human Nature's Many Faces" sculpture and the responses provided in discovery were based solely upon the memory of the individuals involved and interviews with existing operational staff.

27

28

*See* 8:17-cv-01147-AG-DFM at [Dkt. 21-2] Declaration of Igor M. Olenicoff in Support of Opposition to Motion for Sanctions.

65.     Mr. Wakefield is not aware of any facts to dispute that the pieces ordered from China were received in various shipments, that there were complications with the orders, and that sometimes the shipments included things that were not ordered. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 129:14-19, 130:13-15.

66.     Mr. Wakefield is not aware of any facts to dispute that neither Mr. Olenicoff nor Olen Properties maintained records of what items were received from China or the locations where sculptures were installed, other than that his assertion that Mr. Olenicoff loved his sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 130:16-131:5.

67.     Mr. Wakefield is not aware of any facts to dispute that Olen Properties does not maintain any inventory of artwork or sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 132:21-4.

68.     At the time of entering into the Settlement Agreement, Mr. Wakefield was not aware of any facts that Mr. Olenicoff personally or Olen Properties knew of the existence of any sculptures similar to *Untitled* other than those that were the subject of *Wakefield I and II*. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 137:21-138:13.

69.     At the time of entering into the Settlement Agreement, Mr. Wakefield was not aware of any facts that Mr. Olenicoff personally or Olen Properties hid the existence of

sculptures in Boynton Beach. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 138:14-22.

70.    In Defendants' Interrogatories to Plaintiff, Plaintiff responded to Interrogatory No. 11 as follows:

> No. 11. Describe all facts indicating that Igor Olenicoff had personal knowledge that the subject sculptures were located in Boynton Beach, Florida at the time the Mutual Release and Settlement Agreement was executed.
>
> ANSWER: Plaintiff ***believes*** that Olenicoff was aware of the infringing sculptures being installed in 2014 and thus had personal knowledge of their location at the time the Mutual Release and Settlement Agreement was executed.

Sax Decl. Ex. 4 (Plaintiff's Interrogatory Answers) at No. 11 (emphasis added).

71.    In Defendants' Interrogatories to Plaintiff, Plaintiff responded to Interrogatory No. 12 as follows:

> No. 12. Describe all facts indicating that Igor Olenicoff had personal knowledge that the subject sculptures were located in Boynton Beach, Florida at the time his December 18, 2017 Affidavit was executed.
>
> ANSWER: Plaintiff ***believes*** that Olenicoff was aware of the infringing sculptures being installed in 2014 and thus had personal knowledge of their location at the time the Mutual Release and Settlement Agreement was executed.

Sax Decl. Ex. 4 (Plaintiff's Interrogatory Answers) at No. 12 (emphasis added).

### E. Defendants did not Violate the Judgment in *Wakefield I* and did not file a False Declaration

72.     After trial in *Wakefield I*, the Court entered its July 6, 2015 Judgment ("Judgment"). *See* 8:12-cv-02077-AG-RNB at [Dkt. 132] Judgment.

73.     The Judgment states, in part, that "(6) The Court expects strict compliance with this Judgment, ***unless the parties mutually agree otherwise***." *See* 8:12-cv-02077-AG-RNB at [Dkt. 132] Judgment (emphasis added).

74.     The July 6, 2015 Judgment was appealed to the Ninth Circuit Court of Appeals.

75.     The Ninth Circuit Memorandum stated, *inter alia*, that the "district court did not abuse its discretion in ordering the destruction of ***the six infringing sculptures***, . . ." See 8:12-cv-02077-AG-RNB at [Dkt. 150] Memorandum at ¶ 4 (emphasis added).

76.     On June 5, 2017, the district court entered its Amended Judgment, which states, in relevant part, that "[t]his judgment incorporates and supplements the injunctive order previously entered against Defendants. *See* 8:12-cv-02077-AG-RNB at [Dkt. 163] Amended Judgment.

77.     The January 24, 2018 Declaration of Igor Olenicoff filed in support of the Notice of Compliance listed all sculptures that were known about and which were destroyed. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 59: 2-4, 12-13.

78.     There were distinct locations and artwork that were part *of Wakefield I* that were the subject of the injunction, and those were complied with. Sax Decl. Ex. 4 (Transcript of Lyon Dep.) at 55:18-56:2.

Dated: December 12, 2022.

/s/ *Spencer Sax*
SPENCER M. SAX
SACHS SAX CAPLAN
Attorneys for Olen Properties Corp. and Igor Olenicoff

## <u>CERTIFICATE OF SERVICE</u>

**I hereby certify that on December 12, 2022, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send a Notice of Electronic Filing to the following CM/ECF registrants:**

Marc N Bernstein
Business Litigation Group PC
150 Spear Street Suite 800
San Francisco, CA 94105

William J O'Brien
One LLP
23 Corporate Plaza Drive, Suite 150-105
Newport Beach, CA 92660

Gene J. Brockland
SmithAmundsen LLP
120 South Central, Suite 710
St. Louis, MO 63105

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed on December 12, 2022 at Newport Beach, California.

*/s/Kaelee Gifford*
Kaelee Gifford