Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
**The Business Litigation Group, P.C.**
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone:   415.765.6634
Facsimile:   415.283.4804

Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
**Amundsen Davis LLC**
120 South Central, Suite 700
St. Louis, MO 63105
Telephone:   314.719.3732
Facsimile:   314.719.3733

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
**One LLP**
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA  92660
Telephone:   310.866.5157
Facsimile:   310.943.2085

*Attorneys for Plaintiff, Donald Wakefield*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br>*Assigned to: Hon. Cormac Carney*<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    January 9, 2023<br>Hearing Time:    1:30 p.m.<br>Courtroom:        9B<br><br>Complaint Filed: September 27, 2021<br>Trial Date:        February 21, 2023 |

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................1

II.    STATEMENT OF FACTS .......................................1

III.   GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT .........2

IV.    THERE ARE, AT A MINIMUM, MATERIAL FACTUAL DISPUTES ABOUT THE SETTLEMENT AGREEMENT ..........................................3

    A.   The Settlement Agreement Did Not Release Claims for Infringement Occurring After January 18, 2018 ........................................3

    B.   A Release from Liability for Future Intentional Acts Is Unenforceable Under California Law .........................................7

    C.   Defendants' Obtained the Settlement Agreement Through Fraud ......9

        1.   The evidence of fraud is overwhelming ..................................9

        2.   Defendants' self-proclaimed lack of records or knowledge about the existence and location of other infringements shows reckless disregard for the truth ................................12

        3.   The merger clause does not excuse Defendants' fraud ..........12

V.     RESTITUTION AND PUNITIVE DAMAGES SHOULD BE RESERVED FOR LATER DECISION ..................................................13

VI.    DEFENDANTS ARE NOT IMMUNE FROM STATUTORY DAMAGES ...................15

VII.   THERE IS POWERFUL EVIDENCE THAT DEFENDANTS' INFRINGEMENT WAS WILLFUL ...................................................18

VIII.  THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE ON PLAINTIFF'S RICO CLAIMS ....................................................19

IX.    CONCLUSION .................................................19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242(1986)...............................2, 3

*Appel v. Boston Nat'l Title Agency, LLC*, 3:18-CV-0873-RSH-AHG, 2022 WL 3582776 (S.D. Cal. Aug. 19, 2022)....................................8

*Augustine Medical, Inc. v. Progressive Dyanmics, Inc.* 194 F.3d 1367 (Fed. Cir. 1999).....................................................5

*Ball v. Johanns*, CIV S-07-1190 LKK/DAD, 2007 WL 3124962 (E.D. Cal. Oct. 24, 2007)...........................................................4

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, 2012 WL 12883616 (C.D. Cal. Feb. 23, 2012)..............................................13

*Carpenters Sw. Admin. Corp. v. T&R Painting & Drywall*, LACV166498VAPPLAX, 2017 WL 4769437 (C.D. Cal. Aug. 10, 2017).........................................................8

*Cloud v. Casey*, 76 Cal. App. 4th 895 (1999)...............................15

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008) .16

*DesRosiers v. Hartford*, 979 F. Supp. 2d 1036 (E.D. Cal. 2013)................15

*DRG/Beverly Hills v. Chopstix Dim Suum Café and Takeout II, Ltd.*, 30 Cal. App. 4th 54 (1994)..................................................17

*Erickson Productions, Inc. v. Kast*, 921 F.3d 822 (9th Cir. 2019)...............18

*Golden Gate Way, LLC v. Enercon Services, Inc.*, 572 F. Supp. 3d 797 (N.D. Cal. 2021)..............................................17

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007)...............7

*Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 993 (11th Cir. 1982)..........................................................15, 16

*Jardin v. Datallegro, Inc.*, 08CV1462-IEG-RBB, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009)..........................................5, 6, 7

*Juice It Up Franchise Corp. v. Budhraja*, 2008 WL 11334598 (C.D. Cal. July 10, 2008)..........................................................13

*Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531 (2004).....8

ii

*M.G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263 (1959)............ 14

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)................................4

*Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141 (2005)...............9

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985 (1995)................................13

*Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS-FFMx, 2013 WL 3467205 (C.D. Cal. July 9, 2013).............................16

*SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146 (2018)................................8

*Sega Enter. Ltd. v. MAPHIA*, 948 F.Supp. 923 (N.D.Cal.1996)...............18

*Simmons v. Ratterree Land Co.*, 17 P.2d 727 (Cal. 1932)....................13

*South Coast Properties, LLC v. T-Mobile West LLC,* No. CV-15-0388-MFW (AGRx), 2015 WL 4554368 (C.D. Cal. July 28, 2015)...........................8

*Sullivan v. Flora, Inc.*, 936 F.3d 562 (7th Cir. 2019)....................15

*Tax Relief, Inc. v. Selb*, 220CV10090CASMAAX, 2021 WL 8919077 (C.D. Cal. June 7, 2021)..............................7, 8

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985)................................15

*Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150 (2d Cir. 2007)......................16

