Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
**The Business Litigation Group, P.C.**
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone: 415.765.6634
Facsimile: 415.283.4804

Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
**Amundsen Davis LLC**
120 South Central, Suite 700
St. Louis, MO 63105
Telephone: 314.719.3732
Facsimile: 314.719.3733

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
**One LLP**
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA 92660
Telephone: 310.866.5157
Facsimile: 310.943.2085

*Attorneys for Plaintiff, Donald Wakefield*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

DONALD WAKEFIELD,

Plaintiff,

v.

IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,

Defendants,

Case No. 8:21-cv-1585-CJC-DFM
*Assigned to: Hon. Cormac Carney*

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Hearing Date: January 9, 2023
Hearing Time: 1:30 p.m.
Courtroom: 9B

Complaint Filed: September 27, 2021
Trial Date: February 21, 2023

Plaintiff, Donald Wakefield, in accordance with Fed.R.Civ.P. 56 and Local Rule 56-2, submits this Statement of Genuine Disputes in Opposition to the Motion for Summary Judgment by Defendant Olen Properties Corp. ("Olen") and Defendant Igor Olenicoff ("Olenicoff") (collectively the "Olen Parties").

## I. WAKEFIELD'S RESPONSE TO THE OLEN PARTIES' ALLEGED UNCONTROVERTED FACTS

| Olen Parties' Statement of Uncontroverted Facts | Plaintiff's Statement of Genuine Disputes |
|---|---|
| 1. On November 30, 2012, Wakefield filed a complaint in United States District Court, for the Central District, Southern Division, against the Plaintiffs, for copyright infringement; contributory copyright infringement; and vicarious copyright infringement related to asserted infringement of a sculpture known as Untitled, Case No. 8:12-cv-02077-AG-RNB ("Wakefield I"). See 8:12-cv-02077-AG-RNB at [Dkt. 1] Complaint. | 1. Undisputed for purposes of this motion. |
| 2. After a trial and appeal, on June 5, 2017, final judgment was entered in favor of Wakefield awarding him $450,000 in damages. See 8:12-cv-02077-AG-RNB at [Dkt. 163] Amended Judgment. Plaintiffs made payment to Wakefield for the full amount of the Judgment. See 8:12-cv-02077-AG-RNB at [Dkt. 175] Stipulation for Discharge of Supersedeas Bond. | 2. Disputed. This statement misleadingly characterizes the final judgment in *Wakefield I*. The judgment also:<br>1) permanently enjoined the Olen Parties from infringing Mr. Wakefield's copyrighted sculpture *Untitled*; and<br>2) ordered the Olen Parties to remove all photographs of the infringing works, referred to as *Human Nature's Many Faces* and *A Tear Must Fall,* from their websites; and<br>3) ordered the Olen Parties to destroy all of the infringing |

| | |
|---|---|
| | works; and<br>4) ordered the Olen Parties to file with the Court and serve to Mr. Wakefield a sworn declaration stating that they have complied with the destruction order and provide specific details of such compliance by way of either videotape or date-stamped photographs showing the destruction; and<br>5) exempted the sculpture located at 7 Corporate Plaza Drive in Newport Beach, CA, from the destruction order; and<br>6) ordered "strict compliance" with the Judgment unless the parties mutually agreed otherwise<br>*See* 8:12-cv-02077-AG-RNB Dkt. 132, 163. |
| 3. On July 5, 2017, Plaintiff filed a complaint in the United States District Court, for the Central District, Southern Division, against the same Defendants for copyright infringement; contributory copyright infringement; and vicarious copyright infringement related to asserted infringement of *Untitled,* Case No. 8:17-cv-01147-AG-DFM("*Wakefield II.*"). *See* 8:17-cv-01147-AG-DFM at [Dkt. 1] Complaint | 3. Undisputed for purposes of this motion. |
| 4. The crux of *Wakefield II* was the discovery of additional copies of *Untitled* that neither Wakefield nor the Defendants were aware of at the time of the trial in *Wakefield I.* Plaintiff asserted that Defendant failed to disclose the location of all copies of *Untitled. See* 8:17-cv- | Disputed. The crux of *Wakefield II* was the Olen Parties' unauthorized reproduction and public display of Mr. Wakefield's copyrighted sculpture at 2 Venture Plaza in Southern California. *See* Dkt. 98-23; 8:17-cv-01147-AG-DFM Dkt. 1 (Complaint). |

