UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>OLEN PROPERTIES CORP., IGOR OLENICOFF, JOHN LIANG, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: SACV 21-01585-CJC(DFMx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 98] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. 106] |

I.  INTRODUCTION

In this case, Plaintiff Donald Wakefield alleges that Defendants Olen Properties Corp. ("Olen") and Igor Olenicoff ("Olenicoff") infringed his copyrights.[1] (Dkt. 1 [Complaint, hereinafter "Compl."].)  Now before the Court are the parties' cross motions

---

[1] A third defendant, John Liang, was dismissed. (Dkt. 68.)

for summary judgment. (Dkt. 98 [Plaintiff's Motion for Partial Summary Judgment]; Dkt. 106 [Defendants' Motion for Summary Judgment, hereinafter "D. Mot."].) For the following reasons, both motions are **DENIED**.[2]

## II. BACKGROUND

This is the third of four lawsuits between these parties related to a copyrighted large-scale granite sculpture called *Untitled* that Plaintiff Donald Wakefield collaborated in making with a man named Joseph Glickman in 1992.

### A. *Wakefield I* – Copies 1-7 in California

In the first lawsuit ("*Wakefield I*"), Plaintiff sued Olen and Olenicoff for copyright infringement after he found seven infringing copies of *Untitled* and other derivative sculptures on Olen's properties. (Dkt. 113-1 [Plaintiff's Response to Defendants' Statement of Undisputed Facts, hereinafter "DSUF"] ¶ 1); *Wakefield v. Olenicoff* ("*Wakefield I*"), 2015 WL 1460152, at *1 (C.D. Cal. Mar. 30, 2015), *aff'd in part, rev'd in part,* 679 F. App'x 591 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 211 (2017). The *Wakefield I* jury found in favor of Plaintiff on his copyright infringement claims and awarded him $450,000 in damages. *Id.* at *6. After a Ninth Circuit appeal, Plaintiff recovered his damages, and Olenicoff and Olen were required to destroy the infringing copies. *Id.* at *10.

//
//

---

[2] Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 9, 2023 at 1:30 p.m. is hereby vacated and off calendar.

### B. *Wakefield II* – Copy 8 in California

In September 2014, after the *Wakefield I* trial, Plaintiff discovered an eighth infringing copy in Irvine, California that Olenicoff and Olen had never disclosed. (*See* DSUF ¶ 4.) In September 2017, Plaintiff sued Olenicoff and Olen for copyright infringement based on the eighth copy (*"Wakefield II"*). (*Id.* ¶ 3.) During *Wakefield II*, Olenicoff submitted a declaration. *Wakefield v. Olenicoff, et al.*, Case No. 8:17-cv-01147-AG-DFM, Dkt. 21-2 [Declaration of Igor M. Olenicoff, hereinafter "Olenicoff *Wakefield II* Decl."].) In the declaration, Olenicoff stated that he ordered the allegedly infringing sculptures from China, which came in "various shipments" that were "disorganized" and had "numerous complications," and that "[n]either Olen nor [Olenicoff] maintained any records of what items were received from China or the locations where the sculptures were installed." (*Id.* ¶¶ 3–4.) He further stated that neither Olen nor Olenicoff had any business records to verify the exact number or location of the allegedly infringing sculptures. (*Id.* ¶ 6.) Nevertheless, Olenicoff declared that "the Olen Parties removed all sculptures of 'Untitled' and derivative pieces from all Olen controlled properties." (*Id.* ¶ 7.) Based in part on that declaration, Plaintiff agreed to settle *Wakefield II*. (Compl. ¶ 36.)

### C. The *Wakefield II* Settlement Agreement

The purpose of the *Wakefield II* settlement agreement was "to settle and compromise all disputes and controversies existing among the Parties hereto, including but not limited to any and all claims that are raised or might have been raised in [*Wakefield II*]." (Dkt. 98-28 [*Wakefield II* Settlement Agreement, hereinafter "SA"] § 1.2.) In it, Plaintiff released and discharged Olen and Olenicoff from any and all claims, rights, and "remedies of any nature whatsoever" that he might have against them, whether "known or unknown," "suspected or unsuspected," "including, but not limited to

all loss, liability, damages, claims, charges, complaints, or demands and including any claims set related to the causes of action for copyright infringement as set forth in the Wakefield Actions." (*Id.* § 3.1.) With respect to the matters released under the settlement agreement, Plaintiff covenanted and represented that he would not file any complaints or lawsuits against Olen and Olenicoff. (*Id.* § 2.3.) Another paragraph confirms that Plaintiff "is, through this Agreement, releasing the Olen Parties from any and all claims he may have against them arising before the execution of this Agreement." (*Id.* § 4.1.) The parties further agreed that "the releases provided for in this Agreement extend to all claims, whether or not claimed or suspected, up to and including the date of execution hereof, and constitute a waiver of each and all of the provisions of California Civil Code Section 1542," which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release. (*Id.* § 3.3.)

