Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
Amundsen Davis LLC
120 South Central, Suite 700
St. Louis, MO 63105
Telephone:  314.719.3732
Facsimile:   314.719.3733

Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
The Business Litigation Group, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone:  415.765.6634
Facsimile:   415.283.4804

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
One LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA  92660
Telephone:  310.866.5157
Facsimile:   310.943.2085

*Attorneys for Plaintiff, Donald Wakefield*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br>*Assigned to: Hon. Cormac Carney*<br><br>**PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE**<br><br>Pretrial Conference: Feb. 13, 2023<br>Time:　　　　　　　3:00 P.M.<br>Courtroom:　　　　　9 B<br><br>Trial Date:　　　　　Feb. 21, 2023<br>Complaint Filed:　　 Sept. 27, 2021 |

**PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, at the pretrial conference scheduled for February 13, 2023, at 3:00 p.m. in Courtroom 9B of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California, before the Honorable Cormac J. Carney, Plaintiff, Donald Wakefield, will and hereby does move this Court for an Order precluding Defendants from offering argument, introducing testimony concerning, and introducing exhibits relating in any way to the following:

> **Motion in Limine No. 1:** Matters that are res judicata as a result of the proceedings, jury trial, and judgment in Case No. SACV12-2077 AG (RNBx) ("*Wakefield I*")

> **Motion in Limine No. 2:** Matters that are res judicata as a result of the proceedings, jury trial, and judgment in Case No. SACV12-2094 AG (RNBx) ("*Raimondi*")

> **Motion in Limine No. 3:** Parol evidence concerning, or attempting to modify, terms of the settlement agreement at issue in this case

> **Motion in Limine No. 4:** Any matters related to Joseph Glickman

> **Motion in Limine No. 5:** Alleged damage to Defendants' reputation

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, and any other matters of which the Court may take judicial notice, other documents on file in this action and any oral argument of counsel.

1  This motion is made following the conferences of counsel pursuant to Local
2  Rule 7-3 which took place on January 3 and 6, 2023.

4  Dated: January 13, 2023          By:  */s/ William J. O'Brien*
                                          William J. O'Brien
                                          One LLP

                                        *Attorneys for Plaintiff,*
                                        *Donald Wakefield*

# MEMORANDUM OF POINTS AND AUTHORITIES

**1.     *Motion in Limine Number 1:*  Matters That are Res Judicata Based on *Wakefield I***

A number of factual matters are res judicata as a result of the trial and judgment in *Wakefield I*, and Defendants should be precluded from offering argument, evidence or testimony in an attempt to challenge them.  As the Court noted in its Order dismissing Count III of Defendants' Counterclaims and striking certain affirmative defenses (Dkt. 91), issue preclusion bars a party from relitigating an issue that a party has lost in a prior proceeding.  *R.T.C. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).  Issue preclusion applies when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 442 F.3d 741, 746 (9th Cir. 2006)(citation omitted).  Issue preclusion applies to the following matters.

    **a.     Validity of Plaintiff's Copyright**

In *Wakefield I*, the jury found that Mr. Wakefield owned a valid copyright in *Untitled* and, as a result, the Court previously dismissed Count III of Defendants' Counter-claims and struck Defendants' affirmative defenses of invalidity. (Dkt. 91.)  Based on that ruling and the doctrine of issue preclusion, Defendants should be prohibited from offering any argument, testimony or evidence that Plaintiff's copyright in *Untitled* is invalid.

    **b.     Defendants' Access to *Untitled***

To establish copyright infringement in *Wakefield I*, Mr. Wakefield had to prove that Defendants copied his work. *See Ninth Circuit Manual of Model Civil Jury Instructions* § 17.4 (2007).  To do so, he had to prove that Defendants had access to *Untitled* and that the infringing works were substantially similar. *See*

*Ninth Circuit Manual of Model Civil Jury Instructions Section 17.15 (2007).* At trial, Defendants denied that they had access. During closing arguments, they went so far as to argue that their claimed lack of access precluded any finding of infringement. (*See* Brockland Decl., Ex. A (*Wakefield I* Trial Transcript), Vol. III at 75:3-10.) This was soundly rejected by the jury in *Wakefield I*, who returned a verdict for the Plaintiff and found Defendants liable for copyright infringement. (Brockland Decl., Ex. B (*Wakefield I* Jury Verdict).) By finding that the Defendants infringed upon *Untitled*, the jury in *Wakefield I* necessarily found they had prior access. So Defendants should not be allowed to relitigate that issue here. Accordingly, the Court should bar any evidence or argument challenging the issue of Defendants' access to *Untitled*.

        c.    **Substantial Similarity of *Human Nature's Many Faces* and *A Tear Must Fall* to *Untitled***

