1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

2

3

4      DONALD WAKEFIELD,                )
                                        )
5                   Plaintiff,          )
                                        )
6            vs.                        )        Case No. 8:21-CV-01585-DFM
                                        )
7      OLEN PROPERTIES CORP., ET AL., ) Santa Ana, California
                                        )        March 1, 2023
8                   Defendants.         )        (9:31 a.m. to 9:52 a.m.)
       _____ _____ )

9

10

11                 TELEPHONIC DISCOVERY CONFERENCE

12           BEFORE THE HONORABLE DOUGLAS F. MC CORMICK
                 UNITED STATES MAGISTRATE JUDGE

13

14
       APPEARANCES:                      See Next Page
15
       COURT REPORTER:                   Recorded, AT&T
16
       COURTROOM DEPUTY:                 Nancy Boehme
17
       TRANSCRIBER:                      Dorothy Babykin
18                                       Courthouse Services
                                         1218 Valebrook Place
19                                       Glendora, California  91740
                                         (626) 963-0566
20

21

22     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
       TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
23

24

25

1    APPEARANCES:

2

    FOR PLAINTIFF DONALD WAKEFIELD:

3

    AMUNDSEN DAVIS LLC

4    BY:  GENE J. BROCKLAND
           ATTORNEY AT LAW

5    120 SOUTH CENTRAL
    SUITE 700

6    ST. LOUIS, MO  63105

7

    FOR DEFENDANT OLEN PROPERTIES CORP., ET AL.:

8

    OLEN PROPERTIES CORP.

9    BY:  JULIE AULT
           GENERAL COUNSEL

10    7 CORPORATE PLAZA
    NEWPORT BEACH, CALIFORNIA  92660

11

    SACHS SAX CAPLAN PL

12    BY:  SPENCER M. SAX
           ATTORNEY AT LAW

13    6111 BROKEN SOUND PARKWAY NW
    SUITE 200

14    BOCA RATON, FLORIDA  33487

15

16

17

18

19

20

21

22

23

24

25

1                                    I N D E X

2      8:21-CV-01585-DFM                                    MARCH 1, 2023

3      PROCEEDINGS:  TELEPHONIC DISCOVERY CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SANTA ANA, CALIFORNIA; MARCH 1, 2023; 9:31 A.M.

