Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
The Business Litigation Group, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone: 415.765.6634
Facsimile: 415.283.4804

Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
Amundsen Davis LLC
120 South Central, Suite 700
St. Louis, MO 63105
Telephone: 314.719.3732
Facsimile: 314.719.3733

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
One LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA 92660
Telephone: 310.866.5157
Facsimile: 310.943.2085

*Attorneys for Plaintiff,*
*Donald Wakefield*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br><br>*Hon. Douglas F. McCormick*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date: August 8, 2023<br>Time: 10:00 a.m.<br>Courtroom: 6B<br><br>Complaint Filed: September 27, 2021 |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ............................................................................................... 1

III.   MR. WAKEFIELD IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES TOTALING $1,926,836.25 ................................................................... 4

    A.   Applicable Law ..................................................................................... 4

    B.   Mr. Wakefield is Entitled to a Lodestar of $1,284,557.50 ................... 5

        i.    The Rates Sought Are Reasonable ............................................. 6

        ii.   The Hours Expended Are Reasonable ....................................... 7

    C.   A Multiplier of 1.5 is Appropriate ........................................................ 9

        i.    Novelty and Difficulty ............................................................. 10

        ii.   Skill Displayed ......................................................................... 11

        iii.  Preclusion of Other Employment ............................................. 11

        iv.   Contingent Risk ........................................................................ 11

IV.    CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaral v. Cintas Corp. No. 2*,
  163 Cal.App.4th 1157, 78 Cal.Rptr.3d 572 (2008) .......................................... 10

*Arias v. Ford Motor Co.*,
  EDCV181928PSGSPX, 2020 WL 1940843 (C.D. Cal. Jan. 27, 2020) ............................................................................................................... 7

*Barzilli v. Intuitive Surgical, Inc.*,
  CV 21-677 PSG, 2022 WL 17369627 (C.D. Cal. Aug. 1, 2022) ........................ 7

*Broadcast Music, Inc. v. Pardon*,
  2015 WL 966184 (E.D. Cal. Mar. 4, 2015) ........................................................ 9

*Chavez v. Netflix, Inc.*,
  162 Cal.App.4th 43 (2008) ............................................................................... 10

*City of Oakland v. Oakland Raiders*,
  203 Cal.App.3d 78, 249 Cal.Rptr. 606 (1988) ................................................. 10

*Franco v. Cent. Transp. LLC*,
  EDCV191464JGBSPX, 2022 WL 16921826 (C.D. Cal. Oct. 27, 2022) ............................................................................................................... 7

*Gilliam v. Levine*,
  CV 18-2580 PSG, 2022 WL 401462 (C.D. Cal. Jan. 25, 2022) ......................... 7

*Hashemi v. Bosley, Inc.*,
  CV 21-946 PSG, 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ...................... 7

*Hicks v. Toys 'R' Us-Del., Inc.*,
  CV 13-1302 DSF JCG, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014) ............................................................................................................... 7

*Hous. Works v. Cnty. of Los Angeles*,
  CV 15-8982-GW(RAOX), 2018 WL 11309909 (C.D. Cal. July 12, 2018) ............................................................................................................... 7

*Ketchum v. Mose*,
  24 Cal.4th 1122, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) ............................... 9

*Lanard Toys Limited v. Dimple Child LLC*,
   2020 WL 4032668 (C.D. Cal.) ........................................................................... 5

*Mangold v. California Pub. Utilities Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) .............................................................................. 5

*McGucken v. Chive Media Group, LLC*,
   CV 18-01612-RSWL-KS, 2018 WL 5880751 (C.D. Cal. Nov. 8,
   2018) ............................................................................................................. 3, 10

*PLCM Group, Inc. v. Drexler*
   22 Cal.4th 1084, 95 Cal.Rptr.2d 198, 997 P.2d 511(2000) ................................ 5

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,
   342 F.R.D. 461 (C.D. Cal. 2022) ....................................................................... 7

*Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*,
   CV 02-1089 PSG, 2021 WL 4786889 (C.D. Cal. Aug. 24, 2021) ..................... 7

*Ryan v. Editions Limited West, Inc.*,
   786 F.3d 754 (9th Cir. 2015) .............................................................................. 5

*Santana v. FCA US, LLC*,
   56 Cal.App.5th 334, 270 Cal.Rptr.3d 335 (2020) ............................................ 10

