Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
The Business Litigation Group, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone:   415.765.6634
Facsimile:    415.283.4804

Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
Amundsen Davis LLC
120 South Central, Suite 700
St. Louis, MO 63105
Telephone:   314.719.3732
Facsimile:    314.719.3733

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
One LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA  92660
Telephone:   310.866.5157
Facsimile:    310.943.2085

*Attorneys for Plaintiff, Donald Wakefield*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br><br>*Hon. Douglas F. McCormick*<br><br>**DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date:  August 8, 2023<br>Time:                10:00 a.m.<br>Courtroom:       6B<br><br>Complaint Filed: September 27, 2021 |

I, Gene J. Brockland, declare as follows:

1.     I am an attorney licensed to practice law in Missouri and Illinois, and am admitted pro hac vice in this case.  I am an attorney and Partner at the law firm of Amundsen Davis LLC, one of the attorneys of record for Plaintiff Donald Wakefield in this case.  I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

### Plaintiff's Team of Attorneys

2.     After being retained by Plaintiff, I assembled a team of attorneys to prosecute this litigation.  In addition to members of my firm, the team included two different California attorneys, Marc Bernstein of the Business Litigation Group, LP in San Francisco and William J. O'Brien of One LLP in Los Angeles.

3.     Mr. Bernstein was added to the team due to his litigation experience, generally, but especially because of his experience with handling civil RICO actions in the context of criminal copyright infringement.  His Declaration is filed concurrently herewith.

4.     Mr. O'Brien was added to the team because of his litigation experience in this Court and his experience with copyright infringement matters.  His Declaration is filed concurrently herewith.

### My Experience

5.     In 1985, I graduated from Washington University School of Law.

6.     I have been admitted to practice law in Missouri since 1985 and in Illinois since 1986.  I have been admitted pro hac vice in courts throughout the United States, including three different times in this Court.  I have been licensed to practice before the U.S. Courts of Appeal for the Seventh, Eighth and Ninth Circuits and have argued cases in each of those courts.

7.     I have tried multiple cases to verdict or decision in both state and federal courts, including eleven jury trials and over twenty bench trials.

/ / /

8.    I began my practice in 1985 with the predecessor to the firm of Herzog Crebs LLP in St. Louis, Missouri, becoming a partner in 1990.  I remained a partner at Herzog Crebs until 2018, when I joined SmithAmundsen LLC (now Amundsen Davis LLC) as a partner.

9.    Amundsen Davis is headquartered in Chicago, Illinois, with twelve offices throughout the Midwest.  Amundsen Davis currently has over 230 attorneys.  I practice in both the St. Louis and Chicago offices.

10.    Most of my career has been devoted to trying commercial litigation matters, both for plaintiffs and defendants.  In 2008, I began to practice in the area of art law.  I successfully tried a case involving a stolen Norman Rockwell painting in the U.S. District Court for the District of Las Vegas, obtaining title to the work on behalf of a good faith purchaser over the claims of the original owner, a decision which was later upheld on appeal by the U.S. Court of Appeals for the Ninth Circuit.

11.    In 2012, I undertook my first copyright infringement case, filing suit on behalf of a sculptor, the Plaintiff in the case of Donald Wakefield v. Igor Olenicoff and Olen Properties, Case Number SACV12-2077 AG (RNBx), in this Court, in which Plaintiff alleged that Defendants infringed his copyright in a large granite sculpture, *Untitled* ("*Wakefield I*").

12.    *Untitled* had been created by Plaintiff in 1992.  A photograph of the original work, then on display outside a home in the Chicago, Illinois area, follows:

/ / /

/ / /

DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS



13.     Prior to filing suit, Mr. Wakefield had accidentally discovered four nearly-identical copies being publicly displayed on Olen Properties' commercial properties in Orange County, California.  A photograph of one of those nearly-identical copies follows:



4

14.   On those same properties, Mr. Wakefield discovered three derivative copies.  A photograph of one of those derivative copies follows:



15.   *In Wakefield I*, Mr. Wakefield alleged that the Olen Parties had engaged in direct, vicarious and contributory copyright infringement.  He sought actual damages and injunctive relief, particularly the destruction of the unauthorized copies.