*Unicolors, Inc. v. H&M Hennes & Mauritz*, L. P., 142 S. Ct. 941, 211 L. Ed. 2d 586 (2022)................................16

*United States v. Cross*, 816 F.2d 297 (7th Cir. 1987)....................19

*United States v. Sardie*, 191 F. Supp. 2d 1128 (C.D. Cal. 2000)..................4

*United States v. Wise*, 550 F.2d 1180 (9th Cir. 1977)....................19

*Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913 (2010)................................9, 14

*Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC,* SACV 11-1463 DOC, 2012 WL 3903454 (C.D. Cal. Sept. 6, 2012)............................4

*Winet v. Price*, 4 Cal. App. 4th 1159 (1992)................................4

iii

**Statutes**

17 U.S.C. § 412....................................................................................15

California Civil Code § 1542..................................................................4

California Civil Code § 1668.............................................................7, 8

California Civil Code § 1693...........................................................13, 14

Racketeer Influenced and Corrupt Organizations Act.................................19

**Rules**

Local Rule 56-2.....................................................................................1

**Other Authorities**

17A Am.Jur.2d Contracts § 282............................................................6

*Judicial Council of California Jury Instructions,* CACI No. 1900 (2022 edition).............................................................................................12

## I.   INTRODUCTION

The Court should deny Defendants' motion for summary judgment. The motion relies on a Settlement Agreement with Plaintiff, Donald Wakefield.  But that agreement does not bar this lawsuit for at least three reasons:

First, this lawsuit asserts copyright infringement that occurred after the settlement.  The Settlement Agreement did not license Defendants to continue to display infringing copies of Mr. Wakefield's sculpture, nor did it release them from liability if they chose to do so.

Second, even if the Settlement Agreement could be construed as providing a release for future infringement—which it cannot—the agreement would be unenforceable under California law, which does not recognize prospective releases of liability for intentional torts.

Third, the Settlement Agreement was obtained by fraud.  Defendants repeatedly represented to Mr. Wakefield and the Court that they had disposed of all infringing sculptures.  But they were lying, as well as violating an injunction by this Court.  Unbeknownst to Mr. Wakefield, Defendants were still publicly displaying two more knock-off sculptures at a property in Florida.  He would never have agreed to the settlement had he known about the infringement in Florida.

For these and additional reasons, Defendants' motion for summary judgment should be denied.  There are, at a minimum, multiple material issues of disputed fact that preclude a ruling in favor of Defendants.

## II.   STATEMENT OF FACTS

There are a number of important disputed facts raised by Defendants' motion for summary judgment, as reflected in the Statement of Genuine Disputes that Mr. Wakefield is filing in accordance with Local Rule 56-2.  Particularly noteworthy are the damning facts about Defendants' fraudulent conduct in obtaining the Settlement Agreement with Mr. Wakefield.  Defendants repeatedly

1  lied to him—and lied to this Court—about the existence, removal, and destruction

2  of the infringing sculptures that were later discovered to be on display at Quantum

3  Town Center in Florida.   The falsehoods began with Defendants' discovery

4  responses in *Wakefield I*, when they denied that any further infringing works were

5  displayed on their other properties.  This turned out to be a lie, and, shortly after

6  the jury's verdict, Mr. Wakefield discovered another infringing sculpture that the

7  Court in *Wakefield I* repeatedly found "should have been disclosed" by the Olen

8  parties during discovery.  (Brockland Decl. at Ex. 3, p. 20 (*Wakefield 1* Doc. 120);

9  Ex. 2 at pp. 2-3 (*Wakefield 1* Doc. 164).)

10  　　Defendants' lies continued when Mr. Wakefield brought his second action

11  (*Wakefield II*) to recover for their infringing display of that separately uncovered

12  knockoff.  Defendants submitted a sworn declaration on December 18, 2017,

13  representing under penalty of perjury that they had removed ***all*** infringing copies

14  of *Untitled* from ***all*** Olen controlled properties. (Doc. 98-25 (Olenicoff Decl.) at ¶

15  7.).  They used this falsehood to induce Mr. Wakefield to enter into the Settlement

16  Agreement.  (*See, e.g.,* Wakefield Decl. at ¶ 6.)  Indeed, on the morning the

17  Settlement Agreement was executed, Mr. Wakefield's attorneys asked Defendants'

18  counsel to confirm whether all of the infringing works had been destroyed and

19  they said, "Yes, that is already confirmed in our opposition to your motion for

20  sanctions."  (Doc. 98-26 (Ault e-mail Jan. 19, 2018).)

21  ## III.  GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT.

22  　　The inquiry involved in ruling on a motion for summary judgment

23  implicates the substantive evidentiary standard of proof that would apply at the

24  trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If a

25  defendant moves for summary judgment based on the lack of proof of a material

26  fact, the judge must ask himself, not whether he thinks the evidence unmistakably

27  favors one side or the other, but whether a fair-minded jury could return a verdict

28  for the plaintiff on the evidence presented.  *Id.*  The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor.  *Id.* at 255.