| | |
|---|---|
| 01147-AG-DFM at [Dkt. 1] Complaint | |
| 5. In *Wakefield II,* in response to a Motion for Sanctions for Defendants' failure to disclose additional copies, Defendants admitted and put Plaintiff on notice that they had no independent recollection, inventory, records, or other method of unequivocally identifying the total number of pieces of the subject sculptures. *See* 8:17-cv-01147-AG-DFM at [Dkt. 21-2] Declaration of Igor M. Olenicoff in Support of Opposition to Motion for Sanctions. | 5. Disputed. The Opposition filed by the Olen Parties stated that they had removed "all" of the infringing works from "all" Olen controlled properties in July of 2017. Attached to the Olen Parties' Opposition was a sworn declaration signed by Mr. Olenicoff which also stated that "all" of the infringing works had been removed from "all" Olen controlled properties sometime in July of 2017 as well. *See* 8:17-cv-01147-AG-DFM Dkt. 21, 21-2. |
| 6. Specifically, Mr. Olenicoff stated in the Declaration:<br>3. The pieces ordered from China were received in various shipments, there were numerous complications after the orders were placed, and at times the shipments contained less items than expected or alternate pieces that were not even ordered. In short, the delivery of the sculptures was entirely disorganized.<br>4. Neither Olen nor I maintained any records of what items were received from China or the locations where the sculptures were installed, as these pieces, like all the others in the Olen collection, were simply not a prominent part of the business operations of Olen.<br>5. Olen has artwork and sculptures at nearly every property in its portfolio which | 6. Disputed and Objection: Mr. Olenicoff's declaration speaks for itself and is not admissible under the rule of completeness without the paragraph immediately following the quoted portions, stating that that "In July 2017 … the Olen Parties removed all sculptures of "Untitled" and derivatives pieces from all Olen controlled properties, including the Olen headquarters and 2 Venture locations."<br><br>In addition, the quoted portions of Mr. Olenicoff's declarations are not truthful in the following respects:<br><br>(A) Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-07, G. Brockland Decl., Ex. 27 (Dkt. 98-34) Olen Revised Art Application, City of Boynton Beach, FL (Olen |

| | |
|---|---|
| includes over six million square feet of office space. Additionally, there are hundreds of pieces of artwork and sculptures at the Olen headquarters. The Olen art collection pieces were acquired and placed over the last five decades to satisfy my personal passion for art, and not for any commercial purpose.<br>6. By the time of the Original lawsuit and the related discovery process, I had no independent recollection of the details of the purchase of sculptures from China. Had any further inquiry been done by Wakefield on the issue of placement of a piece at 2 Venture in Irvine, the Olen Parties would have informed him that there are no business records at Olen, or kept personally by me, to verify the exact number or location of the "Human Nature's Many Faces" sculpture and the responses provided in discovery were based solely upon the memory of the individuals involved and interviews with existing operational staff. | 000003-000064);<br><br>(B) Olen displayed *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center to obtain an occupancy permit from the City of Boynton Beach, Florida, which was ***essential*** to its entire business. *See* G. Brockland Decl. Ex. 1; D. Lyon Depo Tr. 36:5-10 and 22:1-23 and 35:25-36:10.)<br><br>(C) there is not artwork and sculptures "at nearly every property" in Olen's portfolio. *See* Dkt. 98-33, p. 1047, I. Olenicoff Depo. Tr. 123:21-124:2 ("…I wouldn't say it's nearly every property. It's multiple properties.") |
| 7. The parties then entered into a Settlement Agreement and Mutual General Release on or about January 18, 2018 (the "Settlement Agreement"), the purpose of which was to resolve all disputes between the parties and filed a joint stipulation of dismissal of Wakefield II. See Case No. 8:17-cv-01147-AG-DFM at [Dkt. 24]; Sax Decl. Ex. 1 | 7. Disputed. The parties stated that the purpose of entering into the settlement agreement was only to resolve all ***existing*** disputes between them. (*See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement at Section 1.2 ("**Purpose**. The purpose of the Agreement is to settle and compromise all disputes and controversies existing among the Parties hereto, including but not limited to any |