The agreement also contains a clause stating that it "contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all prior discussions, negotiations, commitments and understandings related hereto are hereby merged herein," and that "[n]o representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto." (*Id.* § 5.5.)

Finally, the agreement contains a sentence that is crossed out, which reads: "Nothing in this Agreement shall be construed to mean that Wakefield is waiving or releasing claims to enforce this Agreement, or any relief granted in the 2012 Action." (*Id.* § 3.1.)

//
//

### D.   This Case – *Wakefield III* – Copies 9 and 10 in Florida

In May 2021, Plaintiff discovered two additional allegedly infringing copies of *Untitled* that were never disclosed and that are displayed at Olen's Florida properties. (Compl. ¶¶ 37–39.)  Based on this discovery, Plaintiff filed this case ("*Wakefield III*"), alleging again that Defendants infringed his copyright.

### E.   *Wakefield IV*

After Plaintiff filed this case, Defendants filed a new case ("*Wakefield IV*") in state court, alleging that Plaintiff violated the *Wakefield II* settlement agreement by filing *Wakefield III* and seeking, among other relief, an order enforcing the covenant not to sue in the settlement agreement. (*Olen Properties Corp., et. al. v. Wakefield*, No. 8:22-cv-00928-CJC-DFM [*Wakefield IV*], Dkt. 1-2 [Complaint].)  After *Wakefield IV* was removed to this Court, the Court dismissed it because Defendants' *Wakefield IV* claims are compulsory counterclaims in this case. (*Id.* Dkt. 16.)  With the Court's leave, Defendants filed in this case amended answers with amended affirmative defenses and asserted counterclaims for breach of the settlement agreement, specific performance of the settlement agreement, and declaratory judgment of copyright invalidity against Plaintiff. (Dkts. 83–85.)

## III.   LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

IV. **DISCUSSION**

    A. **Defendants' Motion for Summary Judgment**

Defendants argue summary judgment is appropriate on all of Plaintiff's claims because the *Wakefield II* settlement agreement bars those claims. In the alternative, Defendants argue that Plaintiff may not seek rescission of the settlement agreement, punitive damages, or statutory damages.

1. **Whether the Settlement Agreement Bars Plaintiff's Claims**

Defendants argue that "Plaintiff's claims are precluded, waived, and barred as a matter of law" under the *Wakefield II* settlement agreement. (Mot. at 5 [heading].) But the Court cannot determine at this stage whether the settlement agreement bars Plaintiff's claims because Plaintiff alleges in this case that the *Wakefield II* settlement agreement was fraudulently induced and seeks rescission of it. Indeed, a reasonable jury could decide that this is true. Olenicoff represented in *Wakefield II* that Olen and Olenicoff "removed all sculptures of 'Untitled' and derivative pieces from all Olen controlled properties." (Olenicoff *Wakefield II* Decl. ¶ 7.) A reasonable jury could determine that this statement was false, that Olenicoff and Olen both knew it was false when Olenicoff made it, and that Plaintiff signed the settlement agreement in reliance on Olenicoff's misrepresentation. (*See* Compl. ¶¶ 93–99.) For example, there is evidence that Olen submitted an art application to the City of Boynton Beach, Florida in 2014 with four sculptures including the allegedly infringing *Untitled* copy—evidence that Olen and Olenicoff were aware of the undestroyed allegedly infringing sculptures not too long before Olenicoff submitted his declaration in 2017.

On the other hand, a reasonable jury could also determine that the *Wakefield II* settlement agreement was not fraudulently induced. In the same declaration in which he stated that all sculptures had been removed, Olenicoff stated that neither he nor Olen maintained any records of what sculptures they received from China or where the sculptures were installed, including no records to verify the exact number or locations of *Untitled* and its derivations, and that Defendants have over six million square feet of office space with artwork and sculptures at every property, plus hundreds of pieces of artwork and sculptures at Olen headquarters. (Olenicoff *Wakefield II* Decl. ¶¶ 4–6.) Defendants further submit evidence of a draft settlement agreement that removed a provision in which Olen and Olenicoff represented that there were no further copies of

*Untitled* in their possession and that all copies previously disclosed were destroyed. (*See* Dkt. 114 at 11.) A reasonable jury could decide Plaintiff did not justifiably rely on Defendants' representation that all copies were destroyed. Alternatively, a reasonable jury could believe that Olenicoff "was not aware or did not remember that the sculptures in Boynton Beach existed," (DSUF at ¶¶ 55–58), and "entered into the Settlement Agreement in good faith and without an intent to deceive and with the understanding that it would forever end all claims with Mr. Wakefield," (*id.* ¶¶ 32–34).