For the reasons set forth in Section 1.b above, Defendants should also not be allowed to relitigate the issue of substantial similarity between Plaintiff's copyrighted work, *Untitled*, and the knockoffs they refer to as *Human Nature's Many Faces* and *A Tear Must Fall* and publicly displayed in Florida. As noted above, the jury in *Wakefield I* already determined that *Human Nature's Many Faces* and *A Tear Must Fall* infringed upon *Untitled*. (*See* Brockland Decl., Ex. B (*Wakefield I* Jury Verdict).) There should be no relitigating that issue. Defendant should be precluded from contending that the *Human Nature's Many Faces* and *A Tear Must Fall* sculptures that they displayed in Florida are not substantially similar to *Untitled*.

        d.    **The unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* infringed the copyright in *Untitled*.**

Again, the jury determined in *Wakefield I* that the unauthorized public display of *Human Nature's Many Faces* and *A Tear Must Fall* infringed the copyright in *Untitled*. (*See* Brockland Decl., Ex. B (*Wakefield I* Jury Verdict).)

Defendants have admitted to publicly displaying those same works at Quantum Town Center in Boynton Beach, Florida. (*See* Dkt. 84 at ¶¶38-39; (Dkt. 85 at ¶¶38-39.) Accordingly, Defendants should be precluded from arguing that their admitted public display of those infringing works in Florida does not constitute infringement.

  e. **Defendants directly profited from their display of infringing copies.**

  Finally, the jury in *Wakefield I* conclusively determined that the Defendants directly profited from their display of *Human Nature's Many Faces* and *A Tear Must Fall*.

> Question 3: Did defendants profit directly from the infringing activity of any third party? Please answer "Yes" or "No" as to each defendant.
>
> IGOR OLENICOFF:    Yes ✓ No ___
> OLEN PROPERTIES CORP.: Yes ✓ No ___

(Brockland Decl., Ex. B (*Wakefield I* Jury Verdict) at 2.)

  As with the other issues decided in that case, this determination is conclusive, and the Court should not allow the Defendants to dispute it here.

  f. **The Meaning of the *Wakefield I* Injunction**

  Following the jury's verdict in *Wakefield I*, the Court entered a Permanent Injunction stating:

> (3) Defendants are further ORDERED to destroy **all copies of *Human Nature's Many Faces* and *A Tear Must Fall***, exclusive of the bases and the stainless steel tear drops in *A Tear Must Fall*, within eight (8) months of entry of this Judgment . . . .

(Brockland Dec., Ex. C (*Wakefield I*, Dkt. 132) at 1 (emphasis added).) Despite that clear language, Defendants have argued that the *Wakefield I* injunction only

applies to the six copies that were at issue in that case at the time it was tried. (*See* Dkt. 110 at p. 21.) That is false. The plain language of the injunction unambiguously called for the destruction of **all** copies of *Human Nature's Many Faces* and *A Tear Must Fall*. Defendants should not be allowed to argue that the permanent injunction says or means anything different. Testifying or arguing about what they supposedly believed the injunction meant would only serve to undermine its plain and unambiguous language.

    **g. Defendants' Alleged Good Faith and Non-Willful Intent**

    Since the beginning of the *Wakefield I* case, and continuously to this day, Defendants have spun a fanciful tale about supposedly innocent purchase of the infringing sculptures. In this tale, Defendant Igor Olenicoff supposedly saw the granite sculpture that has been found to infringe Plaintiff's copyright in *Untitled* at a sculpture garden at the 2008 Beijing Olympics. Olenicoff further claims that it was a Chinese artist, Zhou Hong, who had created that sculpture—found in *Wakefield I* to be a knock-off. Taking the jury on a trip through the looking glass, Defendants would like to claim that Donald Wakefield infringed Zhou Hong, not the other way around, or that Zhou Hong somehow just happened to create a granite sculpture that turned out to have a near-identical similarity to *Untitled* (assuming that Zhou Hong even exists, which Defendants have never established). Defendants made this argument and put on this evidence at trial in *Wakefield I*. (*See* Brockland Decl., Ex. A (*Wakefield I* Trial Transcript), Vol. I at 129:15-25 and Vol. II at 164:5-165, l. 20.) This tale, and the defenses that Defendants seek to assert based on it, were rejected by the jury in *Wakefield I*, and that determination is res judicata. Based on the principles of collateral estoppel, Defendants should be precluded from offering any argument, evidence or testimony supporting those rejected defenses.

    Additionally, in *Wakefield I*, Defendants asserted the following affirmative defenses, among others:

### SEVENTH AFFIRMATIVE DEFENSE
### (No Vicarious Liability)

7. Plaintiff is not entitled to relief because Defendants, at all times, acted reasonably and in good faith.

### EIGHTH AFFIRMATIVE DEFENSE
### (Innocent Intent)

8. The Complaint, and each purported cause of action contained therein, is barred on the grounds that, at all times, Defendants acted in good faith with non-willful intent.

(*Wakefield I*, Dkt. 18, pp. 6-7.)

In the current case, Defendants asserted the following affirmative defenses, among others, which are virtually identical to those they offered in *Wakefield I*:

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief because Olenicoff, at all times, acted reasonably and in good faith.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because at all times, Olenicoff acted in good faith and with non-willful intent.

(Dkt. 85, p. 12.)

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief because Olen, at all times, acted reasonably and in good faith.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because at all times, Olen, at all times, acted in good faith and with non-willful intent.

(Dkt. 84, pp. 12-13.)

Given that Defendants' Sixteenth and Seventeenth affirmative defenses are virtually identical to their Seventh and Eighth Affirmative Defenses they asserted

in *Wakefield I*, Defendants are barred by collateral estoppel from offering similar evidence once again. In summary, based on collateral estoppel, Defendants should be prohibited form offering any argument, testimony or evidence concerning: Zhou Hong; any Chinese artist who supposedly created the sculptures that infringe *Untitled*; Olenicoff allegedly seeing the infringing sculpture at the Beijing Olympics; or, Defendants' alleged innocence and non-willful intent based on any of those matters, all of which were previously litigated in *Wakefield I*.

        2.     *Motion in Limine Number 2:* **Matters That are Res Judicata Based on *Raimondi* Case**

Defendants were also sued by sculptor John Raimondi for copyright infringement. (*Raimondi v. Olenicoff and Olen Properties Corp.*, U.S.D.C., C. D.Ca., Case No. 8:12-cv-02094-AG-RNB.) Mr. Raimondi alleged that Defendants infringed his copyright in *Dian* by displaying two unauthorized copies that they referred to as *Link to Compassion* and that they infringed his copyright in *Ceres* by displaying two unauthorized copies that they referred to as *Intertwined*. Initially, Defendants denied the allegations. By the time of trial, however, Defendants stipulated that they had infringed Mr. Raimondi's copyrights. (Brockland Dec., Ex. D (Raimondi-Olen-Olenicoff Joint Stipulation, Dkt. 58, 12-2-14); (Brockland Dec., Ex. E (*Raimondi* Trial Transcript), Vol. I at 112:15-113:20.)

The *Raimondi* case was tried with Defendants contesting only damages and Mr. Raimondi's right to injunctive relief. The jury returned a verdict of $640,000. (Brockland Dec., Ex. F (*Raimondi* Verdict).) The Court entered an order requiring Defendants to remove placards from the copies referring to Chinese artists and the names *Link to Compassion* and *Intertwined*, and replace them with placards indicating that they were unauthorized copies of Raimondi's works known as *Dian* and *Ceres*. (Brockland Dec., Ex. G (*Raimondi* Injunction).) Defendants appealed, but ultimately dismissed that appeal. These matters are relevant to Mr.

Wakefield's claim for civil RICO, because they are predicate acts of infringement.

As a result of the *Raimondi* case, Defendants are precluded from offering any argument, testimony or evidence in an effort to deny that they admitted infringing Mr. Raimondi's copyrights, or to deny that they in fact infringed his copyrights, or that that the jury awarded Mr. Raimondi $640,000 in damages and that the Court entered an order requiring Defendants to remove placards from the copies referring to Chinese artists and the names *Link to Compassion* and *Intertwined*, and replace them with placards indicating that they were unauthorized copies of Raimondi's works, *Dian* and *Ceres*.

### 3. *Motion in Limine Number 3:* Parol Evidence Varying Terms of the Settlement Agreement

The settlement agreement that the parties entered into in January 2018 is the lynch pin of Defendants' defense in this case and the basis for Defendants' counterclaims. Mr. Wakefield anticipates that Defendants will seek to offer parol evidence to support their desired interpretation of the settlement agreement—namely, that it permits Defendants to infringe Plaintiff's copyrights in the future. This should not be allowed.

"The parol evidence rule is a rule of substantive law, providing that 'when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing.'" *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 804 (2020) (quoting *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169, 1174 (2013); *see also* CAL. CIV. PROC. CODE § 1856. "The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change." *Riverisland*, 55 Cal. 4th at 1174.

"An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement." *Id.* It is undisputed that the settlement agreement is an integrated writing. The parties' intentions are reflected

in the signed agreement itself, which provides:

- The stated purpose of the agreement was to settle all "**existing**" disputes between the parties. (Dkt. 110-3 at §1.2) (emphasis added); and
- The parties to the settlement "fully understand, acknowledge and agree" that "Wakefield is, through this Agreement, releasing the Olen Parties from any and all claims he may have against them *arising before the execution of this Agreement*." (*Id.* at §4.1(b) (emphasis added).)

Despite the plain language of the settlement agreement, the Defendants may seek to offer into evidence various types of parol evidence, including:

- a draft settlement agreement that apparently preceded the final *Wakefield II* settlement agreement and
- testimony of Igor Olenicoff about his intentions in entering into the settlement agreement, his understanding of what various provisions meant, or what he was told about the settlement agreement by his lawyers.

Any such parol evidence should be excluded. The settlement agreement stands for itself. Defendants should not be allowed to present argument, testimony or evidence (other than the settlement agreement itself) to suggest in any way that:

- the settlement agreement releases Defendants from liability for infringement occurring at any time in the future;
- the settlement agreement grants the Defendants a license to display Plaintiff's copyrighted sculptures at any time in the future; or
- the settlement agreement permits Defendants to commit future acts of copyright infringement against Plaintiff.

**4.** *Motion in Limine Number 4:* **Joseph Glickman**

Plaintiff anticipates that Defendants will seek to admit evidence regarding the contractual relationship between Plaintiff and Joseph Glickman, in particular concerning whether or not Plaintiff paid Glickman any of the proceeds Plaintiff

received from the payment of the *Wakefield I* judgment or the *Wakefield II* settlement. These matters are irrelevant under FRE 402 and, even if somehow relevant, would still be barred under FRE 403 as any probative value would be substantially outweighed by the danger of unfair prejudice.

Plaintiff and Glickman were co-creators of *Untitled*. They entered into a Joint Copyright Ownership Agreement. Pursuant to that agreement, Plaintiff was assigned the litigation rights, with Glickman to receive a portion of the proceeds, if any, after payment of costs and attorneys' fees. That agreement, however, is irrelevant to any of the issues in the current case.

It is undisputed that Plaintiff is the owner of a valid copyright in *Untitled*. That issue was decided by the jury in *Wakefield I*, a verdict that was upheld on appeal. This Court has found that the issue of Plaintiff's copyright ownership is res judicata. (*See* Dkt. 91, where the Court dismissed Count III of Defendants' Counter-claims for invalidity and struck Defendants' affirmative defenses of invalidity.) Thus, the Joint Copyright Ownership Agreement is irrelevant.

Whether or not Plaintiff paid Glickman anything under the Joint Copyright Ownership Agreement is similarly irrelevant. Plaintiff asserts that he did not owe Glickman anything, but either way the issue is not relevant. It is no more relevant than if Plaintiff had paid or not paid some other alleged debt or obligation of his.

    **5.**    *Motion in Limine Number 5:* **Alleged Damage to Defendants' Reputation**

Plaintiff alleges that Defendants committed RICO violations as a result of their criminal copyright infringement. For the first time, in response to Plaintiff's Second Set of Interrogatories, served only ten days ago, Defendants vaguely claim that they have suffered damage to their reputation as a result of the RICO allegations, stating, "Damage to reputation due to RICO allegations to be furnished shortly." (Brockland Decl., Ex. H (Olenicoff's and Olen's Answers to Plaintiff's Second Set of Interrogatories), Answer to Interrogatory No. 1.) This is the very

first mention of any "damages to reputation" by the Defendants. They did not mention any in their Counterclaims. They have not mentioned anything in the ten days since first uttering the words in response to Plaintiff's Second Set of Interrogatories. The relevance of any such "damages to reputation" is not evident, and, if the issue were somehow relevant, Defendants should have put Plaintiff on notice of it early enough that he could have conducted discovery into issues related to Defendants' reputation, including the criminal conviction history of Igor Olenicoff. The only damages Defendants should be allowed to seek are damages the Defendants actually pled. The Court should not allow them to present evidence or argument of damage to anyone's "reputation."

## CONCLUSION

For the foregoing reasons, Plaintiff Donald Wakefield respectfully requests that this Court enter an Order in Limine prohibiting Defendants from offering any argument, testimony or evidence in any way relating to: (1) matters that are res judicata as a result of *Wakefield I*; (2) matters that are res judicata as a result of *Raimondi*; (3) parol evidence varying terms of the settlement agreement; (4) Joseph Glickman matters; and (5) alleged damages to Defendants reputation.

Dated: January 13, 2023        By:   */s/ William J. O'Brien*
                                       William J. O'Brien
                                       One LLP

                                       *Attorneys for Plaintiff,*
                                       *Donald Wakefield*

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, Donald Wakefield, certifies that this memorandum of points and authorities contains 2,776 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 13, 2023         By:   /s/ William J. O'Brien
                                       William J. O'Brien
                                       One LLP

                                       *Attorneys for Plaintiff,*
                                       *Donald Wakefield*