2          THE CLERK:   WE'RE ON THE RECORD IN CASE 8:21-CV-01585.

3  IT'S DONALD WAKEFIELD VERSUS OLEN PROPERTIES CORP., ET AL.

4          COUNSEL, YOUR APPEARANCES, PLEASE.

5          MR. BROCKLAND:  GENE BROCKLAND ON BEHALF OF PLAINTIFF

6  DON WAKEFIELD.

7          MR. SAX:  SPENCER SAX ON BEHALF OF THE TWO DEFENDANTS.

8          MS. AULT:  JULIE AULT ON BEHALF OF THE DEFENDANTS.

9          THE COURT:  OKAY.  COUNSEL, THIS IS JUDGE MC CORMICK.

10         LET ME TELL YOU WHAT I HAVE RECEIVED.

11         I'VE RECEIVED MR. BROCKLAND'S LETTER DATED MONDAY.  GOT

12  A COUPLE OF SHORT ATTACHMENTS.

13         AND I  RECEIVED MR. SAX'S LETTER DATED ALSO MONDAY.

14         DID I GET EVERYTHING?

15         MR. BROCKLAND:  I BELIEVE SO, YOUR HONOR.

16         MR. SAX:  YES, YOUR HONOR.

17         THE COURT:  OKAY.

18         IT SOUNDS LIKE MR. BROCKLAND WOULD LIKE TO GET TO THE

19  OLEN HEADQUARTERS, WHICH SOUNDS LIKE THEY MUST BE SOMEWHERE

20  HERE NEARBY TO ME HERE IN ORANGE COUNTY, TO MAKE AN INSPECTION

21  UNDER A REQUEST FOR PRODUCTION AND REQUEST FOR INSPECTION.

22         AND IT SOUNDS LIKE THE DEFENDANTS OBJECT THAT THAT IS

23  NOT RELEVANT.

24         AND I'LL PUT A DIFFERENT GLOSS ON YOUR FISHING

25  EXPEDITION.  I'LL PUT THAT IN LANGUAGE THAT FITS THE RULE.  IT WOULD

1    NOT BE PROPORTIONAL TO THE NEEDS OF THE CASE.

2         LET ME ASK BOTH SIDES IF THEY WANT TO MAKE ANY

3    ADDITIONAL COMMENTS TO WHAT'S IN THEIR PAPERS.  AND, THEN, MAYBE

4    I'LL ASK A COUPLE OF QUESTIONS.

5         MR. BROCKLAND.

6         MR. BROCKLAND:  YOUR HONOR -- WELL, I THINK I'LL WAIT FOR

7    YOUR QUESTIONS.  I THINK WE'VE MADE OUR POSITION CLEAR IN OUR

8    LETTER.

9         AND I THINK MR. SAX HAS MADE HIS POSITION CLEAR.

10        WE THINK IT IS RELEVANT TO A PORTION OF DEFENDANTS'

11   DEFENSE.  AND THEREFORE WE SHOULD BE ENTITLED TO DO THE

12   INSPECTION.

13        THE COURT:  MR. SAX OR MS. AULT.

14        MR. SAX:  YOUR HONOR, THE TWO – THE TWO POINTS I'D LIKE TO

15   MAKE IS THAT THE RELEVANT ISSUE IS WE'D ONLY KNOW WHAT WAS AT

16   150 PROJECTS AROUND THE COUNTRY INCLUDING BOYNTON BEACH,

17   FLORIDA NOT WHAT ITS CORPORATE HEADQUARTERS IN NEWPORT

18   BEACH.

19        AND ALSO THAT IF THIS WAS SO PRESSING, THEN, WHY HAVEN'T

20   THEY LOOKED AT THE TWO SCULPTURES THAT ARE THE SUBJECT OF THE

21   LAWSUIT IN BOYNTON BEACH.

22        I THINK WE'VE MADE ALL THE OTHER POINTS.  YOU KNOW, I'VE

23   TRIED TO THINK OF COMPROMISES OF HOW TO RESOLVE THIS.  YOU

24   KNOW,  IT'S NOT -- IT'S ONLY BACKGROUND INFORMATION.  SO, YOU

25   KNOW, I DON'T HAVE TO PURSUE IT.  BUT, YOU KNOW, I BELIEVE MY

1    OBJECTION IS WELL FOUNDED SO I'D LIKE TO BE ABLE TO ARGUE MY

2    OBJECTION.

3           THE COURT:  WELL, ANYTHING YOU WANT TO ADD TO YOUR

4    OBJECTION YOU NEED TO ADD NOW.  BECAUSE WE'RE ABOUT TO  -- WE'RE

5    ABOUT TO DISCUSS HOW WE'RE GOING TO GET TO A RULING ON IT.  SO, I

6    DON'T WANT TO CUT YOU OFF.  BUT YOU SOUND LIKE YOU HAVE MORE TO

7    SAY.  AND I DON'T WANT TO DO THAT.

8           MR. SAX:  WELL, YOU KNOW, I DON'T WANT TO REPEAT

9    EVERYTHING THAT I HAD IN THERE, BUT, YOU KNOW, WE'RE AT THE POINT

10   WHERE GIVEN THE HISTORY OF THE PARTIES, WHICH HAS BEEN OVER A

11   DECADE, AND GIVEN THE FACT THAT WE ENTERED INTO A SETTLEMENT

12   AGREEMENT IN WAKEFIELD 2 TO KIND OF PREVENT THIS VERY SAME

13   INVASIVE ATTEMPT TO TRY TO LOOK AT OTHER ARTWORK THAT MY

14   CLIENT HAS.

15          HE NOW WANTS TO GO INSIDE OUR CORPORATE OFFICES AND

16   LOOK TO – WHAT?  -- VERIFY THAT WE HAVE HUNDREDS OF PIECES OF

17   ARTWORK THERE.   I MEAN, WE'VE ALREADY INDICATED WE HAVE

18   HUNDREDS OF PIECES OF ARTWORK THROUGHOUT THE WHOLE

19   COUNTRY.

20          THAT MAKES THE POINT I WAS MAKING IN THIS -- AND THE

21   DEFENSE I'M RAISING IN THIS LAWSUIT BECAUSE WE HAVE A LOT OF

22   ARTWORK IN PUBLIC VIEW.

23          AGAIN, YOUR HONOR ASKED IF THE PARTIES COULD HAVE

24   WORKED THIS THING OUT AHEAD OF TIME.  AND, YOU KNOW, LIKE I SAID --

25          THE COURT:  I DON'T THINK I DID ASK THAT.  I MEAN, THIS KIND

1   OF SEEMS LIKE IT'S EITHER AN A OR B SITUATION  -- IT'S AN A OR NOT A

2   SITUATION.  I'M NOT SURE HOW YOU COULD HAVE –

3           MR. SAX:  WELL  --

4           THE COURT  -- LIKE, YOU KNOW  -- IF YOU WERE HERE ARGUING

5   ABOUT WHETHER YOU SHOULD HAVE FIVE SEARCH TERMS OR TEN

6   SEARCH TERMS, YOU KNOW, I COULD SAY, WELL, WHY DON'T WE HAVE

7   SEVEN AND A HALF.  BUT THAT'S NOT  -- WE CAN'T HARDLY --

8           MR. SAX:  OH, NO.  THE REASON – THE REASON WHY I'M

9   THROWING OUT ANOTHER OPTION IS THAT WE -- YOU KNOW, MY CLIENT

10   CAN EASILY WITHDRAW ANY CONTENTION ON THE ISSUE OF HOW MUCH

11   ARTWORK WE HAVE IN OUR CORPORATE HEADQUARTERS, WHICH WOULD

12   MOOT THIS ISSUE TOTALLY.

13           SO, THAT'S THE THING I'D LIKE TO – YOU KNOW, I'LL PUT OUT ON

14   THE TABLE, BUT, YOU KNOW, I'M NOT  -- I DIDN'T PUT THAT IN MY

15   RESPONSE AND IN MY OBJECTION BECAUSE I THINK MY OBJECTION IS

16   WELL FOUNDED, BUT IT DOESN'T  -- IT'S NOT PROPORTIONAL TO THE

17   NEEDS OF THE CASE.

18           MR. BROCKLAND:  YOUR HONOR  --

19           THE COURT:  LET ME ASK A COUPLE OF QUESTIONS.

20           MR. BROCKLAND:  -- MAY I RESPOND?

21           THE COURT:  DO YOU GUYS HAVE A PROTECTIVE ORDER IN THE

22   MATTER?

23           I'M HAVING TROUBLE FINDING IT.  I SEE MY ORDER SAYING THE

24   PROTECTIVE ORDER SHOULD BE  GRANTED.  AND MAYBE I BETTER --

25           MR. SAX:  IT WAS.

1          THE COURT:  -- FISH AROUND THE DOCKET A LITTLE BIT.

2          MR. BROCKLAND:  WE DO, YOUR HONOR.

3          THE COURT:  OKAY.

4          MR. SAX:  THERE IS ONE, YOUR HONOR.

5          THE COURT:  WOULD THE PROTECTIVE ORDER'S LANGUAGE, MR.

6    SAX, GIVE YOU -- I UNDERSTAND YOUR CONCERN IS THAT IF THEY SEE

7    SOMETHING DURING THIS INSPECTION THEY CAN POTENTIALLY USE IT IN

8    SOME OTHER LITIGATION.  WITHOUT LOOKING AT THE EXACT LANGUAGE

9    OF THE PROTECTIVE ORDER, WOULDN'T THE PROTECTIVE ORDER

10   PRECLUDE THEM FROM DOING THAT?

11         MR. SAX:  I DON'T KNOW.  I MEAN, THE INFORMATION HAS GONE

12   RIGHT TO THE ATTORNEY WHO WOULD BE PROSECUTING OTHER

13   POTENTIAL CLAIMS AGAINST MY CLIENT.  AND, YOU KNOW, I CAN'T  -- MY

14   CLIENT CAN'T RISK THAT.  HE THOUGHT HE GOT A BINDING SETTLEMENT

15   AGREEMENT IN WAKEFIELD 2 TO AVOID THEM COMING INTO HIS

16   CORPORATE OFFICES.

17         THE BENEFIT OF HIS BARGAIN WILL BE GONE ONCE THEY GO

18   AHEAD AND LOOK EVEN WITH A PROTECTIVE ORDER.  THAT'S WHY I'M

19   GOING TO EVEN DROP THE ALLEGATION IN ORDER TO AVOID THE DISPUTE

20   ALTOGETHER.

21         BUT, YOU KNOW, I BELIEVE MY DEFENSE IS -- AN OBJECTION IS

22   MERITORIOUS WHICH IS WHY, YOU KNOW, I DIDN'T JUST DROP IT ALREADY.

23         I MEAN, IT'S THAT IMPORTANT TO MY CASE WHETHER THERE'S A

24   HUNDRED SCULPTURES AND PIECES OF ART IN THE OLEN CORPORATE

25   HEADQUARTERS -- BECAUSE OUR CLIENT GOES PAST THAT ON A DAILY

1    BASIS.  THAT'S NOT THE BASIS TO WHY MY CLIENT DIDN'T KNOW WHAT

2    WAS IN BOYNTON BEACH, FLORIDA.

3         SO, THAT'S WHY I'M SAYING IT'S NOT A PARTICULARLY

4    RELEVANT FACT.  AND THERE'S A LOT MORE HARM THAT COMES TO MY

5    CLIENT EVEN WITH A PROTECTIVE ORDER HAVING PHOTOGRAPHERS

6    COME IN TO THEIR CORPORATE OFFICES AND TAKING PICTURES OF

7    EVERY PIECE OF ARTWORK THAT THEY'VE COLLECTED.

8         MR. BROCKLAND:  YOUR HONOR, MAY I RESPOND TO  --

9         THE COURT:  YES.  GO AHEAD.

10        MR. BROCKLAND:  -- MR. SAX'S COMMENTS.

11        FIRST OF ALL, THERE WAS A SETTLEMENT AGREEMENT IN THIS

12   CASE.  BUT WE ALLEGE IN PART THAT IT WAS PROCURED BY FRAUD.

13        AND THAT WHEN THEY REPRESENTED THAT THEIR  -- THAT ALL

14   SCULPTURES HAD BEEN REMOVED FROM ALL OLEN CONTROLLED

15   PROPERTIES, THAT THAT REPRESENTATION WAS AT THE VERY LEAST

16   MAKE RECKLESSLY WITHOUT REGARD FOR ITS TRUTH.

17        THEIR DEFENSE TO THAT WE HAVE SO MANY SCULPTURES.  WE

18   CAN'T KEEP TRACK OF THEM.  WE HAVE HUNDREDS OF PROPERTIES

19   THROUGHOUT THE COUNTRY.  AND WE HAVE HUNDREDS OF PIECES IN

20   OUR OLEN HEADQUARTERS.

21        FRANKLY, YOUR HONOR, WE NOW BELIEVE THAT THAT IS SIMPLY

22   UNTRUE.

23        WE HAD BEEN ABLE TO INSPECT ALL OF THE PROPERTIES

24   THROUGHOUT THE COUNTRY TO THE EXTENT THAT LARGE PIECES ARE

25   LOCATED OUTSIDE OF BUILDINGS OR IN COMMON AREAS.  THERE ISN'T

1    THAT MUCH, YOUR HONOR.

2         THERE ARE SCULPTURES AT APPROXIMATELY I BELIEVE SIX

3    PROPERTIES THROUGHOUT THE COUNTRY.  AND IT'S MAYBE 20

4    SCULPTURES.

5         SO, FRANKLY, WE DISBELIEVE THEIR DEFENSE.

6         THEIR DEFENSE IS WE COULDN'T KEEP TRACK OF IT ALL.

7         AND WE'RE ENTITLED TO QUESTION THAT DEFENSE.  PART OF

8    THEIR DEFENSE IS BASED ON SUPPOSEDLY HAVING HUNDREDS OF

9    PIECES WITHIN THE OLEN HEADQUARTERS WHICH AS COUNSEL NOTES IS

10   NOT OPEN TO THE PUBLIC.  NOBODY CAN WALK IN THERE AND SEE

11   WHAT'S IN THERE.  THAT'S PART OF THEIR DEFENSE.

12        AND  -- AND I THINK WE HAVE THE RIGHT TO TEST THAT

13   DEFENSE.

14        AND, YOU KNOW, WE COULD  -- WE COULD LIMIT IT TO ONLY

15   PHOTOGRAPHING, YOU KNOW, SCULPTURE – YOU KNOW, I DON'T WANT TO

16   PHOTOGRAPH EVERY PIECE OF ARTWORK HANGING ON THE WALL.  I'M

17   INTERESTED IN SCULPTURES.  I'M INTERESTED IN PARTICULAR ENLARGED

18   SCULPTURES.  BUT WE'RE ENTITLED TO KNOW WHETHER OR NOT THEY

19   HAVE THESE HUNDREDS OF PIECES THAT THEY CLAIM TO HAVE.

20        MR. SAX:  YOUR HONOR, OUR PRIMARY DEFENSE IS THAT WE

21   HAD BAD RECORDS REGARDING THE PURCHASE OF THE SUBJECT

22   SCULPTURES FROM THE EARLY 2010'S.

23        AND, YOU KNOW, WE BARELY ADDED THE FACT THAT WE DO

24   HAVE SCULPTURES AT OTHER PROPERTIES AROUND THE COUNTRY.  WE

25   DON'T  -- WE HAVE A LIMITED NUMBER AT CORPORATE HEADQUARTERS.

1      AND, AGAIN, I'M NOT RELYING ON THAT.  AND I'M HAPPY TO

2  WITHDRAW THAT IF THAT'S WHAT --

3      MR. BROCKLAND:  WELL, I'M NOT SURE  --

4      YOUR HONOR, I'M NOT SURE HE CAN COMPLETELY WITHDRAW IT

5  BECAUSE IT'S  -- THE  -- THOSE STATEMENTS ARE WITHIN DOCUMENTS

6  THAT HE'S FILED, WITHIN DECLARATIONS FROM MR. OLENICOFF WHICH

7  ARE GOING TO BE IN EVIDENCE.

8      AND, SO, THE STATEMENTS ARE OUT THERE.

9      THE COURT:  YEAH.  I DON'T KNOW THAT YOU CAN WITHDRAW

10  THE STATEMENTS EITHER, MR. SAX.   I MEAN, THEY ARE OUT THERE.

11      I GUESS -- I'M STILL TRYING TO FIND THE PROTECTIVE ORDER.

12      I'M NOT-- AGAIN, WITHOUT SEEING IT, BUT I'M NOT -- IF THE

13  ARGUMENT, MR. SAX, IS WE ARE CONCERNED THAT THEY ARE GOING TO

14  VIOLATE THE TERMS OF THE PROTECTIVE ORDER AND USE WHAT THEY

15  SEE DURING THIS INSPECTION IN A WAY THAT WOULD VIOLATE THE

16  TERMS OF THE PROTECTIVE ORDER, THAT IS AN ARGUMENT THAT IS A

17  NON-STARTER WITH ME BECAUSE I HAVE A PROTECTIVE ORDER IN I

18  WOULD SAY HUNDREDS OF CASES.

19      AND IF WE STARTED GETTING INTO THE MUCK OF WHAT IFS OF

20  PEOPLE VIOLATING PROTECTIVE ORDERS, IT – THE WHEELS OF JUSTICE

21  WOULD BECOME ALMOST IMMEDIATELY CLOGGED.

22      SO, THE PROTECTIVE ORDER -- I'M GOING TO USE THE WORD

23  SHOULD BECAUSE I CAN'T SEE IT.  I HAVEN'T SEEN IT YET  -- THE

24  PROTECTIVE ORDER SHOULD PRECLUDE OR LIMIT -- THAT'S NOT THE

25  RIGHT WORD EITHER -- SHOULD AMELIORATE YOUR CONCERNS ABOUT

1    THIS BEING, QUOTE, UNQUOTE, A FISHING EXPEDITION.

2            AND THEN WE'RE AT A POSITION OF WELL, WE'VE GOT TO MAKE

3    SOME DECISION ABOUT PROPORTIONALITY.

4            AND, YOU KNOW, THE BURDEN AND EXPENSE OF ALLOWING THIS

5    INSPECTION IS YOU HAVEN'T MADE ANY SHOWING THAT IT'S ANYTHING

6    BUT MINIMAL.  I CAN'T IMAGINE IT'S ANYTHING BUT MINIMAL.

7            YOU KNOW, YOU OR YOUR CO-COUNSEL WALK THROUGH THE

8    HEADQUARTERS WITH MR. BROCKLAND AND WHOEVER HE HAS TO MAKE

9    THE INSPECTION.  YOU KNOW, IT TAKES A COUPLE OF HOURS AT MOST –

10   PROBABLY LESS.   AND THAT BURDEN IS  -- IS  -- IS MINIMAL.

11           WITH THAT BURDEN BEING SO MINIMAL, THE RELEVANCE HAS TO

12   BE IN MY VIEW IT'S A BALANCING  -- THE RELEVANCE ONLY HAS TO BE

13   MINIMAL-ISH AS WELL FOR US TO SATISFY RULE 26.  AND I THINK WE DO

14   THAT HERE.

15           SO, YOU KNOW, AS I TALK  --

16           MR. SAX:  YOUR HONOR, THERE'S ANOTHER  --

17           THE COURT:  -- IT THROUGH, I THINK THE INSPECTION SHOULD

18   GO FORWARD UNLESS YOU CAN SHOW ME SOMETHING WITH RESPECT TO

19   THE PROTECTIVE ORDER THAT WE NEED TO TIGHTEN UP OR BOLSTER TO

20   MAKE CLEAR THAT A PROTECTIVE ORDER WOULD GOVERN.

21           AND PERHAPS THAT'S JUST WHAT I NEED TO SAY.

22           THE PARTIES' PROTECTIVE ORDER WILL GOVERN THE

23   INSPECTION AND ANYTHING DISCOVERED DURING THE INSPECTION.

24           AND IF THAT'S NOT CLEAR FROM THE PROTECTIVE ORDER

25   ITSELF, IT SHOULD BE CLEAR FROM WHAT I JUST SAID.

1       MR. SAX:  YOUR HONOR, MAY I PROPOSE ANOTHER

2  ALTERNATIVE.

3       THE COURT:  ABSOLUTELY.

4       MR. SAX:  ANOTHER ALTERNATIVE WOULD BE  -- AND MS. .AULT

5  IS IN CORPORATE HEADQUARTERS THERE – WE COULD ALSO  -- AND I'M

6  HAPPY TO DO IT IN FRONT OF YOUR HONOR -- IS THROUGH ZOOM

7  BASICALLY USE THE ZOOM AND SHOW BOTH MR. BROCKLAND AND YOUR

8  HONOR THE VOLUME OF ARTWORK AT OLEN'S CORPORATE

9  HEADQUARTERS SO THAT I DON'T HAVE TO WORRY THAT PHOTOS OF

10  THOSE COULD SOMEDAY FALL INTO -- YOU KNOW, PHOTOGRAPHS THAT A

11  PHOTOGRAPHER TAKES ONE DAY WRONGFULLY FALLS INTO THE HANDS

12  OF SOMEONE.  AND ALL OF A SUDDEN MY CLIENT IS FACING MORE

13  LAWSUITS.

14       THE COURT:  I'M NOT -- I'M NOT INCLINED TO DO THAT EITHER.

15       AND, AGAIN, YOU'RE NOT THE FIRST ATTORNEY, MR. SAX, AND

16  YOU WON'T BE THE LAST.  YOU'RE THE FIRST THIS WEEK.  MAYBE THE

17  FIRST THIS MONTH.  IT'S MARCH 1ST -- TO EXPRESS CONCERNS ABOUT A

18  PROTECTIVE ORDER.  I GET IT.

19       BUT YOUR – I'M FLIPPING THROUGH IT NOW.  AND IT WILL HELP

20  ME FIND THE PARTICULAR PROVISION.  THEY ARE ALL NOT EXACTLY THE

21  SAME.

22       THERE'S A RETURN OR DISPOSAL OF CONFIDENTIAL AND

23  PROPRIETARY MATERIAL THAT WOULD PRESUMABLY GOVERN ANY

24  PHOTOGRAPHS TAKEN.  ALL OF THESE THINGS WOULD -- WOULD  --

25  WOULD APPLY.

1        YOU KNOW, THERE'S SOME RISK TO SOME OTHER PARTY IN

2   SOME OTHER ACTIONS SUBPOENAING WHAT IS – WHAT IS FOUND.  BUT,

3   YOU KNOW, THAT IS KIND OF OUT OVER THE HORIZON.  AND WE WOULD

4   HAVE TO DEAL WITH THAT WHEN AND IF IT OCCURRED.

5        BUT YOUR OBJECTION SEEMS TO BE MORE THAT

6   MR. BROCKLAND AND HIS CLIENT ARE GOING TO USE THIS TO BASE SOME

7   OTHER ADDITIONAL CLAIM.

8        AND I DO THINK THE PROTECTIVE ORDER WOULD NOT PERMIT

9   THAT.

10        MR. SAX:  MY – LET ME MAKE SURE THE RECORD IS CLEAR WHAT

11   MY CONCERN REALLY IS.  IT'S NOT MR. WAKEFIELD.   IT'S MR. BROCKLAND

12   AND HIS VARIOUS CO-COUNSEL.

13        MY CONCERN IS THAT THEY WILL OBTAIN PHOTOGRAPHS.  THAT

14   THAT INFORMATION WILL BE DISSEMINATED OUT TO THE PUBLIC EITHER

15   RIGHTFUL -- YOU KNOW --

16        THE COURT:  ALL OF THAT WOULD VIOLATE THE PROTECTIVE

17   ORDER.

18        SO, MR. BROCKLAND IS GOING TO HEAR FROM ME RIGHT NOW

19   THAT IF HE DOES ANY OF THOSE THINGS, IF HE VIOLATES MY PROTECTIVE

20   ORDER, THERE ARE ALL KINDS OF REMEDIES INCLUDING SANCTIONS AND

21   CONTEMPT OF COURT.

22        AND, YOU KNOW, HE'S  -- HE'S A SMART GUY.  I CAN TELL FROM

23   HIS WRITINGS AND EVERYTHING ELSE.  HE'S NOT GOING TO GO DOWN

24   THAT ROAD.

25        MR. BROCKLAND:  YOUR HONOR, IN MY 35 YEARS I'VE NEVER

1    HAD THAT HAPPEN.

2              THE COURT:  ALL RIGHT.

3              SO, LOOK, WE'RE GOING TO – WE'RE GOING TO  -- WE'RE GOING

4    TO RELY ON THE PROTECTIVE ORDER AS WE DO IN MANY, MANY OTHER

5    CASES.  THE INSPECTION IS GOING TO GO FORWARD AS  -- AS

6    REQUESTED.

7              THAT WILL BE THE COURT'S ORDER.

8              HOW LONG, MR. SAX, DO WE NEED TO  -- TO GET THAT DONE?  --

9    7 DAYS, 14 DAYS, SOMETHING LIKE THAT.

10             MR. SAX:  SURE.

11             THE COURT:  LET'S DO IT WITHIN 14 DAYS.

12             WHEN IS THE PARTIES' DISCOVERY CUTOFF?

13             MR. BROCKLAND:  WE PASSED IT, YOUR HONOR.

14             THE COURT:  OH, WE'RE – WE'RE  -- WE'RE CLEANING UP OLD

15   BUSINESS.  OKAY.  VERY WELL.

16             MR. SAX:  YOUR HONOR, I --

17             THE COURT:  YOU WANT TO PICK A TRIAL DATE, RIGHT?

18             MR. SAX:  WE SELECTED AUGUST 15TH FOR THE TRIAL DATE.

19             AND WE LET YOUR CLERK KNOW THAT, YOUR HONOR.

20             THE COURT:  AND WE NEED TO GET YOU A DATE FOR PRETRIAL

21   CONFERENCE AND SO FORTH, CORRECT?

22             MR. SAX:  RIGHT.

23             THE COURT:  OKAY.

24             AND THAT'S ON MY DESK.

25             MR. BROCKLAND: YOUR HONOR  --

1          THE COURT:  AND I'LL BE GETTING THAT OUT TO YOU

2    HOPEFULLY SHORTLY.  I'VE GOT AN EXCITING MORNING  --

3          MR. SAX:  CAN I RAISE ONE OTHER ISSUE WITH YOU –

4          THE COURT:   -- PLANNED WITH SOME OTHER FOLKS IN ANOTHER

5    CASE --

6          MR. SAX:   -- YOUR HONOR.

7          THE COURT:  WE'RE – I TOLD THEM I WILL MAKE YOU DO X, Y AND

8    Z.  IT WAS THE JUDICIAL HOPE THAT THEY WOULDN'T TAKE ME UP ON

9    THAT OFFER.  BUT THEY'RE HERE TODAY.  SO.

10          MR. SAX:  YOUR HONOR, IF YOU HAVE 5 MINUTES, CAN I RAISE

11    ONE OTHER MINOR ISSUE.

12          THE COURT:  LET'S SEE WHAT IT IS.  BECAUSE I DO NOT HAVE 5

13    MINUTES.  I'VE GOT ABOUT 2 MINUTES.

14          MR. SAX:  WELL, I'LL BE QUICK.

15          I WAS SURPRISED BY THE REFERRAL TO THE MAGISTRATE FOR

16    A SETTLEMENT CONFERENCE.  I THOUGHT FROM OUR STATUS

17    CONFERENCE THAT THE COURT WAS NOT GOING TO MAKE THAT

18    REFERRAL ABSENT BOTH PARTIES REQUESTING IT.

19          THE COURT:  WELL, I THOUGHT YOU GUYS DID.  I'M SORRY.

20          DID – DID WE  --

21          MR. BROCKLAND:  WE DID NOT, YOUR HONOR.

22          THE COURT:  DID I GET OUT OVER MY SKIS ON THAT

23    DISCUSSION?

24          MR. SAX:  WELL, WHAT HAPPENED, YOUR HONOR, WAS MR.

25    BROCKLAND SAID THAT HE DIDN'T THINK IT WOULD BE WORTHWHILE.  AND

1    THEN I CONTINUED TO ARGUE.

2          AND THEN YOUR HONOR THEN ENTERED THE ORDER.

3          THE COURT:  OH, MR. BROCKLAND, I MAY HAVE

4    MISUNDERSTOOD YOU.  I THOUGHT MAYBE YOU -- YOU RELENTED IN THE

5    FACE OF MY COMMENTS AND MR. SAX'S STATEMENTS.

6          MR. BROCKLAND:  WE CERTAINLY  --

7          MR. SAX:  AND  --

8          MR. BROCKLAND:  WE CERTAINLY NEVER ADVISED  -- WE

9    CERTAINLY NEVER ADVISED THE COURT THAT WE THOUGHT THAT IT

10    WOULD BE A USEFUL PURPOSE AND A USEFUL EXERCISE.

11          THE COURT:  I DO NOT WANT TO ASK MY COLLEAGUE JUDGE

12    KEWALRAMANI WHO I THINK WOULD DO AN EXCELLENT JOB FOR YOU

13    FOLKS.  BUT I DO NOT WANT TO ASK HIM TO -- TO SPEND TIME THAT

14    WOULD NOT BE WORTHWHILE.

15          SO, IF – IF THAT'S YOUR FINAL ANSWER, MR. BROCKLAND, I WILL

16    VACATE THE ORDER.

17          MR. BROCKLAND:  THANK YOU, YOUR HONOR.

18          MR. SAX:  AND YOUR HONOR  --

19          AND, YOUR HONOR, IF I MAY BE HEARD ON IT.

20          THE COURT:  NO.  HOLD ON.  LET ME HEAR FROM MR.

21    BROCKLAND FIRST.

22          MR. SAX:  OKAY.

23          MR. BROCKLAND:  YOUR HONOR, WE ARE ALWAYS INTERESTED

24    IN TRYING TO SETTLE THIS CASE.

25          THE COURT:  SEE, IT'S THOSE KINDS OF STATEMENTS THAT

1    MISLEAD ME.

2              MR. BROCKLAND:  PARDON ME?

3              THE COURT:  IT'S THOSE KINDS OF STATEMENTS THAT MISLEAD

4    ME.

5              MR. BROCKLAND:  OH.  WE THINK THE PARTIES CAN DO IT

6    THEMSELVES.  AND IF WE CAN'T DO IT OURSELVES, THEN, THE BEST

7    THING IS A TRIAL SETTING.  AND WE SHOULDN'T WASTE ANOTHER

8    MAGISTRATE'S TIME.

9              THE COURT:  WELL  --

10              MR. SAX:  AND, YOUR HONOR, I TAKE A CONTRARY POSITION IN

11    THAT THE PARTIES ARE EXTREMELY CLOSE.  AND IT REALLY HAS COME

12    OUT BECAUSE OF -- YOU KNOW, I REALLY BELIEVE, AND AS AN OFFICER OF

13    THE COURT, I WILL REPRESENT TO YOUR HONOR THAT IF I CAN GET THE

14    PARTIES IN A ROOM AT THE SAME TIME, I BELIEVE I CAN SETTLE THIS

15    CASE.

16              THE COURT:  ALL RIGHT.  AND LET ME ASK YOU GUYS THEN TO

17    TALK AMONGST YOURSELVES.  MAKE A FINAL DECISION ABOUT WHETHER

18    YOU WANT TO BE ON THE SAME PAGE WITH RESPECT TO MAGISTRATE

19    JUDGE KEWALRAMANI OR NOT.

20              HE IS A GOOD FRIEND OF MINE.  HE'S A VERY CAPABLE

21    SETTLEMENT JUDGE.

22              I THINK -- I THINK YOU GUYS WOULD LIKE HIM.  HE'S -- HE'S -- YOU

23    KNOW, HE'S SMART.  HE KNOWS THE INTELLECTUAL PROPERTY

24    LANDSCAPE.

25              AND AS FAR AS FEELING BADLY OR LIKE YOU'RE WASTING THE

1   COURT'S TIME, MR. BROCKLAND, WE GET ASKED TO TRY TO SETTLE ALL

2   KINDS OF LESS ATTRACTIVE CASES THAN THIS ONE.  LET'S JUST PUT IT

3   THAT WAY.

4          AND, SO, I THINK YOU SHOULDN'T' BE TOO CONCERNED ABOUT

5   THAT.

6          AND SO  --

7          MR. BROCKLAND:  OKAY.

8          THE COURT:  BUT IF – IF – IF AT THE END OF THE DAY AFTER

9   TALKING IT OVER WITH MR. SAX, YOU THINK YOU GUYS WOULD BE BETTER

10  SERVED OR YOU DON'T THINK YOU GUYS –

11         AND I'M SAYING THIS TO YOU SPECIFICALLY, MR. BROCKLAND,

12  YOU DON'T THINK YOU'LL BE WELL SERVED BY JUDGE KEWALRAMANI,

13  THEN LET US KNOW.  AND WE'LL VACATE THE ORDER.

14         BECAUSE I DON'T WANT TO  -- YOU KNOW, I DON'T WANT YOU TO

15  WALK IN THE DOOR WITH HIM AND SAY I DIDN'T WANT TO BE HERE

16  BECAUSE THEN HE'S GOING TO CALL ME UP AND SAY WHY DID YOU SEND

17  ME THIS GUY.

18         MR. BROCKLAND:  CERTAINLY.

19         THE COURT:  OKAY.

20         MR. SAX:  YOUR HONOR, ONE LAST THING.

21         ON THE INSPECTION AND THE PHOTOGRAPHY, CAN THAT BE

22  DONE OUTSIDE OF BUSINESS HOURS SO THAT IT'S NOT DISRUPTIVE TO

23  THE BUSINESS.  IT'S A --

24         THE COURT:  ABSOLUTELY.

25         MR. SAX:  -- THE  --

1          THE COURT:  YOU CAN SET THE TIME AND DATE OF THAT AT A

2    TIME THAT'S MOST CONVENIENT FOR YOU, YOUR CLIENT AND ITS

3    BUSINESS NEEDS.

4          SO, IF THAT'S EARLY IN THE MORNING OR LATE AT NIGHT OR,

5    YOU KNOW, A SUNDAY MORNING OR SOMETHING LIKE THAT, THAT'S FINE.

6          I'M NOT GOING TO COME, BUT, YOU KNOW, MR. BROCKLAND OR

7    WHOEVER HE'S WORKING WITH WILL COME AT YOUR CONVENIENCE.

8          MR. SAX:  ALL RIGHT.

9          THANK YOU, YOUR HONOR.

10          THE COURT:  OKAY.

11          MR. BROCKLAND:  THANK YOU, YOUR HONOR.

12          THE COURT:  WE'LL TALK TO YOU GUYS SOON.  LET ME – AND I'LL

13    GET YOU THAT ORDER WITH THE PRETRIAL CONFERENCE DATES

14    SHORTLY.  IT'S STUCK ON MY DESK.

15          MR. SAX:  THANK YOU, YOUR HONOR.

16          MR. BROCKLAND:  NO PROBLEM.

17          TAKE CARE, YOUR HONOR.

18          THE COURT:  THANK YOU.

19          THE CLERK:  THIS COURT IS NOW ADJOURNED.

20          (PROCEEDINGS ADJOURNED 9:52 A.M.)

21

22

23

24

25

1

2                    TRANSCRIBER'S CERTIFICATE

3                         DISCLAIMER

4   THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

5   DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

6

7          I, Dorothy Babykin, attest that the foregoing proceedings provided to me

8   electronically were transcribed by me to the best of my ability.

9

10                              ___/s/   Dorothy Babykin

11                              Dorothy Babykin

12   Date: 3/5/2023

13

14

15

16

17

18

19

20

21

22

23

24

25