*Shakey's Inc. v. Covalt*,
   704 F.2d 426 (9th Cir.1983) ............................................................................... 5

*Sonoma Land Trust v. Thompson*,
   63 Cal.App.5th 978, 278 Cal.Rptr.3d 324 (2021) ........................................ 9, 10

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ............................................................................ 10

**Statutes**

Copyright Act ............................................................................................... *passim*

Copyright Act §412 .................................................................................... 10, 11

RICO .............................................................................................................. 2, 11

iii
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

## I.   INTRODUCTION

The Parties have agreed to a settlement of all of their respective claims and counterclaims, with the only issue left to resolve being the amount of the attorneys' fees and costs to be paid by the Olen Parties. As part of the settlement, the Parties have agreed that Mr. Wakefield is entitled an award of "reasonable attorneys' fees and costs, all as determined by the Court upon noticed motion." (Brockland Decl. ¶ 57 & Ex. 3 (*Wakefield III* Settlement Agreement § III(B)).) As set forth more fully below, Mr. Wakefield should be awarded reasonable attorneys' fees totaling $1,926,836.25, after application of a multiplier, and costs totaling $27,997.74.

## II.   BACKGROUND

This is Mr. Wakefield's third lawsuit against billionaire Igor Olenicoff and his real estate conglomerate, Olen Properties Corp. (collectively, the "Olen Parties"). All have arisen out of the Olen Parties' display of knock-off copies of Mr. Wakefield's copyrighted sculpture, *Untitled*, at various commercial properties throughout their vast real estate empire. (Brockland Decl. ¶¶ 12-27.)

The first lawsuit (*Wakefield I*) resulted in a jury verdict of $450,000 and a permanent injunction against the Olen Parties ordering them to remove and destroy **all** infringing sculptures. (Brockland Decl. ¶ 18.) The second lawsuit (*Wakefield II*) arose when another, previously undisclosed, infringing sculpture was found after the *Wakefield I* trial. *Wakefield II* resulted in a settlement agreement after the Olen Parties filed sworn declarations with the Court attesting under penalty of perjury that all infringing works had been removed from their properties and destroyed. (Brockland Decl. ¶ 26.)

The instant lawsuit (*Wakefield III*) was filed after Mr. Wakefield discovered the Olen Parties' display of two additional infringing sculptures at another commercial property they operated, this one in Boynton Beach, Florida. This time, in addition to suing for copyright infringement, Mr. Wakefield brought

1

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

claims for violations of civil RICO arising from the Olen Parties' years'-long pattern and practice of engaging in criminal copyright infringement—against Mr. Wakefield and others—as well as a claim for fraudulently inducing the settlement agreement in *Wakefield II*. (Brockland Decl. ¶ 29-31; Dkt. 1, Complaint ¶¶ 11-107.)

The Olen Parties mounted an aggressive defense. They dodged service (Dkt. 60), sought to transfer the case to Florida (Dkt. 40), tried to have this case dismissed outright (Dkt. 60), and then tried to have certain issues bifurcated and the rest of the case stayed (Dkt. 69). When all of this failed, the Olen Parties brought a new case against Mr. Wakefield in California state court (*Wakefield IV*), alleging that his filing of this case breached the *Wakefield II* settlement agreement. Following removal to this Court, the Court dismissed *Wakefield IV* with prejudice because its claims were compulsory counterclaims in this case. (*Wakefield IV*, Dkt. 16.) The Court expressed its concern with "possible gamesmanship by the Olenicoff Parties" because they "offered no reason as to why they filed *Wakefield IV* as a separate action when the same issues were already being litigated … in *Wakefield III*." (*Id.* (emphasis added).) The Court also expressed concern "that the purpose of filing *Wakefield IV* was to seek out a different judge or simply increase the cost of litigation." (*Id.*)

After the dismissal of *Wakefield IV*, the Olen Parties brought counterclaims against Mr. Wakefield alleging he breached the *Wakefield II* settlement and seeking a declaratory judgment that he did not own a valid copyright in accused works, despite a determination in *Wakefield I* that Mr. Wakefield did own the copyrights. (Dkt. 84, 85.) In rejecting the invalidation argument, the Court noted that Mr. Wakefield's copyright ownership had already been fully litigated in *Wakefield I* and that doing so again here "would be a waste of the parties' and the Court's resources." (Dkt. 91.)

/ / /

2
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants' contentious litigation style continued throughout the case. They outright refused to respond to a litany of production requests on grounds of privilege, yet refused to turn over a privilege log. (Dkt. 94.) That dispute forced Mr. Wakefield to prepare a joint discovery motion totaling over 100 pages long. (Dkt. 94 and 94-01.) The Court largely granted Mr. Wakefield's motion. (Dkt. 108.) Only then did the Olen Parties supplement their discovery responses to state that they lacked any responsive documents. Their privilege objections, and the ensuing 100-page filing, had been for nothing.

The Parties then each filed cross-motions for summary judgment. Both were denied. (Dkt. 116.) The result, however, was not a wash. In its Order, the Court made clear that Mr. Wakefield would be entitled to recover statutory damages (and thus also attorneys' fees) if he prevailed on his claims for copyright infringement. (*Id.*) Although the Olen Parties' infringement had begun before the registration of his copyright – which would normally preclude statutory damages or attorney's fees under the Copyright Act – the Court found that a rarely invoked exception applied because there was a "legally significant difference" between the Olen Parties' pre- and post-registration infringement. (*Id.*) The "legally significant difference" found by the Court was the permanent injunction and order against the Olen Parties in *Wakefield I* to destroy all the infringing copies." (*Id.*) This was a rare result and a significant win for Mr. Wakefield. Counsel for Mr. Wakefield is aware of only one other instance in which this exception has been applied in this District. *See McGucken v. Chive Media Group, LLC*, CV 18-01612-RSWL-KS, 2018 WL 5880751, at *5 (C.D. Cal. Nov. 8, 2018).

After it became clear that Mr. Wakefield could, and likely would, succeed in recovering his attorneys' fees in this lawsuit, a settlement was reached. The terms include an agreement by the Parties that Mr. Wakefield is entitled to an award against the Olen Parties of "reasonable attorneys' fees, all as determined by the Court" upon the filing of a motion by Mr. Wakefield submitted with "customary

3

evidence in support of" his fees and costs. (Brockland Decl. ¶ 56 & Ex. 3, *Wakefield III* Settlement Agreement § III(B).) Although the Olen Parties reserved their right to contest the total amount awarded, they agreed that they would not challenge Mr. Wakefield's right to an award of his reasonable fees and costs. (*Id.*)

Now, in accordance with the terms of the settlement agreement, Mr. Wakefield files the instant motion for an award of $1,926,836.25, after application of a multiplier for his fees, and $27,997.74 in costs.

### III. MR. WAKEFIELD IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES TOTALING $1,926,836.25.

#### A. Applicable Law

Plaintiff has a contractual basis for the award of attorneys' fees, despite the crux of Plaintiff's cause of action in *Wakefield III* being the Defendants' Copyright Act violation. The contractual basis for the award of attorneys' fees is two-fold. First, in the *Wakefield III* Settlement Agreement (Brockland Decl., Ex. 3), Defendants agreed to pay Plaintiff's attorneys' fees and costs incurred in this action, in an amount to be awarded by the Court. That settlement agreement is governed by California law. (*Id.*) In addition, the *Wakefield II* Settlement Agreement provided that the prevailing party in an action to enforce it, would be entitled to attorneys' fees. (Dkt. 106-04, ¶ 5.4.) While Mr. Wakefield sought to rescind that settlement agreement in *Wakefield III*, Defendants sought to enforce it, but have instead paid Plaintiff damages of $190,000, have allowed him to take possession of the infringing sculptures, have agreed to take nothing from him, and have agreed to pay his attorneys' fees. Thus, Plaintiff is in the position of a prevailing party with respect to the *Wakefield II* Settlement Agreement, which is also governed by California law. Thus, there are two contractual bases for the current award of attorneys' fees.

Because there are contractual bases for the award of attorneys' fees, the Court need not look to the Copyright Act cases for the method of determining the

amount of the fees. The Copyright Act does not preempt California state law permitting the enforcement of contractual fee-shifting provisions. *Ryan v. Editions Limited West, Inc.*, 786 F.3d 754, 751 (9th Cir. 2015).

Courts in the Ninth Circuit apply "state law in determining not only the right to fees, but also in the method of calculating the fees." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (citing *Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir.1986)); *Shakey's Inc. v. Covalt*, 704 F.2d 426 (9th Cir.1983).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group, Inc. v. Drexler* 22 Cal.4th 1084, 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511(2000).[1] "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Id.* "The reasonable hourly rate is that prevailing in the community for similar work." *Id.* "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id.* "Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Id.*

**B.    Mr. Wakefield is Entitled to a Lodestar of $1,284,557.50.**

As set forth in the declarations herein, the total hours spent by Mr. Wakefield's attorneys in connection with this case is 1,888.60. When multiplied by the reasonable rates ranging from $450 to 825 for the attorneys for litigation in

---

[1] The Copyright Act method for determining attorneys' fees is similar. First, the Court determines a reasonable "lodestar" fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Second, the Court determines if that fee should be adjusted. *See, e.g., Lanard Toys Limited v. Dimple Child LLC*, 2020 WL 4032668 (C.D. Cal.).

5

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

this District, the total lodestar is $1,284,557.50.

### i. The Rates Sought Are Reasonable

Mr. Wakefield's counsel seek the following hourly rates:

**Amundsen Davis**

| Professional | Position | Rate Sought ($) | Hours |
|---|---|---|---|
| Gene J. Brockland | Partner | 825 | 572.50 |
| Brian Wacker | Partner | 750 | 6.5 |
| Chris Miller | Associate | 650 | 674.60 |
| Daniel Coffman | Associate | 650 | 63.9 |
| Jennifer Russo | Associate | 550 | 24.4 |
| Giovanni DeGregorio | Associate | 450 | 139.40 |
| Elizabeth W. McKown | Associate | 450 | 8.9 |
| Shanterra Thomas | Paralegal | 175 | .8 |
| Ashley Starks | Paralegal | 175 | 10.3 |
| | | Total Hours: | 1501.30 |

**One LLP**

| Professional | Position | Rate Sought ($) | Hours |
|---|---|---|---|
| William O'Brien | Partner | 700 | 220.30 |

**Business Litigation Group**

| Professional | Position | Rate Sought ($) | Hours |
|---|---|---|---|
| Marc Bernstein | Partner | 750 | 96.9 |
| Tsui-Ming Chen | Paralegal | 175 | 47.7 |

The reasonableness of these rates is established, in part, by the Declarations of Marc Bernstein and William O'Brien that are being filed herewith. Both have extensive experience in this District and are familiar with rates generally charged

for litigation in this District.

The reasonableness of the rates is also established by the Wolters Kluwer 2022 Real Rate Report, excerpts of which are attached to the Declaration of Gene J. Brockland as Exhibit 6. "The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies." *Hashemi v. Bosley, Inc.*, CV 21-946 PSG (RAOX), 2022 WL 18278431, at *10 (C.D. Cal. Nov. 21, 2022). Courts in this District have repeatedly found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also. e.g. Hous. Works v. Cnty. of Los Angeles*, CV 15-8982-GW(RAOX), 2018 WL 11309909, at *5 (C.D. Cal. July 12, 2018) ("The Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district"); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 524 (C.D. Cal. 2022); *Franco v. Cent. Transp. LLC*, EDCV191464JGBSPX, 2022 WL 16921826, at *3 (C.D. Cal. Oct. 27, 2022); *Arias v. Ford Motor Co.*, EDCV181928PSGSPX, 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020); *Barzilli v. Intuitive Surgical, Inc.*, CV 21-677 PSG (SKX), 2022 WL 17369627, at *5 (C.D. Cal. Aug. 1, 2022); *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. CV 02-1089 PSG (VBKx), 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021); *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014)); *Gilliam v. Levine*, No. CV 18-2580 PSG (MRWx), 2022 WL 401462, at *5 (C.D. Cal. Jan. 25, 2022).

### ii. The Hours Expended Are Reasonable

As outlined in the Brockland Declaration, this case was prepared by counsel up through pre-trial compliance. The case was only 3 ½ weeks from trial when it was removed from the trial calendar by Judge Carney. Thus, Mr. Wakefield's

counsel had done the vast majority of the work needed to try the case. (Brockland Decl. ¶ 74.)

In addition, much of the work that counsel was required to do was in direct response to the full-throated defense mounted—and the often unreasonable positions taken—by the Olen Parties. (Brockland Decl. ¶¶ 33-49.) In fact, more than 400 of the approximately 1500 hours expended by Mr. Wakefield's Amundsen Davis attorneys, his lead counsel, resulted from having to counter unreasonable positions taken by the Olen Parties. This included the following services necessitated by the Olen Parties unmeritorious and burdensome litigation tactics:

- Defeating Defendants' Motion to Transfer to the Southern District of Florida;
- Defeating Defendants' Motion to Quash Service on Igor Olenicoff;
- Defeating Defendants' Motion to Dismiss;
- Removing the state court action filed by Defendants to this Court and getting it dismissed (with the Court finding that there was "possible gamesmanship" by the Olen Parties and noting that they had either sought out a different judge to hear their claims or wanted to increase the cost of the litigation for Mr. Wakefield);
- Obtaining dismissal of the Olen Parties' counter-claim seeking to invalidate Mr. Wakefield's copyright registration dismissed, with the Court mentioning that litigation on that point would be a waste of the parties' and the Court's resources; and
- Filing an extensive Motion to Compel the production of documents made necessary by the Olen Parties' extensive and improper objections, only to later be told that the Defendants simply had no responsive documents.

*Id.*

Plaintiff's use of lawyers from three law firms to prosecute this action is irrelevant. What matters is that the total hours expended during this cross-firm collaboration are reasonable, regardless of whether they were expended by one, two or three law firms. As is seen from the invoices submitted, there were four lawyers (Gene Brockland and Chris Miller of Amundsen Davis, William O'Brien of One LLP, and Marc Bernstein of The Business Litigation Group) who were principally responsible for handling this case. That this team of four lawyers were in three different firms, as opposed to being in the same firm, is beside the point.

### C. A Multiplier of 1.5 is Appropriate

"[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ketchum v. Mose*, 24 Cal.4th 1122, 1132, 104 Cal.Rptr.2d 377, 384, 17 P.3d 735, 741 (2001). (original emphasis). The factors considered when determining any adjustment to the lodestar include: (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; (4) the contingent nature of the fee award. *Id.*, 24 Cal.4th at 1132, 104 Cal.Rptr.2d at 384, 17 P.3d at 741.[2]

"In contingent fee cases, a fee enhancement compensates the lawyer for having taken the case despite the risk of receiving no payment in the event of a loss or the risk of a delayed payment in the event of a victory." *Sonoma Land Trust v. Thompson*, 63 Cal.App.5th 978, 986, 278 Cal.Rptr.3d 324, 330 (2021).

---

[2] Plaintiff recognizes that Courts in the Ninth Circuit only rarely apply a multiplier in Copyright Act cases. *See, e.g. Broadcast Music, Inc. v. Pardon*, 2015 WL 966184, at *4 (E.D. Cal. Mar. 4, 2015) (citing *Van Gerwin v. Guarantee Mut. Life. Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (holding that a multiplier may be used only in rare and exceptional cases)). Plaintiff submits that this should be one of those cases, even assuming that the Copyright Act case law applies. For the reasons stated above, however, Plaintiff believes that California state law on the application of a multiplier is appropriate.

"The enhancement is 'intended to approximate market-level compensation for' cases taken on contingency, 'which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.'" *Id.* (quoting *Ketchum*, 24 Cal.4th at 1138). For this reason, contingent risk can "alone" be "sufficient to justify [a] fee enhancement." *Sonoma Land Trust*, 63 Cal.App.5th at 988. "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001)*; see e.g. City of Oakland v. Oakland Raiders*, 203 Cal.App.3d 78, 249 Cal.Rptr. 606 (1988) (2.34 multiplier upheld); *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 (2008) (2.5 multiplier not "so out of line with prevailing case law as to constitute an abuse of discretion"); *Santana v. FCA US, LLC,* 56 Cal.App.5th 334, 353, 270 Cal.Rptr.3d 335, 350 (2020) (affirming multiplier of 2.0); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217, 78 Cal.Rptr.3d 572, 620 (2008) (affirming multiplier of 1.65).

### i. Novelty and Difficulty

This case presented a particularly novel and difficult question from the start— namely, whether Mr. Wakefield would be able to recover statutory damages and attorneys' fees for this infringement, even though the infringement had begun prior to his registration of his copyright. (*See* Brockland Decl. ¶ 51.) As was made clear in the parties' competing cross-motions for summary judgment, the path towards an award of fees under the Copyright Act was no easy feat. In this District, **only one plaintiff has ever successfully invoked an exception to §412 of the Copyright Act**. *See McGucken v. Chive Media Group, LLC*, CV 18-01612-RSWL-KS, 2018 WL 5880751, at *5 (C.D. Cal. Nov. 8, 2018) ("The Court is aware of only one case in this district allowing § 412 remedies because of some cessation of infringement.").

The difficulty inherent in the case was exacerbated by the existence of the *Wakefield II* Settlement Agreement (*see* Brockland Decl. ¶ 81) and Defendants' inordinate and unnecessarily burdensome defense (*see* Brockland Decl. ¶¶ 29-51).

### ii. Skill Displayed

By successfully invoking the exception to section 412 here, Mr. Wakefield's attorneys demonstrated a high degree of skill. Winning that issue was crucial, as it allowed Mr. Wakefield to pursue statutory damages for willful infringement of up to $150,000 per infringement and relieved him of the obligation to prove actual damages. (*See* Brockland Decl. ¶ 51.) It also allowed him to recover attorneys' fees. Until the Court's order on summary judgment, Mr. Wakefield's right to attorney's fees depended on his prevailing on his civil RICO claim or the *Wakefield II* Settlement Agreement, which provided for fees to the prevailing party in a suit to enforce its terms.

### iii. Preclusion of Other Employment

Mr. Wakefield's counsel devoted substantial resources to this matter, including both a senior partner and a senior associate of Amundsen Davis. This was done at a time of unprecedented demand for legal talent, when all law firms have been struggling to hire and retain attorneys. Thus, prosecuting this case precluded other employment. (*See* Brockland Decl. ¶ 82.)

### iv. Contingent Risk

The risks of non-payment in this case were high. As the Olen Parties demonstrated throughout this and prior litigation, they had the ability and resources to drag out this litigation for years. (*See* Brockland Decl. ¶¶ 11-53.) They did not concede an inch in this case, even going so far as to contend that the Florida knock-offs were visually different from the ones previously litigated (*see* Brockland Decl. ¶ 30), meaning that Mr. Wakefield would once again have had to prove access and substantial similarity to make his case for copyright infringement.

The contingent risk was extremely high because, as expected, the Olen Parties aggressively pursued counterclaims against Mr. Wakefield in which they argued that Mr. Wakefield's claims were completely barred as a result of the

*Wakefield II* Settlement Agreement. (*See* Brockland Decl. ¶ 81.) This created a risk that Mr. Wakefield might not recover anything—that he might actually owe the Olen Parties attorneys' fees—and also that his counsel would get nothing for their work.

The Olen Parties used their financial leverage at every turn throughout this litigation. From the beginning of the case, they used their billions in resources drive up the hours and costs of this litigation. They tried to duck service. They tried to move the case elsewhere. When those efforts failed, they filed separate, redundant litigation to obtain a new judge. They stonewalled in discovery. Then, after forcing Mr. Wakefield to file a 106-page motion to compel production, they revealed after that motion was largely granted that they were not withholding anything behind their unsubstantiated blanket privilege objections. All of this was intended to, and in fact did, drive up the costs of this litigation and squeeze the resources of Mr. Wakefield and his attorneys. Considering all of these circumstances, a multiplier of 1.5 is more than justified.

## IV. CONCLUSION

Plaintiff has established that the rates requested and time spent in prosecuting this case are both reasonable, resulting in a lodestar of $1,284,557.50. Plaintiff has also established that application of a 1.5x multiplier is called for, resulting in total attorneys' fees of $1,926,836.25. Finally, Plaintiff has established that he has incurred costs of $27,997.74.

As a result, Plaintiff respectfully requests a total award of attorneys' fees and costs in the amount of $1,954,833.99.

Dated: June 22, 2023

ONE LLP

*/s/ William J. O'Brien*
William J. O'Brien

*Attorneys for Plaintiff,
Donald Wakefield*

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,310 words, which complies with the word limit of L.R. 11-6.1.

*/s/ William J. O'Brien*
William J. O'Brien
One LLP