16.   Mr. Wakefield did not seek statutory damages nor attorneys' fees in *Wakefield I*, because the infringement had begun before his registration of the copyright.

17.   *Wakefield I* was vigorously defended by the Defendants, who denied liability, claiming that they had never had access to Mr. Wakefield's work, that the infringing copies were not substantially similar to *Untitled*, and that they had innocently purchased the copies from Chinese "artists" after Igor Olenicoff saw the works at a sculpture garden at the Beijing Olympics in 2008.

18.   Ultimately, the jury rejected all of those defenses and returned a verdict of $450,000 ($75,000 per the six infringing copies allowed to go to the

5

jury) and the Court entered a permanent injunction requiring Defendants to destroy the infringing copies.  (*Wakefield I*, Dkt. 101 and 132.)

19.    In granting the permanent injunction, the Court in *Wakefield I* concluded that Mr. Wakefield "creates unique, one-of-a-kind works of art, and Defendants continue to infringe by displaying the copies …. [and] Defendants have not compensated Plaintiff for this use."  (Dkt. 120)  The Court further rejected Defendants' position that removal would cause undue hardship, explaining, "While Defendants will likely have to expend a noticeable effort removing and replacing the sculptures, the interest in preserving Plaintiff's exclusive copyrights outweighs those efforts."  *Id.*

20.    In spite of the entry of a permanent injunction, the trial court granted Defendants' JNOV on the issue of damages, taking away the jury verdict. (Dkt. 120).

21.    On appeal, however, the Ninth Circuit reversed, reinstated the jury's verdict and affirmed the entry of the permanent injunction.  The Ninth Circuit further remanded the case to the trial court for trial on another infringing copy that the trial court had erroneously determined to be barred by the statute of limitations.  Defendants unsuccessfully sought review by the U.S. Supreme Court.

22.    In 2012, I also filed a similar suit for artist John Raimondi, styled Raimondi v. Igor Olenicoff and Olen properties Corp., Case Number SACV12-2094 AG (RNBx), also in this Court ("*Raimondi*"), alleging that Defendants were displaying four unauthorized copies of two of Mr. Raimondi's copyrighted works.

23.    Once again, Defendants vigorously contested the case, claiming that they were innocent purchasers of the infringing works from Chinese "artists." Defendants denied liability up until the eve of trial, when they finally stipulated to infringement, but contested the amount of damages sought by Mr. Raimondi.

24.    The *Raimondi* jury awarded Mr. Raimondi $640,000 in damages and the Court ordered that Defendants place placards on the copies indicating that they

6

were unauthorized copies of Mr. Raimondi's works.  (*Raimondi*, Dkt. 74 and 86.)

25.    Defendants appealed to the Ninth Circuit, but that appeal was dismissed following a confidential settlement.

26.    In 2017, I filed a second case for Mr. Wakefield styled Wakefield v. Igor Olenicoff and Olen Properties Corp., Case Number SACV 17-1147-AG (DFMx), ("*Wakefield II*") involving another unauthorized copy of *Untitled* not disclosed by Defendants in *Wakefield I*.  *Wakefield I* (having been remanded in part) and *Wakefield II* were then consolidated.  The parties thereafter entered into a confidential settlement agreement in January 2018 (the "*Wakefield II* Settlement Agreement").

27.    In addition to those cases, I have handled a number of other cases and claims involving artwork and copyright infringement.  One of such claims was on behalf of another sculptor, Bill Bedford, who also asserted copyright infringement claims against the Olen Parties.  The Bedford claims were resolved without litigation.  (Dkt. 1.)

28.    I have spoken on art law topics on numerous occasions.  In 2022, I was appointed to the arbitration panel for the Court of Arbitration for Art, based in the Netherlands.

### Issues in Current Case and Defendants' Vigorous Defense

29.    The current case is referred to as *Wakefield III*.  In *Wakefield III*, Plaintiff alleged that Defendants were infringing his copyright in *Untitled* yet again, this time by displaying two copies of it (one nearly identical and the other derivative) at one of their properties in Boynton Beach, Florida, the existence of which was never disclosed to him by Defendants during the pendency of *Wakefield I* and *Wakefield II*.  (Dkt. 1.)  Photographs of the Boynton Beach copies follow:

/ / /

/ / /

DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

30.     In *Wakefield III*, Mr. Wakefield once again alleged copyright infringement.  This time, he sought actual damages and injunctive relief, but also sought, alternatively, statutory damages and attorneys' fees, on the theory that the Olen Parties' public display in Boynton Beach began after his copyright registration and should not be considered a continuation of the prior infringement. (*Id.*)

31.     Mr. Wakefield also alleged that Defendants had defrauded him into entering into the *Wakefield II* Settlement Agreement by falsely representing, prior to its execution, that all infringing copies had been removed from Olen Properties' commercial properties and had been destroyed.  In addition, Mr. Wakefield alleged that Defendants had violated the RICO Act as a result of their pattern of copyright infringement.  (*Id.*)

32.     Despite the fact that Defendants had been found to infringe *Untitled* in *Wakefield I*, and despite the fact that they had been ordered to destroy all infringing copies, the Defendants vigorously defended this case, and went on the offensive by filing counter-claims, all of which caused Plaintiff to incur substantial attorneys' fees and costs.  Defendants' vigorous defense of *Wakefield III* involved various tactics, set out in Paragraphs 33 – 49 below.

33.     Initially, Defendants filed a Motion to Transfer this case to the Southern District of Florida (Dkt. 22), which Plaintiff opposed (Dkt. 33) and which the Court denied (Dkt. 40).  Amundsen Davis attorneys spent at least 83.3 hours on this issue.

34.     Defendants then tried to dodge service by mail on Mr. Olenicoff and filed a motion to quash service (Dkt. 45), which Plaintiff opposed (Dkt. 56) and which the Court denied (Dkt. 60).  Amundsen Davis attorneys spent at least 57.40 hours on this issue.

35.     Next, Defendants filed a Motion to Dismiss (Dkt. 53), which Plaintiff opposed (Dkt. 57) and which the Court denied (Dkt. 60).   Amundsen Davis

attorneys spent at least 82.1 hours on this issue.

36.     Next, Defendants moved to bifurcate their rescission claim and to stay the remaining issues (Dkt. 69), which Plaintiff opposed (Dkt. 70) and which the Court denied (Dkt. 78).  Amundsen Davis attorneys spent at least 47.8 hours on this issue.

37.     Next, Defendants filed a separate suit against Mr. Wakefield styled *Olen Properties Corp. and Igor Olenicoff v. Donald Wakefield*, Superior Court of Orange County, State of California, County of Orange, Case No. 30-2022-01253225-CU-BC-CJC ("*Wakefield IV*").  In the *Wakefield IV* complaint they filed in state court, the Olen Parties alleged that Mr. Wakefield had breached the *Wakefield II* Settlement Agreement by filing the instant lawsuit, *Wakefield III*, and sought damages and an order requiring Mr. Wakefield to dismiss *Wakefield III*.

38.     Upon receipt of the state court lawsuit, I wrote to Julie Ault, counsel for the Olen Parties, advising her that it represented improper claim splitting because it arose out of the same transaction as *Wakefield III,* and asked her to voluntarily dismiss the state court lawsuit.  A copy of my letter to Ms. Ault dated April 18, 2022 is attached hereto as Exhibit 1.  She refused.

39.     Thereafter, we removed *Wakefield IV* to this court, where it was assigned Case No. 8:22-cv-00928-CJC-DFM.  We then moved to dismiss *Wakefield IV* (*Wakefield IV* Dkt. 8), which the Court granted, stating that the Olen Parties' claims were compulsory counterclaims (*Wakefield IV* Dkt. 16).  Amundsen Davis attorneys spent at least 41.5 hours on this issue.

40.     In its Order granting the motion to dismiss *Wakefield IV*, the Court described the Olen Parties' "active approach" towards defending against the *Wakefield III* litigation and also observed that they had "offer[ed] no reason as to why they filed *Wakefield IV* as a separate action when the same issues were already being litigated – via the motion to dismiss and motion to bifurcate – in *Wakefield III*." (*Wakefield IV* Dkt. 16).  The Court then expressed concern about

10

"possible gamesmanship by the Olenicoff Parties" and (correctly) surmised "that the purpose of filing *Wakefield IV* was to seek out a different judge **or simply increase the cost of litigation**." (*Wakefield IV*, Dkt. 16) (emphasis added). In light of these circumstances, the Court concluded that "[d]ismissal, rather than consolidation, serves as a stronger rebuff" and dismissed *Wakefield IV* outright. *Id*.

41.     Thereafter, the Court granted the Olen Parties leave to file counterclaims in *Wakefield III.* (Dkt. 83). The Olen Parties did so and alleged counterclaims against Wakefield for: breach of the Settlement Agreement (Count I); specific performance of the Settlement Agreement (Count II); and a declaratory judgment invalidating Wakefield's copyrights in *Untitled* (Count III). (Dkt. 84, 85). In addition to their counterclaim challenging the validity of Wakefield's copyrights to *Untitled*, the Olen Parties also raised alleged affirmative defenses to Wakefield's claims for infringement on the same grounds. (Dkt. 85, 85)

42.     Plaintiff then moved to dismiss the Olen Parties' counterclaim and affirmative defenses challenging the validity of Mr. Wakefield's copyrights to *Untitled* on the grounds that these issues were previously adjudicated as part of the judgment in *Wakefield I* and were barred from re-litigation under *res judicata*. (Dkt. 88.) The Court granted this motion and explained that "[a]dditional litigation on the question of whether Plaintiff's *Untitled* copyright is valid would be a **waste of the parties' and the Court's resources**." (Dkt. 91)(emphasis added) Amundsen Davis attorneys spent at least 42.1 hours on this issue.

43.     Aside from creating unnecessary work on Plaintiff's part by virtue of Defendants taking unreasonable legal positions, as set forth above, Defendants also unnecessarily drove up the discovery costs.

44.     In particular, the Olen Parties refused to respond to virtually all of Plaintiff's interrogatories and requests for production on the basis of privilege objections; and repeatedly refused to turn over a privilege log or other information

11

to substantiate their broad claims of privilege. (Dkt. 94-1)

45.     As a result of this stonewalling, Plaintiff was forced to file a lengthy motion to compel together with a 106-page joint stipulation.  (Dkt. 94-1, 100).

46.     Following a hearing, the Court largely granted the Plaintiff's motion and issued an order compelling responses to 15 of the 19 Requests to Produce (RTP) at issue.  (Dkt. 108).

47.     Thereafter, the Olen Parties served supplemental responses to these RTPs revealing that, despite their steadfast assertions of privilege and other objections, they did not possession any responsive records and were not withholding anything in response.  Attached as Exhibit 2 are a copy of these supplemental responses served on December 14, 2022.

48.     Had the Olen Parties simply responded as required under the Federal Rules of Civil Procedure by affirming that they were not in possession of any responsive records in the first instance, the entire discovery dispute would have been avoided.  Instead, the Olen Parties elected to lodge blanket privilege objections, refused to produce a privilege log and then aggressively contested a 106-page motion to compel, all to avoid responding that they had no responsive records.

49.     Plaintiff had no choice but to challenge the Olen Parties' stonewalling.  Indeed, this case only arose after they had previously refused to disclose the existence of the infringing sculptures in Boynton Beach during the course of discovery in *Wakefield I* and *Wakefield II*.  All told, because the Olen Parties repeatedly chose to object rather than disclose that they were not in possession of any responsive records, Plaintiff's counsel spent 69.5 hours litigating this issue.

50.     The total hours spent by Amundsen Davis attorneys on matters that were directly related to, and caused by, Defendants' aggressive and unsuccessful litigation tactics outlined in Paragraphs 33-49 above, is 423.7.

51.     Plaintiff filed a Motion for Partial Summary Judgment on liability (Dkt. 98.)  Defendants filed a comprehensive Motion for Summary Judgment (Dkt. 106.)  The Court denied both motions.  (Dkt. 116.)  The Court's Order, however, contained a critical finding that Plaintiff was not barred from recovering statutory damages (and attorney's fees) under 17 U.S.C. §412, which prohibits recovery of such for copyright infringement that occurred prior to the registration of a copyright.  (Dkt. 116).  Although the Olen Parties' first infringement of Plaintiff's copyrights had begun prior to the date of the copyright registration, the Court determined in its Order that a rarely invoked exception to §412 was applicable because there was a "legally significant difference" between the Olen Parties pre- and post-registration infringement.  (Dkt. 116).  The "legally significant difference" cited by the Court was the *Wakefield I* lawsuit, jury trial, jury verdict, and the Ninth Circuit appeal, all culminating in an award in Plaintiff's favor and a permanent injunction against the Olen Parties to destroy all the infringing copies." (*Id*. at p. 10.)  This was an important win for Plaintiff, and a difficult one to obtain. Indeed, it is believed that this exception to §412 has been applied in only one other instance in this District. *See McGucken v. Chive Media Group, LLC*, CV 18-01612-RSWL-KS, 2018 WL 5880751, at *5 (C.D. Cal. Nov. 8, 2018) ("The Court is aware of only one case in this district allowing § 412 remedies because of some cessation of infringement.")

52.     The significance of the Court's determination on summary judgment was that, unlike in *Wakefield I* and *Wakefield II*, Plaintiff would ultimately be entitled to recover statutory damages and attorney's fees by prevailing on his claims for infringement alone.

53.     Ultimately, Amundsen Davis attorneys spent least 298.1 hours litigating these summary judgment issues.

/ / /

/ / /

***Wakefield III* Settlement**

54.     As described above*, Wakefield III* involved competing claims, with Plaintiff seeking damages, injunctive relief and attorneys' fees.  Defendants, in their counter-claims, sought injunctive relief, damages and attorneys' fees.

55.     A copy of the *Wakefield III* Settlement Agreement is attached hereto as Exhibit 3.

56.     Pursuant to the *Wakefield III* Settlement Agreement, Defendants will pay Plaintiff the sum of One Hundred Ninety Thousand Dollars ($190,000), will allow him to retrieve the unauthorized copies, and will pay Plaintiff's reasonable attorneys' fees and costs, in an amount determined by this Court.  Defendants will receive nothing from Plaintiff based on their counter-claims.

57.     The *Wakefield III* settlement represents a significant success for Plaintiff in light of his claims and the Defendants' counter-claims, but also in comparison to *Wakefield I* and *Wakefield II*.  Plaintiff is recovering more in damages in *Wakefield III* on a per copy basis than he did in the prior two cases, he is able to retrieve the copies so that he can be assured of their destruction, and Defendants have agreed to pay his  reasonable attorneys' fees and costs in an amount determined by the Court, which Plaintiff was never able to recover in either *Wakefield I* or *Wakefield II*.

**Authentication of Billing**

58.     Attached hereto as Exhibit 4 is an invoice including the true and accurate time records of Amundsen Davis for which fee recovery is sought in this case.  The records include detailed descriptions of the work that I, and others under my supervision, performed on this matter and the time spent on each task.

59.     Included in the time records attached as Exhibit 4 is a true and accurate copy of the rates for each billing professional, for which fee recovery is sought in this case.  As set forth in more detail below, these rates are consistent with rates charged by comparable attorneys in or around Los Angeles, California.

14

60.    Paragraph 64 below shows the total hours billed, and the rate sought, broken down by billing professional.  I created this chart to assist the Court in assessing the reasonableness of Plaintiff's fee request.

### Reasonableness of Time Spent and Fees Requested

61.    I am familiar with the way Amundsen Davis professionals record their time.  These time records are initially prepared at or around the time of the billing event.  As the Partner in charge of this matter, I directed my staff to set up a unique billing matter number to accurately capture the time spent on this case.  The fees sought in this case were recorded under that matter number to capture only that time at issue in this case.

62.    I have personally reviewed all of the time entries in this matter, and I have verified that the time was correctly billed to this matter.

63.    As the Partner in charge of this matter, I determined, directed, and advanced the strategy pursued by Plaintiff.  I supervised the legal analysis and writing performed on multiple motions and the pre-trial materials.  I directed communications with co-counsel and opposing counsel.  I handled mediation, and oversaw the subsequent attempts to settle this case, although recent settlement negotiations were principally handled by my co-counsel, Marc Bernstein.

64.    During this case, I was assisted by other partners, associates and paralegals at Amundsen Davis.  Brian Wacker, a junior partner who had assisted me on the prior cases of *Wakefield I* and *II*, as well as *Raimondi*, graduated from law school in 2009.   Chris Miller graduated from law school in 2017.  Daniel Coffman graduated from law school in 2014.  Jennifer Russo graduated from law school in 2019.  Giovanni DeGregorio graduated from law school in 2021.   Their contributions were all vital to Plaintiff's success in this case.  The names of the professionals who worked on this matter at Amundsen Davis, their positions, and the rates sought for each, are as follows:

/ / /

| Professional | Position | Rate Sought ($) | Hours |
|---|---|---|---|
| Gene J. Brockland | Partner | 825 | 572.50 |
| Brian Wacker | Partner | 750 | 6.5 |
| Chris Miller | Associate | 650 | 674.6 |
| Daniel Coffman | Associate | 650 | 63.9 |
| Jennifer Russo | Associate | 550 | 24.4 |
| Giovanni DeGregorio | Associate | 450 | 139.4 |
| Elizabeth W. McKown | Associate | 450 | 8.9 |
| Shanterra Thomas | Paralegal | 175 | .8 |
| Ashley Starks | Paralegal | 175 | 10.3 |
| | | Total Hours: | 1501.3 |

As shown by the hours above, over 80% of the hours billed on this matter were by me and Chris Miller.  The time spent by the Amundsen Davis professionals falls under the general categories described below.

### Case Management, Litigation Strategy and General Research

65.     Amundsen Davis professionals spent at least 120.20 hours engaged in case management activities, including such activities as: meeting internally to discuss strategy; communicating with co-counsel; communicating with Plaintiff; and conducting general research not applicable to specific motions.

66.     Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on case management, litigation strategy and general research.

| Professional | Hours |
|---|---|
| Gene J. Brockland | 31.7 |
| Brian Wacker | 2.9 |
| Chris Miller | 8.5 |
| Daniel Coffman | 58.50 |

16

| | |
|---|---|
| Jennifer Russo | 9.2 |
| Giovanni DeGregorio | 8.8 |
| Shanterra Thomas | .6 |

**Preparing the Case and Complaint**

67.    Amundsen Davis professionals spent at least 21.6 hours engaged in analyzing the facts of the case and preparing the Complaint.

68.    Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on preparing the case and the Complaint.

| Professional | Hours |
|---|---|
| Gene J. Brockland | 11.6 |
| Brian Wacker | 3.6 |
| Daniel Coffman | 5.4 |
| Chris Miller | 1.0 |

**Motion Practice**

69.    As set forth in paragraphs 33 through 53 above, the motion practice in this case was extensive, including:

   a.    Successfully opposing Defendants' Motion to Quash Service;

   b.    Successfully opposing Defendants' Motion to Transfer;

   c.    Successfully opposing Defendants' Motion to Dismiss or Bifurcate;

   d.    Successfully removing *Wakefield IV* and moving to dismiss it;

   e.    Successfully moving to dismiss Count III of Defendants' Counter-claims;

   f.    Cross-motions for summary judgment.

70.    Amundsen Davis professionals spent at least 828.50 hours engaged in motion practice.  The motions, most of which were in response to unreasonable

17

positions taken by Defendants, were described in detail in Paragraphs 33 through 53 above.

71.     Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on motion practice.

| Professional | Hours |
|---|---|
| Gene J. Brockland | 248.30 |
| Chris Miller | 455.90 |
| Jennifer Russo | 15.20 |
| Giovanni DeGregorio | 100.00 |
| Elizabeth W. McKown | 8.90 |
| Shanterra Thomas | 0.20 |

**Discovery**

72.     Amundsen Davis professionals spent at least 242.4 hours engaged in discovery.  That discovery was extensive, including:

    a.    Issuing two (2) sets of document requests and interrogatories to Defendant Olenicoff;

    b.    Issuing two (2) sets of documents requests and interrogatories to Defendant Olen Properties;

    c.    Responding to three (3) requests for production of documents from Defendants;

    d.    Responding to two (2) interrogatory requests from Defendants;

    e.    Deposing Igor Olenicoff (via Zoom) and the corporate representative of Olen Properties in California; and

    f.    Defending the deposition of Plaintiff.

73.     Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on discovery.

18

| Professional | Hours |
|---|---|
| Gene J. Brockland | 151 |
| Chris Miller | 80.1 |
| Giovanni DeGregorio | 1.4 |
| Ashley Starks | 9.9 |

**Pretrial and Trial Preparation**

74.     This case was removed from the February 21, 2023 trial docket by Judge Carney on January 26, 2023.  As a result, much of the pretrial and trial preparation had been done by that time.  Amundsen Davis professionals spent at least 240.1 hours engaged in preparing pleadings required to be filed as part of the pre-trial compliance under the Federal and Local Rules and preparing for trial.  Those pre-trial compliance matters included:

        a.     Plaintiff's Witness List (filed);

        b.     Joint Exhibit List (filed, though without Defendants' input);

        c.     Motions in Limine (filed);

        d.     Memorandum of Contentions of Fact and Law (filed); and

        e.     Jury Instructions (prepared, but not filed).

75.  The Memorandum of Contentions of Fact and Law demonstrates another example of how Defendants unnecessarily increased the amount of work required by Plaintiff.  Defendants asserted twenty-seven affirmative defenses, many of which were frivolous.  Plaintiff asked Defendants' counsel to indicate which of the affirmative defenses he planned to withdraw.  After stating that he would do so, Defendants' counsel switched course and refused to withdraw any of them until **after** Plaintiff filed his Memorandum of Contentions of Fact and Law, requiring Plaintiff to address all twenty-eight affirmative defenses.  (See Exhibit 5, Brockland/Sax email exchange Jan. 11-17, 2023.)  This resulted in Plaintiff having to file a 34-page Memorandum of Contentions of Fact and Law, much of it devoted to Defendants' twenty-eight affirmative defenses.  (Dkt. 122).

DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

76.  Prior to halting work, we had begun trial preparation, including preparing witness outlines, cross-examination outlines, and draft stipulations.

77.   Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on pre-trial and trial preparation.

| Professional | Hours |
|---|---|
| Gene J. Brockland | 85.4 |
| Chris Miller | 126.8 |
| Giovanni DeGregorio | 27.5 |
| Ashley Starks | .4 |

78.   On January 26, 2023, the Court removed the case from the trial docket and vacated all settings (Dkt. 125).  At that point, our work on pre-trial and trial preparation matters ceased.

### Settlement

79.   Amundsen Davis professionals spent at least 35 hours engaged in settling this case, including preparing for and participating in mediation with a mediator suggested by Defendants, preparing a detailed Settlement Conference State for Judge Kewelramani, after Defendants insisted on that settlement conference, and multiple conversations with co-counsel and my client.

80.   Based on my personal review of the Amundsen Davis time records, the following professionals spent the following amount of hours on settlement.

| Professional | Hours |
|---|---|
| Gene J. Brockland | 44.5 |

### Basis for Multiplier

81.   This case has been handled by Plaintiff's counsel on a contingent fee basis.  This case carried substantial risk for Plaintiff, in particular because of the

20

existence of the *Wakefield II* Settlement Agreement.  Had Defendants prevailed on their argument that the *Wakefield II* Settlement Agreement barred Plaintiff's claims, which they did not, Plaintiff would have not recovered damages nor attorneys' fees, nor would he have been able to stop the infringing activity.   Had Defendants prevailed, they would have had to pay nothing, would have been able to keep infringing Plaintiff's copyright, and could have recovered their fees against Plaintiff.  Thus, the case carried substantial risk for Plaintiff and thus for his attorneys as well.

82.    The *Wakefield III* Settlement Agreement, pursuant to which Defendants agreed to pay Plaintiff's reasonable attorneys' fees and costs, is governed by California law.  Under California law, as more fully discussed in Plaintiff's Memorandum of Points and Authorities in Support of His Motion for Attorneys' Fees and Costs, where cases are handled on a contingent fee basis, a multiplier can be assessed.

**Reasonableness of the Rates Requested**

83.    Attached hereto as Exhibit 6 are relevant excerpts from the Wolters Kluwer Real Rate Report for 2022 (the "2022 Report").  It is based on "actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment."  (Exhibit 6, p. 5.)

84.    This is a $155 billion dataset (Exhibit 6, p. 4).  It contains categorized data on rates by type of practice, attorney category and experience, and certain regions, including the Los Angeles-Long Beach-Anaheim area (Exhibit 6, p. 229).

85.    Many courts have found that it is better to use actual data on rates that are paid rather than rely on self-reported rates or claims for rates.  See, for example *Rueda v. ADT LLC*, 2016 U.S. District. LEXIS 4361, *3-4 & n.3 (C.D.Cal. Jan 14, 2016)(recognizing that the Real Rate Report was "a much better reflection of true market rates than self-reported rates in all practice areas as  part of a national survey of top firms" while noting that the Report may still result in inflated rates

21

for plaintiff's counsel as it is based on rates paid by companies, who are generally willing to pay higher fees as compared to individual clients).

86. Excerpts of the 2022 Report, containing relevant background and foundational information, are attached as Exhibit 6.

87. On page 16 of Exhibit 6 the rates for Litigation in the Los Angeles area for 2022 are as follows:

| Role | Median | 3rd Quartile | Mean |
|---|---|---|---|
| Partner | $725 | $1,045 | $799 |
| Associate | $615 | $855 | $642 |

88. The Third Quartile rates are not the highest rates in the dataset, but are the middle point between the Median rates and the highest rates.

89. Plaintiffs' claimed rates of $825 for Partner Gene J. Brockland, $750 for Partner Brian Wacker, $650 for Associates Daniel Coffman and Chris Miller, $550 for Associate Jennifer Russo and $450 for Associates Giovanni DeGregorio and Elizabeth W. McKown fall either slightly above the Mean, or below the Mean in the case of some of the Associates, and all are well below the Third Quartile rates.

90. Based on my experience and my review of the 2022 Report, I believe that Plaintiff's claimed rates are reasonable and consistent with hourly rates paid for comparable work by law firms in the Los Angeles area.  Further support for the reasonableness of these rates is set out in the declarations of Marc Bernstein and William O'Brien.

91. The total attorneys' fees sought by Plaintiff for the work performed by Amundsen Davis is $1,039,310.00.

92. As set forth in the Declaration of Marc Bernstein filed concurrently herewith, Plaintiff seeks $91,037.50 in attorneys' fees for the work performed by Business Litigation Group LLP.

93.     As set forth in the Declaration of William J. O'Brien filed concurrently herewith, Plaintiff seeks $154,210.00 in attorneys' fees for the work performed by One LLP.

94.     Combining the attorneys' fees sought by Plaintiff for the work performed by Amundsen Davis, Business Litigation Group and One LLP, Plaintiff seeks total attorneys' fees of $ 1,284,557.50.

**Costs**

95.     Plaintiff has incurred costs of $27,997.74 in prosecuting this case. The breakdown of that total is set forth in the chart attached hereto as Exhibit 7.

96.     Receipts and invoices for the costs are attached hereto as Exhibit 8.

**Conclusion**

97.     The total attorneys' fees and costs sought by Plaintiff herein is $1,954,833.99, consisting of:

|   |   |   |
|---|---|---|
| a. | Amundsen Davis attorneys' fees: | $1,039,310.00 |
| b. | Business Litigation Group attorneys' fees: | $    91,037.50 |
| c. | One LLP attorneys' fees: | $  154,210.00 |
| d. | Total fees prior to multiplier: | $1,284,557.50 |
| e. | Total fees after applying 1.5x multiplier: | $1,926,836.25 |
| f. | Costs: | $    27,997.74 |
|   | Grand Total: | $1,954,833.99 |

Executed this 22nd day of June, 2023.

_____
Gene J. Brockland

**DECLARATION OF GENE J. BROCKLAND IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**