## IV.   THERE ARE, AT A MINIMUM, MATERIAL FACTUAL DISPUTES ABOUT THE SETTLEMENT AGREEMENT.

### A.   The Settlement Agreement Did Not Release Claims for Infringement Occurring After January 18, 2018.

The Settlement Agreement did not give the Defendants the right to publicly display Mr. Wakefield's copyrighted sculpture whenever they wanted in the future, nor the right to ignore the permanent injunction entered in *Wakefield I.*  The agreement does not release future infringements.  The word "future" appears nowhere in the Settlement Agreement.  Defendants argue that Section 3.1 contained "broad language"—such as "forever releases and discharges," "any and all claims,"  "known or unknown," "suspected or unsuspected," "relating directly or indirectly," and "including, but not limited to" (Doc. 106-1 at 9)—but none of it shows any intention, much less a "clear intention," to release Defendants from liability for conduct they commit in the future.  Taken to its logical extreme, the Defendants' argument would give them the right, not only to infringe Mr. Wakefield's copyright in *Untitled*, but presumably any of his copyrights in any of his works—and to do so not only now but forever.  That cannot be the law.

Fortunately, the Parties made their intentions known in the Settlement Agreement itself.  Its stated purpose contained was "to settle and compromise all disputes and controversies ***existing*** among the Parties, including but not limited to any and all claims that are raised or might have been raised in the 2017 Action." (Doc. 110-3 at § 1.2 (emphasis added).)  The present tense use of "existing" cannot be read to include future conduct that had not yet occurred at the time of the settlement.  Claims arising from post-settlement conduct did not exist on the date of the settlement.

/ / /

The stated purpose of the Settlement Agreement is reaffirmed throughout the agreement as well.  For instance, Section 3.3 states, "The Parties understand that the releases provided for in this Agreement extend to all claims, whether or not claimed or suspected, ***up to and including the date of execution hereof***, and constituted a waiver of each and all of the provisions of California Civil Code Section 1542." (*Id.* (emphasis added).)  Contrary to Defendants' argument (*see* Doc. 106-1 at 11), the waiver of rights under Section 1542 shows only an intention to release claims existing at the time of the settlement.  *See Ball v. Johanns*, CIV S-07-1190 LKK/DAD, 2007 WL 3124962, *4–5 (E.D. Cal. Oct. 24, 2007) (holding that agreement released only the "claims that existed at the time of the agreement" because this "construction is supported by" the agreement's waiver of rights under California Civil Code section 1542, which "relates only to those claims that 'exist ... at the time of executing the release'"); *see also Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC,* SACV 11-1463 DOC, 2012 WL 3903454, at *7 (C.D. Cal. Sept. 6, 2012).

The authorities cited by Defendants do not support their position that a Section 1542 waiver releases future claims.  Neither *Winet v. Price*, 4 Cal. App. 4th 1159, 1171 (1992), nor *Winet v. Price*, 4 Cal. App. 4th 1159, 1171 (1992), addressed that issue.  Neither did *United States v. Sardie*, 191 F. Supp. 2d 1128, 1134 (C.D. Cal. 2000), in which the Court noted only that the waiver evidenced "the parties' intentions to include all unknown claims in the Release."  None of these cases stands for the notion that a §1542 waiver evidences a party's intention to release future claims that did not exist at the time of the settlement.  *Marder v. Lopez*, 450 F.3d 445, 452 (9th Cir. 2006), is inapposite because the court interpreted the release in that case as relinquishing the plaintiff's claim of copyright ownership altogether.  No such assertion has been made or could be made about the Settlement Agreement here.

/ / /

Defendants materially truncate the text of Section 2.3 of the Settlement Agreement to make it appear that Mr. Wakefield agreed to never file a lawsuit against them ever again, for anything, at any time in the future. (Doc. 106-1 at 12.).  They would have the Court believe that the first sentence of that provision ends with an agreement by Mr. Wakefield to never file a lawsuit against Defendants "at any time hereafter."  *Id.*  But the sentence does not end there.  Instead, it says "at any time hereafter, ***with respect to the matters released under this Agreement.***" (Doc. 106-1 at § 2.3 (emphasis added).)  The portion of the sentence omitted by Defendants renders their argument baseless and indeed circular.

Similarly, Defendants' attempt to invoke the words "may have" in Section 3.1 of the Settlement Agreement is debunked by considering those words in the context in which they appear.  Unlike the use of similar words in a different context in *Augustine Medical, Inc. v. Progressive Dyanmics, Inc.* 194 F.3d 1367, 1371 (Fed. Cir. 1999), those words are not "necessarily future-oriented" (Doc. 106-1 at 13) as they appear in the present parties' Settlement Agreement. Instead, the words "may have" are followed in this Settlement Agreement with language making clear that the release applies only to claims which Mr. Wakefield "may have" as of the date of the settlement.  These include references to claims "relating directly or indirectly to any transaction, affairs or occurrences between them ***to date***" and those "related to the causes of action for copyright infringement ***as set forth in the Wakefield Actions***." (Doc. 106-1 at § 3.1 (emphasis added); *see also id.* § 4.1.)

The phrases "known or unknown" and "suspected or unsuspected" do not expand the release to include claims for Defendants' future conduct.  *See Jardin v. Datallegro, Inc.*, 08CV1462-IEG-RBB, 2009 WL 186194, at *5 (S.D. Cal. Jan. 20, 2009).  In *Jardin* the plaintiff agreed to a release with its departing CEO and then later sued his new company for patent infringement.  *Id.* at *1.  The release in that

5

case was expressly "intended to have the broadest possible application" and included "all claims related in any way to the transactions or occurrences between them to date, to the fullest extent permitted by law, including, but not limited to, … all other losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with Frost's relationship with XPrime." *Id.* The defendant moved for summary judgment, arguing that the infringement was released. *Id.* at *6. Rejecting that argument, the Court reasoned, first, that "the language of the contract does not explicitly release liability for future misconduct" and noted that "[a]s a general rule, contractual limitations on liability for future conduct must be clearly set forth." *Id.* (citing 17A Am.Jur.2d Contracts § 282). Next, the Court pointed out that exculpatory releases for pre- and post- settlement conduct generally only arise "at the beginning of a business relationship, not at the end of the relationship" and reasoned that the parties "would have no reason to indemnify themselves from liability for future acts if they planned to have no future relationship." *Id.* Lastly, the Court pointed out that the defendants' reading would effectively strip the plaintiff of all rights to the patent and concluded, "***no reasonable businessman would enter a release that would be tantamount to a license to commit patent infringement***." *Id.* (emphasis added).

The similarities here are striking. Defendants contend that the Settlement Agreement releases them from any liability for infringing Mr. Wakefield's copyright anytime they please in the future. Their position is that Mr. Wakefield's release allows them to display the infringing sculptures wherever they want, whenever they want, with impunity. Effectively, they want the Court to treat the release as a form of irrevocable license to display, not just copies of *Untitled*, but copies of any of Mr. Wakefield's sculptures. The Court must emphatically reject this interpretation. Serial infringers should not obtain irrevocable licenses to copyrighted works by entering into a settlement agreement with copyright holders

6

who bring claims against them for infringement.

To be clear, if the Settlement Agreement authorized Defendants to display Mr. Wakefield's copyrighted sculpture on their properties it would have said so.  It did not.  Defendants did not acquire a license to Mr. Wakefield's copyrights.

Defendants repeatedly cite self-serving testimony of Igor Olenicoff about what he subjectively intended by different terms of the Settlement Agreement.  (*See* Doc. 106-1 at 7-15; Doc. 106-2 at ¶ 8-38.)  Regardless of what his intentions might have been, it was Mr. Wakefield's intention and understanding that in entering into the Settlement Agreement he was only releasing claims that pre-dated the Settlement Agreement, but was not releasing Defendants from any infringement that might occur in the future.   (Wakefield Decl. at ¶ 7; Statement of Genuine Disputes ("SGD") ¶¶ 7, 10, 11.)  As explained above, the Settlement Agreement did not release Defendants from future claims.  But should the Court decide that is not clear, then there would at least be disputed factual issues regarding the parties' intentions and understandings.

### B.    A Release from Liability for Future Intentional Acts Is Unenforceable Under California Law.

While there is a "strong judicial policy that favors settlements of disputes in general," *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007), that is not the end of the inquiry.  "One significant exception to this deference toward releases is that '[a]n attempted exemption from liability for a future intentional tort or crime is generally held void.'" *Tax Relief, Inc. v. Selb*, 220CV10090CASMAAX, 2021 WL 8919077, at *7 (C.D. Cal. June 7, 2021) (quoting *Jardin v. Datallegro, Inc.*, No. 08-cv-1462-IEG-RBB, 2009 WL 186194, at *6 (S.D. Cal. Jan. 20, 2009)).  This is codified under California law by statute. *See* CAL. CIV. CODE § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or

negligent, are against the policy of the law.")

Courts have consistently applied Section 1668 to bar any enforcement of a release against future intentional acts. *See, e.g., Tax Relief*, 2021 WL 8919077, at *7 (ruling that release does not bar claims "based on conduct occurring after the making of that agreement"); *Carpenters Sw. Admin. Corp. v. T&R Painting & Drywall*, LACV166498VAPPLAX, 2017 WL 4769437, at *6 (C.D. Cal. Aug. 10, 2017) (relying on Section 1668 to reject assertion that release covered "any future conduct related to" agreements); *South Coast Properties, LLC v. T-Mobile West LLC,* No. CV-15-0388-MFW (AGRx), 2015 WL 4554368, at *5 (C.D. Cal. July 28, 2015) ("[A]s a matter of statute and California public policy," "releases are void to the extent they purport to release [a party] from claims of fraud"); *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 148 (2018) ("section 1668 negates a contractual clause exempting a party from responsibility for fraud or a statutory violation only when all or some of the elements of the tort are concurrent or future events at the time the contract is signed")

This public policy is sound.  Nobody can contract for permission to commit future deliberate wrongdoing.  Entering into a settlement agreement does not allow the settling parties to commit intentional torts against each other in the future without recourse. Yet that is exactly the basis for the Defendants' Motion for Summary Judgment. They claim that the release contained in the Settlement Agreement precludes liability for their willful copyright infringement even years later. That defense fails under Section 1668. *See Appel v. Boston Nat'l Title Agency, LLC*, 3:18-CV 0873-RSH-AHG, 2022 WL 3582776, at *6 (S.D. Cal. Aug. 19, 2022) ("Section 1668 prevents exemption of liability for future intentional wrong"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) ("a violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable as contrary to the public policy of California").

Defendants may contend that their infringement was not intentional. As is discussed below, however, there is ample evidence that Defendants knowingly and willfully violated a valid injunction and lied about having removed and destroyed all infringing copies. That satisfied the intentionality requirement. At the very least, there are material issues of fact in dispute as to whether or not Defendants acted intentionally. If they did, then the Settlement Agreement cannot absolve them, as a matter of law.

### C. Defendants' Obtained the Settlement Agreement Through Fraud.

#### 1. The evidence of fraud is overwhelming.

There are—at a minimum—material factual disputes whether Defendants obtained the Settlement Agreement through fraud and, for that additional reason, cannot invoke it to defeat Mr. Wakefield's claims in this case. "It is settled law that if a defrauded party is induced by false representations to execute a contract, the party has the option of rescinding the contract or affirming it and recovering damages for the fraud." *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1153 (2005). "In the usual case of fraud, where the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Vill. Northridge Homeowners Assn. v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010).

There is abundant—overwhelming—evidence that Mr. Wakefield was fraudulently induced to sign the Settlement Agreement. Defendants repeatedly lied to him about the existence, removal, and destruction of the infringing sculptures that were later discovered to be on display in Florida. The falsehoods began with Defendants' discovery responses in *Wakefield I*, when they denied that any other infringing works were displayed on their other properties. This turned out to be a lie. After the jury's verdict, Mr. Wakefield discovered another infringing sculpture that the Court in *Wakefield I* repeatedly found "should have been disclosed" by the Olen parties during discovery. (Brockland Decl. at Ex. 3,

9

p. 20 (*Wakefield 1* Doc. 120); Ex. 2 at 2-3 (*Wakefield 1* Doc. 164).)

The lies continued after Mr. Wakefield brought his second action (*Wakefield II*) to recover for Defendants' infringing display of that separately uncovered knockoff.  Defendants submitted a declaration representing under penalty of perjury that they had removed all infringing knockoffs of *Untitled* from all Olen-controlled properties. (Doc. 98-25, Olenicoff Declaration at ¶ 7.)  They used this falsehood to induce Mr. Wakefield to enter into the Settlement Agreement.  Indeed, on the morning the Settlement Agreement was executed, Mr. Wakefield's attorneys asked Defendants' counsel to confirm whether all of the infringing works had been destroyed and they said, "Yes, that is already confirmed in our opposition to your motion for sanctions."  (Doc. 98-26, Ault e-mail, January 19, 2018.)  Mr. Wakefield would not have entered into the settlement if not for these false assurances.  (*See* Wakefield Decl. at ¶ 6.)

Defendants do not deny making these representations.  They do not deny that their statements were false.  It is absurd for them to nevertheless assert that Mr. Wakefield "has not submitted evidence of fraud" and seek summary judgment on that basis.  (Doc. 106-1 at 18-20.)  Obviously, they cannot justify summary judgment just by making the implausible claim that Mr. Olenicoff was unaware of the existence of other infringing works at the time he swore under oath that all had been removed.  The Court is not obligated to accept at face value his dubious claim that he did not mean to deceive anyone; he just forgot.  To do so would be particularly absurd because this is not the first time Defendants have trotted out their "Whoops!  We forgot!" routine after Mr. Wakefield uncovered an infringing work they had failed to disclose.  When Mr. Wakefield moved to re-open evidence following the trial in *Wakefield I*, after uncovering an undisclosed infringement displayed at the Olen-controlled property known as Two Venture Plaza, Mr. Olenicoff swore in a declaration that he "merely forgot about the sculpture located at Two Venture Plaza" and that his prior nondisclosure was "an oversight on my

10

part, and I certainly didn't intend to mislead anyone." (Brockland Decl., Ex. 4 at ¶ 2 (*Wakefield I*, Doc. 117-1).)  Defendants' attempts to explain away their admitted falsehoods just a repeat their standard playbook. The Court should not be fooled.

Nor can Defendants waive away the powerful evidence of their fraudulent inducement just because Mr. Wakefield had no contemporaneous knowledge that he was being defrauded.  (*See* Doc. 106-2.)  The evidence of fraud includes Defendants' own sworn declarations, documents and testimony.  Their knowledge of the infringing displays at Quantum Town Center is documented in a written application they submitted to the City of Boynton Beach before installing the works. (SGD ¶ 43; Doc. 98-34, Revised Art Application City of Boynton Beach, Florida by Olen, January 2, 2014.)  That application was part and parcel of their obtaining occupancy permits, which are essential to Olen's business.  (SGD ¶¶ 43-44; Doc. 98-34, Revised Art Application City of Boynton Beach, Florida by Olen, January 2, 2014, and Revised Art Application City of Boynton Beach, Florida by Olen, January 2, 2014.)

Defendants' intent to deceive is also evident from their actions in *Wakefield I* and *Wakefield II*.  Perhaps most damning of all is their complete disregard for this Court's injunction entered in *Wakefield I*.  They never bothered to ask any of the individual property managers to check for any displays of the infringing works. (SGD ¶ 43.)  Despite being ordered to destroy all such works in a permanent injunction, Defendants did not even take basic measures like asking their own employees whether any infringing works were still on display. (SGD ¶ 43.)  They admittedly never instructed their employees to remove the infringing materials. (SGD ¶ 43.)

///

///

///

**2.     Defendants' self-proclaimed lack of records or knowledge about the existence and location of other infringements shows reckless disregard for the truth.**

Even if it were to be believed, Defendants' insistence that they had no records or ways of knowing about the location or existence of other infringing copies does not defeat Mr. Wakefield's claim of fraud.  If Defendants' statements are true, then Mr. Olenicoff had no legitimate basis for stating in his sworn declaration that all of the infringing works had been removed.  Under California law, a fraud claim arises when a representation is false and the speaker knew that it was false when made, *or* made it recklessly and without regard for its truth. *Judicial Council of California Jury Instructions,* CACI No. 1900 (2022 edition).  If Mr. Olenicoff is to be believed, then his own testimony reveals that he had a reckless disregard for the truth.

If Defendants honestly did not know where all the infringing sculptures were located or how many existed, then why tell the Court and Mr. Wakefield that all infringing copies had been removed and destroyed?  The answer is obvious: regardless of the truth, Defendants wanted the Court to think that they had fully complied with the injunction, and they wanted Mr. Wakefield to sign a release. Informing the Court or Mr. Wakefield that other infringing copies might exist would not have brought the end of the litigation as Defendants wanted. Defendants' attempts to blame Mr. Wakefield for believing them are meritless.  At best, they made misrepresentations recklessly and without any regard for the truth. At the very least, Mr. Wakefield has raised material issues of fact whether the Settlement Agreement is voidable for fraudulent inducement.

**3.     The merger clause does not excuse Defendants' fraud.**

This Court has ruled that "California law makes clear that an agreement containing terms like the ones at issue here does not bar a claim for fraud in the inducement."  (Doc. 60 at 8.)  Ignoring that determination, Defendants seek

summary judgment because of the merger clause already considered by the Court. (*See* Doc. 106-1 at 20-21.)  But the law has not changed, and Defendants provide no basis for upending the Court's prior ruling.

As the Court stated, "California courts are virtually unanimous in holding that 'a contract provision stating that all representations are contained therein does not bar an action for fraud'" *Juice It Up Franchise Corp. v. Budhraja*, 2008 WL 11334598, at *4 (C.D. Cal. July 10, 2008)(quoting *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 992 (1995) (holding that an agreement providing that no representations had been made by any party except as set forth in the agreement did not bar an action for fraud)).  Indeed, it is the "general rule in California that a boilerplate clause stating that the parties relied only on representations contained in the contract does not bar, as a matter of law, a claim for intentional misrepresentation or fraudulent concealment." *Burton Way Hotels, Ltd. V. Four Seasons Hotels Ltd.,* 2012 WL 12883616, at *22 (C.D. Cal. Feb. 23, 2012)(cleaned up).  This makes sense, "on sound grounds of justice": a wrongdoer "cannot escape liability for his own fraud or false representations by the insertion of provisions to the effect that the contract contains all the representations, promises and statements made by the [wrongdoer] or its agents which have induced the [alleged victim] to enter into the agreement." *Simmons v. Ratterree Land Co.,* 17 P.2d 727, 728 (Cal. 1932).  (*See* Doc. 60 at p. 8.) Defendants' stubborn insistence otherwise is without merit. They are not entitled to summary judgment.

## V.   RESTITUTION AND PUNITIVE DAMAGES SHOULD BE RESERVED FOR LATER DECISION.

Defendants also seek summary judgment on Mr. Wakefield's claim for recission of the Settlement Agreement because he has not returned the $110,000 settlement proceeds.  (*See* Doc. 106-1 at 21.)  He is not, however, required to do so at this time.  Section 1693 of the California Civil Code makes clear that Mr.

13

1  Wakefield cannot be denied recission for failing to return the settlement proceeds
2  and states:

3      A party who has received benefits by reason of a contract that is subject
4      to rescission and who in an action or proceeding seeks relief based upon
5      rescission shall not be denied relief because of a delay in restoring or
6      in tendering restoration of such benefits before judgment unless such
7      delay has been substantially prejudicial to the other party; but the court
8      may make a tender of restoration a condition of its judgment.

9  CAL. CIV. CODE §1693.

10      The statute was adopted "to address any unfairness that the rescinding
11  parties might face if they were insolvent or without the funds to restore
12  consideration prior to filing suit." *Village Northridge Homeowners Assn. v. State*
13  *Farm Fire & Casualty Co.*, 50 Cal.4th 913, 928 (2010).  The circumstances here
14  illustrate the reason for the statute: a billionaire defrauded Mr. Wakefield and now
15  wants to prevent him from obtaining recission unless he first pays back the original
16  settlement proceeds. "Rescission and restoration are required only under equitable
17  principles and to prevent the taking of unfair advantage." *M.G. Chamberlain &*
18  *Co. v. Simpson*, 173 Cal.App.2d 263, 279 (1959).  "Restoration is not required
19  unless the ends of justice require it." *Id.* Defendants have not shown, and cannot
20  show, any prejudice arising from the delay.  They have a vast real estate empire
21  and will not be prejudiced by conditioning the tender on the judgment ultimately
22  entered against them in this case.

23      Regarding punitive damages, Defendants argue simply that there is
24  insufficient evidence to establish Plaintiff's claim.  (*See* Doc. 106-1 at 22.)  The
25  critical evidence that they conveniently ignore includes that they flouted a valid
26  injunction entered by this Court, and, by their own admission, made no serious
27  effort to comply with it, while falsely claiming that they had done so.  All they did
28  was remove the copies that Plaintiff already knew about, even though the

14

injunction was not limited to those copies, and Defendants had an affirmative duty to ascertain that they were complying with the injunction.  Their failure to do so is the type of activity that has been used to support claims for punitive damages.  *See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp*., 768 F.2d 1001 (9th Cir. 1985).  *See also DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1053 (E.D. Cal. 2013) ("Conduct in knowing violation of the law may satisfy the requisite showing for punitive damages") and *Cloud v. Casey*, 76 Cal. App. 4th 895, 912 (1999) ("Evidence that the decision-maker attempted to hide the improper basis with a false explanation also supports the jury's determination that the conduct was willful and in conscious disregard of Ms. Cloud's rights.")  There is no basis for granting Defendants summary judgment on Mr. Wakefield's claim for punitive damages.

## VI.    DEFENDANTS ARE NOT IMMUNE FROM STATUTORY DAMAGES.

Defendants make a cursory argument that they should receive summary judgment on Mr. Wakefield's claims for statutory damages under the Copyright Act because their infringement "commenced before registration" of Mr. Wakefield's copyright.  (*See* Doc. 106-1 at 23.)  This argument fails for at least four independently sufficient reasons.

First, this argument lacks factual support.  Defendants cite no evidence supporting it and provide no supporting evidence in their Statement of Uncontroverted Facts.  They make no showing equating their infringement in Florida after the settlement in January 2018 with any infringement that predated Mr. Wakefield's 2012 copyright registration.

Second, Defendants have failed to plead this defense—or even to disclose it during discovery—even though it "operates akin to an affirmative defense" and can be waived if a party does not raise the issue until the eleventh hour. *See Sullivan v. Flora, Inc.*, 936 F.3d 562, 573 (7th Cir. 2019) (defendant waived defense to statutory damages under defense under 17 U.S.C. § 412 for

infringement beginning before registration); *see also Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 993, 1013 (11th Cir. 1982) ("[C]ourts have generally treated statutory exemptions from remedial statutes as affirmative defenses."). But Defendants sat in silence until raising this issue for the first time in a motion filed 90 days before trial. Mr. Wakefield has been prejudiced by being deprived of the opportunity to conduct discovery on this issue or to consider it in framing his damage case and deciding whether to retain an expert witness.

Third, the infringement for which Mr. Wakefield is suing Defendants in this case is legally distinct from any infringement that predated his copyright registration—certainly, there is at least a material issue of fact regarding such distinctiveness. As the Ninth Circuit has recognized, preregistration infringement does not preclude statutory damages for later infringement if there is a "legally significant difference" between the pre- and post-registration infringement. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700 (9th Cir. 2008); *see also Unicolors, Inc. v. H&M Hennes & Mauritz*, L. P., 142 S. Ct. 941, 945, 211 L. Ed. 2d 586 (2022) (17 U.S.C. § 412's bar is not absolute). Courts have held that Section 412 does not apply after "an appreciable duration of time." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 159 (2d Cir. 2007); *see also Rosen v. Netfronts, Inc.*, No. CV 12-658 CAS-FFMx, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013*) (five-year cessation between pre and post registration infringement prevented application of section 412 as bar to statutory damages). In this case, any preregistration infringement was not only years earlier and on the other side of the country but was also separated from the infringement at issue in this case by the filing of an earlier lawsuit, a jury trial, the issuance of an injunction and destruction order, an appeal, the filing of a second lawsuit, and entry into a settlement agreement.

At the conclusion of Mr. Wakefield's first lawsuit—for infringement committed by Defendants dating back to before his copyrighted was registered—

16

the Court entered a permanent injunction.  Defendants were ordered to destroy all of the infringing works; cease from any infringement in the future; and notify the Court confirming their compliance with the destruction order (Doc. 98-12, *Wakefield I* Injunction.)   Defendants filed a Notice of Compliance on January 24, 2018, stating that they had removed and destroyed all of the infringing copies from all of their properties. (*Wakefield I*, Doc. 181, Notice of Compliance with Judgment and Declaration in Support Thereof.)  If these are not sufficient to make the situations legally distinct, it is hard to imagine what would be.

Nor is that all.  There is also a fourth reason why Mr. Wakefield should not be barred from claiming statutory damages: the Defendants are estopped from claiming that post-injunction infringement was a continuation of infringement that began before registration.  Equitable estoppel "is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." *Golden Gate Way, LLC v. Enercon Services, Inc.*, 572 F. Supp. 3d 797, 830 (N.D. Cal. 2021) (internal quotation omitted).  The elements of estoppel include showing: "(1) the party to be estopped must know the facts; (2) [h]e must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.'" *Id.* (quoting *DRG/Beverly Hills v. Chopstix Dim Suum Café and Takeout II, Ltd.,* 30 Cal. App. 4th 54, 59 (1994)) (brackets in original).  After the injunction was entered, Defendants repeatedly represented that they had removed ***all*** of the infringing copies from ***all*** of their properties, and they later filed a Notice of Compliance stating that they had destroyed them as well. They represented that the infringing works had all been removed to induce Mr. Wakefield to enter into the Settlement Agreement.  And, in fact, they induced him to do exactly that.  (*See* Wakefield Decl. at ¶ 6.)  Mr. Wakefield's reliance on Defendants' misrepresentations about

17

removing the infringing copies required by the permanent injunction should stop them from now claiming that their later infringement was a mere continuation from before.

## VII.   THERE IS POWERFUL EVIDENCE THAT DEFENDANTS' INFRINGEMENT WAS WILLFUL.

Defendants are not entitled to summary judgment on the issue of willful infringement.  "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).  Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment. *Sega Enter. Ltd. v. MAPHIA*, 948 F.Supp. 923, 936 (N.D.Cal.1996).  But in this case, the evidence of willfulness is so clear and positive as to support partial summary judgment of willfulness on the part of Olen Properties.  (*See, e.g.*, Doc. 98-1 (Mem. Supp. Partial Summ. J.) at 13-18.)  And Olenicoff's only hope of avoiding a willfulness finding is that the trier of fact will accept this convicted felon's claim that he somehow forgot about the undisclosed sculptures in Florida.  As to either Defendant, there is abundant evidence to support a finding of knowledge; and there is certainly evidence to support a finding of reckless disregard in violating an injunction and in swearing and representing that all the infringing sculptures had been removed while leaving two of them in place and doing nothing to ensure compliance with the Court's order or with the Defendants' repeated representations.  Certainly, Defendants are not entitled to summary judgment on willful infringement.

/ / /

/ / /

/ / /

## VIII. THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE ON PLAINTIFF'S RICO CLAIMS.

Lastly, Defendants have not shown they are entitled to summary judgment on Mr. Wakefield's claim for civil RICO violations.  Their threadbare argument relies only on their erroneous assertion that there is no evidence that their infringement was "willful" so as to demonstrate a pattern of racketeering activity by way of engaging in criminal copyright infringement.  The element of willfulness for criminal copyright infringement is the same as in the civil context. *United States v. Cross*, 816 F.2d 297, 303 (7th Cir. 1987) ("In order to understand the meaning of criminal copyright infringement it is necessary to resort to the civil law of copyright."); *see also United States v. Wise*, 550 F.2d 1180, 1189 n. 14 (9th Cir. 1977) (noting that there is a "general principle in copyright law of looking to civil authority for guidance in criminal cases").

As explained above, the evidence of Defendants' willfulness is substantial. Their bald claims that they acted in good faith do not make it so—especially when the circumstances compellingly indicate that they are willful actors who knew exactly what they were doing.  There is ample evidence to defeat Defendants' motion for summary judgment on the RICO claims.  (*See supra* §§ II, VII.)

## IX. CONCLUSION

There are, at a minimum, material issues of fact in dispute on Defendants' Motion for Summary Judgment.  It should be denied.


Dated: December 19, 2022              **ONE LLP**


                                        */s/ William J. O'Brien*
                                        William J. O'Brien

                                        *Attorneys for Plaintiff,*
                                        *Donald Wakefield*

1

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

2

    The undersigned, counsel of record for Plaintiff, Donald Wakefield, certifies

3

that this brief contains 6,123 words, which complies with the word limit of L.R. 11-

4

6.1.

5

6

Dated: December 19, 2022        **ONE LLP**

7

8

      _/s/ William J. O'Brien_
      William J. O'Brien

9

      *Attorneys for Plaintiff,*

10

      *Donald Wakefield*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**