| | |
|---|---|
| (Settlement Agreement), which Decl. is attached hereto . | and all claims that are raised or might have been raised in the 2017 Action.")) |
| 8. The Settlement Agreement at Paragraph 1.1 provides: **Wakefield Action.** Two consolidated actions entitled **Donald Wakefield v. Igor Olenicoff and Olen Properties, Inc., et al.,** Case Nos. SACV12-2077 AG (RNBx) ("2012 Action") and 8:17-cv-01147-AG-RNB ("2017 Action") are pending in the United States District Court, Central District of California, Southern Division (collectively the "Wakefield Actions"). In the Wakefield Actions, Wakefield's Complaints assert causes of action against the Olen Parties for copyright infringement of a sculpture known as "Untitled." | 8. Undisputed for purposes of this motion. |
| 9. The Settlement Agreement at Paragraph 1.2 provides: **Purpose.** The purpose of this Agreement is to settle and compromise ***all disputes and controversies*** existing among the Parties hereto, ***including but not limited to any and all claims*** that are ***raised or might have been raised*** in the 2017 Action. Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 1.2 (emphasis added) | 9. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |
| 10. Paragraph 1.2 was meant to be all encompassing for any claims, known or unknown, including any claims that could be brought. Sax | 10. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. |

| | |
|---|---|
| Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:13-17; 114:5-16. | By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 11. Mr. Wakefield acknowledges that the purpose of the Settlement Agreement was to settle and compromise all disputes and controversies existing among the parties, as set forth in Paragraph 1.2 of the agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 98:11-22 | 11. Objection: not a material fact because the parties intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. |
| 12. The Settlement Agreement at Paragraph 2.3 provides in relevant part:<br>**No Other Claims.** Other than the Wakefield Actions and a complaint filed with the FBI in 2012, Wakefield covenants and represents that he has not filed any complaints, grievances, charges, or lawsuits against the Olen Parties, with any governmental agency or court, and ***that he will not do so at any*** | 12. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |

| | |
|---|---|
| ***time hereafter,*** with respect to the matters released under this Agreement. . . . Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 2.3 (emphasis added). | |
| 13. The Settlement Agreement at Paragraph 3.1 provides: **General Release by Wakefield.** Wakefield . . . ***forever releases and discharges the Olen Parties*** . . . from ***any and all claims,*** demands, debts, liabilities, accounts, obligations, costs, expenses, liens, actions, cause of action (at law, in equity, or otherwise), rights, rights of action, rights of indemnity (legal or equitable), rights to subrogation, rights to contribution ***and remedies of any nature whatsoever, known or unknown*** (except for those arising as a result of a breach of any provision of this Agreement), ***suspected or unsuspected,*** that Wakefield ***may have*** against the Olen Parties, including, but not limited to any actions relating directly or indirectly to any transactions, affairs or occurrences between them to date, including, but not limited to all loss, liability, damages, claims, charges, complaints or demand and including ***any claims set [sic] related to the causes of action for copyright infringement as set forth in the Wakefield Actions.*** | 13. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |

| | |
|---|---|
| Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 3.1 (emphasis added). | |
| 14. The significance of including the language "remedies of any nature whatsoever" in Paragraph 3.1 was to release any claims that could occur of any kind. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 115:9-18. | 14. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 15. The significance of including the language "known or unknown" in Paragraph 3.1 was, in plain English, to bar any claims by Mr. Wakefield that he could come up with, even those that he was unaware of. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 115:19-116:2. | 15. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the |

| | |
|---|---|
| | Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 16. The significance of including the language "suspected or unsuspected" in Paragraph 3.1 was to release any further claims, even if Mr. Wakefield did or did not suspect he had further claims. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:3-9. | 16. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 17. Paragraph 3.1 of the Settlement Agreement included a last sentence that was crossed out and initialed by the parties. Sax Decl. Ex. 1 | 17. Undisputed for purposes of this motion. |

| | |
|---|---|
| (Settlement Agreement) at ¶ 3.1; Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24; Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 105:18-106:1. | |
| 18. The crossed-out language provides: "Nothing in this Agreement shall be construed to mean that Wakefield is waiving or releasing claims to enforce this Agreement, ***or any relief granted in the 2012 Action."*** Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 3.1 (emphasis added); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24; Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 105:18-106:1. | 18. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |
| 19. The intent of crossing out the last sentence was to remove the language from the Settlement Agreement (Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 106:7-11; 108:3-8) and to remove any possibility of Mr. Wakefield coming back to Defendants with further claims (Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:10-24). | 19. Undisputed only that the intent of crossing out the last sentence of Section 3.1 was to remove the language from the Settlement Agreement.<br><br>Objection and disputed insofar as the parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. |
| 20. The further intent of the crossing out the last sentence was to waive enforcement of the injunctive relief granted in Wakefield I (the 2012 Action) which required destroying sculptures to avoid any possibility of Mr. Wakefield reopening any claims. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 116:25-117:8, 12-16. | 20. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement |

| | |
|---|---|
| | Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 21. Wakefield was aware that Defendants would rely on the removal of the crossed-out language. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 108:21-25. | 21. Objection: not material. |
| 22. The Settlement Agreement at Paragraph 3.3 provides:<br>**California Civil Code Section 1542.** The Parties understand that the releases provided for in this Agreement extend to all claims, ***whether or not claimed or suspected,*** up to and including the date of execution hereof, and constitute a waiver of each and all of the provisions of California Civil Code Section 1542, which reads as follows:<br>**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.** | 22. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |

| | |
|---|---|
| The Parties hereby acknowledge that the effect and import of this provision has been fully explained to them and that they are aware of its contents and legal effect.<br>Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 3.3 (italicized emphasis added). | |
| 23. The significance of including Paragraph 3.3 was to include another provision to ensure finality and further reinforce that release of all claims, including those that were unclaimed or unsuspected, as well as to waive this specific provision of the California Code. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 117:20-118:15; 119:10-14. | 23. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 24. Further, the acknowledgment of the import of the provision and explanation of its effect was included to avoid Mr. Wakefield asserting he did not understand what he was signing and to provide further reassurance that this was a full and | 24. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. |

| | |
|---|---|
| final release. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 118:16-119:2. | Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement. |
| 25. The Settlement Agreement at Paragraph 4.1(b) provides:<br>Wakefield is, through this Agreement, releasing the Olen Parties from ***any and all claims*** he may have against them arising before the execution of this Agreement.<br>Sax Decl. Ex. 1 (Settlement Agreement) at ¶ 4.1(b) (emphasis added). | 25. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |
| 26. The significance of including Paragraph 4.1(b) was to forever waive any claims that Mr. Wakefield had against the Olen Parties. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 119:19-120:2. | 26. Disputed. The parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement.<br><br>By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7.<br><br>Objection: the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to |

| | |
|---|---|
| | show what the parties intentions were at the time of the agreement. |
| 27. The Settlement Agreement at Paragraph 5.5 provides: <br>**Entire Agreement**. ***This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof,*** and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein. ***No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto.*** No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties hereto. | 27. Objection: the document speaks for itself and the emphasis added by the Olen Parties is not a fact. |
| 28. The import of this provision was to bind the parties only to those representations and understandings contained within the Settlement Agreement. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 120:3-19. | 28. Objection: this is a legal conclusion. Further, the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement.<br><br>Disputed insofar as the parties' intentions are set forth in the Settlement Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. |
| 29. The Settlement Agreement is devoid of any provision that would allow Mr. Wakefield to pursue | 29. Objection: this is a legal conclusion and the document speaks for itself. |

| | |
|---|---|
| additional claims against Defendants if there were other sculptures in existence. Sax Decl. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 128:6-11 | |
| 30. The Settlement Agreement is devoid of any provision requiring Defendants to investigate whether additional potential sculptures exists or locations of said sculptures. Sax Decl. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 138:9-12. | 30. Objection: this is a legal conclusion and the document speaks for itself. |
| 31. The Settlement Agreement is devoid of any provision wherein Defendants made any representations that they undertook an investigation as to the location of additional potential sculptures. Sax Decl. Ex. 1 (Settlement Agreement); Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 138:13-16. | 31. Objection: this is a legal conclusion and the document speaks for itself. |
| 32. Mr. Olenicoff entered into the Settlement Agreement in good faith and without intent to deceive Mr. Wakefield or to hide any information from him. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 127:16-23. | 32. Disputed. Prior to the settlement, Mr. Olenicoff falsely represented that ***all*** of the infringing works had been removed from ***all*** of the Olen controlled properties. Dkt. 98-25, Olenicoff 12-18-17 Declaration. |
| 33. Mr. Olenicoff entered into the Settlement Agreement with the understanding that it would forever end all claims that Mr. Wakefield could ever assert against him and Olen Properties. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:2-7, 11-12. His intent was to make sure he and Olen Properties were done with Mr. Wakefield forever and would not have an | 33. Objection: immaterial. Further, the cited evidence consists only of Mr. Olenicoff's testimony about his personal beliefs about the meaning of the particular language quoted from the agreement and is not admissible to show what the parties intentions were at the time of the agreement.<br><br>Disputed insofar as the parties' intentions are set forth in the Settlement |

| | |
|---|---|
| ongoing attack by Mr. Wakefield. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:2-7, 11-12; 114:20-24. | Agreement, which speaks for itself. *See* Dkt. 98-07, Brockland Decl., Ex. 21 (Dkt.98-28), *Wakefield II* Settlement Agreement. Further, by entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including any display of infringing copies after the Settlement Agreement. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his works. Wakefield Decl. at ¶ 7. |
| 34. Mr. Olenicoff would not have signed the Settlement Agreement if he had known that Mr. Wakefield had the ability to continue to sue the parties. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 113:13-17 | 34. Objection: immaterial. |
| 35. Mr. Wakefield does not deny signing the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 96:14-16 | 35. Undisputed. |
| 36. Mr. Wakefield acknowledges that both parties' counsel drafted the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 96:24-97:2. | 36. Undisputed for purposes of this motion. |
| 37. Mr. Wakefield acknowledges that no one stopped him from seeking legal advice as to the meaning and significance of the language in the Settlement Agreement. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 112:25-113:8; 115:13-16. | 37. Objection: immaterial. |
| 38. Mr. Wakefield acknowledges that he did not have any settlement discussions with anyone for | 38. Objection: immaterial. |

| | |
|---|---|
| Defendants regarding whether he had the right to make other claims in the future if he subsequently discovered other sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 116:20-25, 117:4. | |
| 39. The sculptures were already in existence and in place in 2014, as conceded by Plaintiff in his Complaint. See [Dkt. 1] Complaint at ¶¶ 38-39. | 39. Undisputed that the infringing works described in Paragraphs 38-39 were displayed without Mr. Wakefield's authorization at Quantum Town Center in 2014. |
| 40. Mr. Wakefield is not aware of any facts to dispute that Mr. Olenicoff ordered the piece Human Nature's Many Faces and derivative works prior to 2008. Some of the pieces have placards indicating a date of 2005. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 127:12-20; 128:1-12. | 40. Objection: immaterial. |
| 41. Mr. Wakefield asserts that he did investigation of Olen's various properties to search for purported copies of his sculpture, including in California, Nevada, and Florida. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 119:13-16; 22-25. Mr. Wakefield's investigation occurred sometime around 2012, 2013, or 2014, and no one prevented him from doing additional investigation in later years, including 2015, 2016, 2017, or 2018. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 122:13-23. | 41. Objection: immaterial. |
| 42. Mr. Wakefield is not aware of any facts to indicate that Mr. Olenicoff was personally aware of what sculptures were at Quantum Town Center in Boynton Beach, | 42. Objection: immaterial as to Mr. Wakefield's personal knowledge.<br><br>Otherwise, disputed. Mr. Olenicoff was part of team the team that decided |

| | |
|---|---|
| Florida. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 124:4-7. | where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript Vol. II, at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes."). <br><br> Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.) |
| 43. Mr. Wakefield is not aware of any facts that would lead him to believe that Olen Properties was aware of the exact number and location of pieces of art sold to it by the Chinese artist, other than that his assertion that Mr. Olenicoff loved artwork. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 126:13-23. | Objection: immaterial as to Mr. Wakefield's personal knowledge. <br><br> Otherwise, disputed. Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration .) <br><br> Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be |

| | |
|---|---|
| | comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes.”). |
| 44. Mr. Wakefield is not aware of any facts to indicate that the Defendants intentionally hid any sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 127:9-11. | Objection: immaterial as to Mr. Wakefield’s personal knowledge.<br><br>Otherwise, disputed. Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen’s properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.)<br><br>Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes.”). |
| 45. Mr. Wakefield is not aware of any facts to dispute that the pieces ordered from China were received in various shipments, that there were complications with the orders, and that sometimes the shipments included things that were not ordered. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 129:14-19, 130:13-15 | 45. Objection: immaterial. |

| | |
|---|---|
| 46. Mr. Wakefield is not aware of any facts to dispute that neither Mr. Olenicoff or Olen Properties maintained records of what items were received from China or the locations where sculptures were installed, other than that his assertion that Mr. Olenicoff loved his sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 130:16-131:5. | 46. Objection: immaterial as to Mr. Wakefield's personal knowledge.<br><br>Otherwise, disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064)<br><br>Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.) |
| 47. Mr. Wakefield is not aware of any facts to dispute that Olen Properties does not maintain any inventory of artwork or sculptures. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 132:21-4. | 47. Objection: immaterial as to Mr. Wakefield's personal knowledge.<br><br>Otherwise, disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064) |
| 48. At the time of entering into the Settlement Agreement, Mr. Wakefield was not aware of any facts that Mr. Olenicoff personally or Olen Properties knew of the existence of any sculptures similar to Untitled other than those that were the subject of Wakefield I and II. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 137:21-138:13. | 48. Undisputed for purposes of this motion. |
| 49. At the time of entering into the Settlement Agreement, Mr. | 49. Undisputed for purposes of this motion. |

| | |
|---|---|
| Wakefield was not aware of any facts that Mr. Olenicoff personally or Olen Properties hid the existence of sculptures in Boynton Beach. Sax Decl. Ex. 3 (Transcript of Wakefield Dep.) at 138:14- 22. | |
| 50. In Defendants' Interrogatories to Plaintiff, Plaintiff responded to Interrogatory No. 11 as follows: No. 11. Describe all facts indicating that Igor Olenicoff had personal knowledge that the subject sculptures were located in Boynton Beach, Florida at the time the Mutual Release and Settlement Agreement was executed. ANSWER: Plaintiff believes that Olenicoff was aware of the infringing sculptures being installed in 2014 and thus had personal knowledge of their location at the time the Mutual Release and Settlement Agreement was executed. Sax Decl. Ex. 4 (Plaintiff's Interrogatory Answers) at No. 11. | 50. Objection: immaterial. |
| 51. In Defendants' Interrogatories to Plaintiff, Plaintiff responded to Interrogatory No. 12 as follows: No. 12. Describe all facts indicating that Igor Olenicoff had personal knowledge that the subject sculptures were located in Boynton Beach, Florida at the time his December 18, 2017 Affidavit was executed. ANSWER: Plaintiff believes that Olenicoff was aware of the infringing sculptures being installed in 2014 and thus had | 50. Objection: immaterial. |

| | |
|---|---|
| personal knowledge of their location at the time the Mutual Release and Settlement Agreement was executed. Sax Decl. Ex. 4 (Plaintiff's Interrogatory Answers) at No. 12. | |
| 52. Further, in his Answer to Interrogatory No. 7, Plaintiff stated that the Settlement Agreement was procured by fraud as set out in Plaintiffs Complaint and should be rescinded. Sax Decl. Ex. 4 (Plaintiff's Interrogatory Answers) at No. 7. | 52. Objection: immaterial. |
| 53. In his Complaint, in support of his claim, Plaintiff alleges that "in December 2017, Defendants OLENICOFF and OLEN PROPERTIES represented to WAKEFIELD that all infringing copies of Untitled had been removed from all properties controlled by OLEN PROPERTIES." See [Dkt. 1] Complaint at ¶ 93. | 53. Undisputed for purposes of this motion. |
| 54. In his Complaint, Plaintiff further alleges that the "representation was false, in that as of that time two infringing copies of Untitled were being publicly displayed at OLEN PROPERTIES' Quantum Town Center in Boynton Beach, Florida." See [Dkt. 1] Complaint at ¶ 94. | 54. Undisputed for purposes of this motion. |
| 55. Mr. Olenicoff did not have any recollection of whether the sculpture Human Natures Many Faces was on public display at Quantum Town Center in Boynton Beach, Florida. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 31:16-21. | 55. Objection: vague insofar as it fails to specify when Mr. Olenicoff did not have any recollection.<br><br>Also disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in |

| | |
|---|---|
| | Boynton Beach, FL. Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064)<br><br>Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.)<br><br>Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes."); |
| 56. Mr. Olenicoff did not have any recollection of whether the sculpture A Tear Must Fall was on public display Quantum Town Center in Boynton Beach, Florida. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 31:23–32:3. | 56. Objection: vague insofar as it fails to specify when Mr. Olenicoff did not have any recollection.<br><br>Also disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064) |

| | |
|---|---|
| | Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.)<br><br>Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes."). |
| 57. Mr. Olenicoff did not know when either sculpture was first placed on public display at Quantum Town Center. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 33:16-18. | 57. Objection: vague insofar as it fails to specify when Mr. Olenicoff did not know when either sculpture was placed on public display at Quantum Town Center.<br><br>Also disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064)<br><br>Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed |

| | |
|---|---|
| | from all of Olen's properties. (Dkt. 98-25, Olenicoff 12-18-17 Declaration.)<br><br>Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes."). |
| 58. Mr. Olenicoff was not aware or did not remember that the sculptures in Boynton Beach existed. Sax Decl. Ex. 2 (Transcript of Olenicoff Dep.) at 49:13-14. | 58. Objection: Contradictory on its face. Either Mr. Olenicoff was not aware, or he did not remember. If he was not aware, then he cannot also have not remembered. Additionally, vague insofar as it fails to specify when he was not aware and when he did not remember.<br><br>Also disputed. Olen maintained records relating to their installation of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center in Boynton Beach, FL. *See* Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL (Olen 000003-000064)<br><br>Additionally, Mr. Olenicoff represented in his sworn declaration that he was personally aware that all of the infringing works had been removed from all of Olen's properties. (Dkt. 98- |

| | 25, Olenicoff 12-18-17 Declaration.)<br><br>Further, Mr. Olenicoff was part of team the team that decided where to install sculptures displayed at Olen controlled properties. *See* Dkt. 98-10, *Wakefield I* Trial Transcript, Vol. II at 110:1-9 (Q. As far as where the sculptures are installed, is there a particular team that decides the location of the specific locations of where the sculptures are installed? A. The team would be comprised of Igor and myself. Q. Anyone else? A. Sometimes the City. Q. And that team would decide the specific locations of where each sculptor is to be installed; correct? A. Yes."). |
|---|---|

## II. WAKEFIELD'S ADDITIONAL MATERIAL FACTS

| **ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **The Olen Parties' Representations Regarding the Destruction of All Infringing Sculptures** | |
| 59. On December 18, 2017, after exhausting all of his rights to appeal the *Wakefield I* Judgment, Mr. Olenicoff filed a sworn declaration under penalty of perjury with the Court in *Wakefield I* stating that "[i]n July 2017…the Olen Parties removed all sculptures of '*Untitled'* and derivative pieces from all Olen controlled properties." | Dkt. 98-25, 12-18-17 Olenicoff Declaration at ¶ 7 |
| 60. On January 19, 2018, Mr. Wakefield's attorney sent an email to Julie Ault, counsel of record for the Olen Parties in *Wakefield I* and *Wakefield II* asking her to "please confirm that all copies of the sculptures were destroyed." | Dkt. 98-26, 1-19-18 Emails |
| 61. That same day, Ms. Ault responded via email stating "Yes, that is already affirmed in our opposition to your motion for sanctions." | Dkt. 98-26, 1-19-18 Emails |

| | |
|---|---|
| 62. On January 24, 2018, Olen Properties filed a Notice of Compliance with the Court in *Wakefield I* stating in part that "all copies of *Human Nature's Many Faces* and *A Tear Must Fall* have been removed and destroyed." | Dkt. 98-27, 1-24-18 Notice of Compliance with Judgment filed by the Olen Parties |
| **The *Wakefield II* Settlement Agreement** | |
| 63. On January 18, 2018, the Olen-Parties and Mr. Wakefield entered into a written settlement agreement to resolve the *Wakefield II* litigation (the "Settlement Agreement"). | Dkt. 98-28, *Wakefield II* Settlement Agreement |
| 64. Attached hereto is a true and accurate copy of the *Wakefield II* Settlement Agreement. | Dkt. 98-28, *Wakefield II* Settlement Agreement |
| **Olen's Public Display of *Human Nature's Many Faces* and *A Tear Must Fall* at Quantum Town Center Between 2014 and 2021** | |
| 65. From 2014 until sometime in 2021, a copy of *Human Nature's Many Faces* was publicly displayed at a retail/residential complex called Quantum Town Center located at 1034 Gateway Blvd, Boynton Beach, Florida 33426. | Dkt. 98-29, Olen Amended Answer at ¶38; Dkt. 98-30, Olenicoff Amended Answer at ¶ 38; Dkt. 98-32, Transcript of Olenicoff Deposition (11-4-22), at 111:2-12 |
| 66. From 2014 until at least sometime in 2021, a copy of *A Tear Must Fall* was publicly displayed at a retail/residential complex called Quantum Town Center located at 1034 Gateway Blvd, Boynton Beach, Florida 33426. | Dkt. 98-29, Olen Amended Answer at ¶38; Dkt. 98-30, Olenicoff Amended Answer at ¶ 38; Dkt. 98-32, Transcript of Olenicoff Deposition (11-4-22), at 111:15-23 |
| 67. Quantum Town Center, LLC owns and operates Quantum Town Center. | Dkt. 98-31, Decl. of Olen Properties Corp., Dkt. 22-2 at ¶ 6 |
| 68. Olen Properties Corp. operates Quantum Town Center, LLC. | Dkt. 98-31, Decl. of Olen Properties Corp., Dkt. 22-2 at ¶ 5 |
| 69. Olen Properties Corp. is the parent company of Quantum Town Center, LLC. | Dkt. 98-32, Transcript of Olenicoff |

| | |
|---|---|
| | Deposition (1-31-22) at 10:13-18 |
| 70. Mr. Wakefield did not and has not ever authorized anyone to publicly display his copyrighted sculpture *Untitled* at Quantum Town Center. | Dkt. 98-4, Wakefield Decl. |
| 71. Olen was aware that *Human Nature's Many Faces* and *A Tear Must Fall* were publicly displayed at Quantum Town Center from 2014 until sometime in 2021. | Dkt. 98-34, Olen Revised Art Application, City of Boynton Beach, FL, (Olen 000003-000064) |
| 72. The Court in *Wakefield I* repeatedly found that the infringing sculpture discovered on display at Two Venture Plaza after the jury trial was completed "should have been disclosed" by the Olen Parties during discovery of that case. | Brockland Decl., Exhibit 3, *Wakefield I* Dkt. 120 at20; Brockland Decl., Exhibit 2, *Wakefield I* Dkt. 164 at 2-3 |
| 73. In response to Mr. Wakefield's attempt to re-open evidence in *Wakefield I* following the discovery of the infringing scsulpture on display at Two Venture Plaza, Mr. Olenicoff swore in a declaration that he "merely forgot about the sculpture" and that his nondisclosure was "an oversight on my part, and I certainly didn't intend to mislead anyone." | Brockland Decl., Exhibit 4, *Wakefield I* Dkt. 117-1. |
| 74. Based on Mr. Olenicoff's previous sworn declaration on behalf of the Olen Parties, Mr. Wakefield believed they had removed and destroyed all unauthorized copies of *Untitled* at the time he entered into the Settlement Agreement. | Wakefield Decl. at ¶ 6. |
| 75. Without the Olen Parties assurance that they had removed and destroyed all unauthorized copies of *Untitled*, Mr. Wakefield would not have entered into the Settlement Agreement. | Wakefield Decl. at ¶ 6. |
| 76. By entering into the Settlement Agreement, Mr. Wakefield did not intend to release the Olen Parties for any infringement that they might engage in in the future, including for any display of the infringing works after the date of the Settlement Agreement. | Wakefield Decl. at ¶ 7. |

| 77. By entering into the Settlement Agreement, Mr. Wakefield did not intend to grant the Olen Parties a license in *Untitled* or in any of his other artwork. | Wakefield Decl. at ¶ 7. |
|---|---|

Dated: December 19, 2022

**ONE LLP**

*/s/ William J. O'Brien*
William J. O'Brien

*Attorneys for Plaintiff,*
*Donald Wakefield*