A jury will have to decide whether the settlement agreement was fraudulently induced. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claims based on the settlement agreement.[3]

### 2. Rescission

Defendants argue that Plaintiff cannot obtain rescission of the settlement agreement because he "has not alleged in his Complaint that he has returned or that he has the ability to return the $110,000 settlement proceeds." (D. Mot. at 21.) But such an allegation is not essential to plead a claim for rescission. Indeed, the Truth in Lending Act case on which Defendants rely cites a Ninth Circuit case making clear that "whether a decree of rescission should be conditional [upon tender by the borrower of the property he had received from the lender] depends upon the equities present in a particular case." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003). That requiring return of the benefit is discretionary is confirmed by California Civil Code Section 1693, which states, "A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits

---

[3] For the same reasons, Defendants are not entitled to summary judgment on their counterclaims for breach of contract and specific performance of the settlement agreement.

before judgment unless such delay has been substantially prejudicial to the other party; but the court **may** make a tender of restoration a condition of its judgment" (emphasis added). If a jury determines rescission is appropriate, the Court can determine at a later time whether to require Plaintiff to return the settlement proceeds. But Plaintiff's failure to allege that he has returned or can return the settlement proceeds does not preclude him from presenting his rescission claim to a jury.

### 3. Punitive Damages

Plaintiff seeks punitive damages on his claim for fraud in the inducement. (Compl. ¶ 98.) Defendants argue that Plaintiff cannot recover punitive damages because he has not presented evidence that their conduct was sufficiently egregious to warrant punitive damages. (D. Mot. at 22.) The Court disagrees. Punitive damages may be appropriate if a plaintiff establishes "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). As described above, Plaintiff has presented evidence that Defendants acted fraudulently, and that evidence is sufficient to allow Plaintiff to present his punitive damages claim to a jury.

### 4. Statutory Damages

Defendants next argue that Plaintiff may not recover statutory damages under either 17 U.S.C. § 504(c)(1) or (c)(2).

#### a. Pre-Registration Conduct

17 U.S.C. § 504(c)(1) permits recovery of statutory damages of between $750 and $30,000 instead of actual damages and profits, "as the court considers just." However, "in order to recover statutory damages, the copyrighted work must have been registered

prior to commencement of the infringement, unless the registration is made within three months after first publication of the work." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008) (describing 17 U.S.C. § 412(2)). If post-registration infringement constitutes an ongoing continuation of pre-registration infringement, statutory damages are not available. *Id.* at 701. Post-registration infringement is a continuation of pre-registration infringement if "there is no legally significant difference" between pre- and post-registration infringement. *Id.*

Defendants argue that Plaintiff cannot recover statutory damages under section 504(c)(1) because their infringement began before Plaintiff registered his copyright. While it is true that some of Defendants' infringing sculptures existed as early as 2008, and Plaintiff did not register his copyright until 2012, Defendants' activity did not constitute one continuous, ongoing series of infringing acts. Rather, there is a "legally significant difference," *id.*, between the pre-registration infringement and the later infringement: the *Wakefield I* lawsuit, jury trial, jury verdict, and Ninth Circuit appeal, all culminating in an award in Plaintiff's favor and an order that Defendants destroy infringing copies. Plaintiff may seek statutory damages under Section 504(c)(1).

### b. Willful Conduct

17 U.S.C. § 504(c)(2) permits recovery of statutory damages of up to $150,000 instead of actual damages and profits in the court's discretion if the court finds that infringement was committed willfully. Defendants argue that Plaintiff may not seek statutory damages under this subsection because Plaintiff has not submitted evidence that Defendants acted willfully. The Court disagrees. Plaintiff has submitted evidence that

Defendants knew of the infringing Florida sculptures and nevertheless continued displaying them. Plaintiff may seek statutory damages under Section 504(c)(2).[4]

### B. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on his claims for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and willful copyright infringement, and also on Defendants' counterclaims for breach and specific performance of the *Wakefield II* settlement agreement. But the Court cannot decide whether Plaintiff is entitled to summary judgment on either his claims or Defendants' counterclaims because Plaintiff has not moved for summary judgment on his claim for fraud in the inducement of the settlement agreement. This is for good reason, as determining whether a fraud occurred generally turns on factual issues that must be resolved by a jury. *See Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 981 (9th Cir. 1980) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible."); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 510 (9th Cir. 1989), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989) (explaining that fraud "is a question of fact involving determinations of intent and evaluations of credibility properly resolved by the jury").

As explained, although a reasonable jury could certainly conclude that the settlement agreement was fraudulently induced and has no application in this case, a reasonable jury could also conclude that the settlement agreement was not fraudulently induced. If the jury did so, it could also reasonably decide that the settlement agreement bars Plaintiff's claims given that the Florida statutes were displayed since 2014, and

---

[4] Defendants also argue that they are entitled to summary judgment on Plaintiff's RICO claim because their conduct was not willful. For the same reasons, then, Defendants are not entitled to summary judgment on Plaintiff's RICO claim.

therefore a claim based on them could have been brought in *Wakefield II*. Because a jury will have to decide whether the settlement agreement was fraudulently induced, and if not, whether the settlement agreement bars Plaintiff's claims, Plaintiff is not entitled to summary judgment on his claims or on Defendants' counterclaims.

## V. CONCLUSION

For the foregoing reasons, both Plaintiff's and Defendants' motions for summary judgment are **DENIED**.

DATED: January 4, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE