Spencer M. Sax
Sachs Sax Caplan
6111 Broken Sound Parkway NW, Suite 200
Boca Raton, FL 33487
Tel: (561) 994-4499
Fax: (561) 994-4985
Email: ssax@ssclawfirm.com
*Pro Hac Vice*

Julie A. Ault, Esq. (Bar No. 186914)
Kaelee Gifford, Esq. (Bar No. 303533)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:   (949) 719-7212
Fax:   (949) 719-7210
Email: jault@olenproperties.com

Attorneys for Olen Properties Corp. and Igor Olenicoff

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD, | ) CASE NO.  8:21-cv-1585-CJC-DFM |
| | ) The Hon. Douglas McCormick |
| Plaintiff, | ) |
| | ) **DEFENDANTS' RESPONSE IN** |
| vs. | ) **OPPOSITION TO PLAINTIFF'S** |
| | ) **MOTION FOR ATTORNEYS' FEES** |
| | ) **AND COSTS** |
| OLEN PROPERTIES CORP., IGOR | ) |
| OLENICOFF, JOHN LIANG and Does | ) |
| 1 through 10 inclusive, | ) Hearing Date: August 8, 2023 |
| | ) Time: 10:00 a.m. |
| Defendants. | ) Courtroom: 6B |
| | ) |
| | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................6

II. FACTUAL BACKGROUND.................................................................7

   A.   Litigation Background.................................................................7

   B.   Plaintiff's Failure to Attempt to Resolve the Case Pre-Suit ...........8

   C.   Litigation Efforts .....................................................................10

       i.  Motion Practice ..............................................................12

       ii.  Discovery ......................................................................14

       iii. Cross-Motions for Summary Judgment .................................16

   D.   Resolution of the Case..............................................................17

III. MEMORANDUM OF LAW ...............................................................19

   A.   FEDERAL COPYRIGHT LAW REGARDING FEE AWARD SHOULD BE UTILIZED................................................................19

   B.   LEGAL STANDARD FOR REASONABLENESS OF ATTORNEYS' FEES....................................................................................21

       i.  Result Obtained...............................................................23

       ii.  Over-Litigating the Case ....................................................25

   C.   PLAINTIFF IS NOT ENTITLED TO A FEE MULTIPLIER ....................26

   D.   PLAINTIFF'S HOURS WERE NOT EXPENDED REASONABLY .........29

       i.  Excessive Time for Task/Excessive Research.........................29

       ii.  Intra-Firm and Inter-Firm Conferencing/Communications ....................31

       iii. Internal Memoranda .........................................................32

       iv. Clerical Work .................................................................32

       v.  Inapplicable Billing...........................................................33

       vi. Billing Where Narrative/Description is Completely Redacted...............33

       vii.  Block Billing.................................................................34

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.      PLAINTIFF'S COSTS ARE NOT RECOVERABLE ..................................34

IV.          CONCLUSION ............................................................................................35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

### **Cases**

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)..............................22

*Campbell v. Astrue*, 2011 WL 2493749, *2 (E.D. Cal. June 21, 2011) ...........................32

*Celestine v. FCA US LLC*, 2019 WL 4274092, *6 (E.D. Cal. Sept. 10, 2019); ...............32

*City of Burlington v. Dague,* 505 U.S. 557, 562-564 (1992)...............................................27

*Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174, 1183 (D. Or. 2016)...............21

*Earl v. Beaulieu*, 620 F.2d 101, 103 n.3 (5th Cir. 1980). ...................................................24

*Flores v. FCA US LLC*, 2019 WL 6211367, *6 (E.D. Cal. Nov. 21, 2019).......................32

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994) ...........................................................20

*Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). ............................................22

*Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, *3 (E.D. Cal. Sept. 9, 2013).31

*Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162 (S.D. Fla. 2003)............24

*Haworth v. State of Nev.*, 56 F.3d 1048, 1050 (9th Cir. 1995);..........................................24

*Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)..........................................................20

*In Re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability
    Litigation*, 2023 WL 4109573, *9 (N.D. Cal. June 20, 2023) .......................................31

*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 744. .................22

*Ketchum v. Moses,* (2001) 24 Cal.4th 1122, 1132 ............................................................25

*Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) .....................................20

*LYMS, Inc. v. Millimaki*, 08CV1210-GPC(NLS), 2014 WL 12695754, at *5 (S.D. Cal.
    Mar. 25, 2014)..................................................................................................................23

*Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir.
    1996)..................................................................................................................................21

*Martinez v. Semi-Tropic Cooperative Gin & Almond Huller, Inc.*, 2023 WL 3569906,
    *30-31 (E.D. Cal. May 19, 2023).....................................................................................33

*Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)..................................................33

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 733-734 (1987)......................................................................................................27

*Rahman v. FCA US LLC*, 549 F. Supp.3d 1199, 1206 (C.D. Cal. March 29, 2022).........34

*Rey v. Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1239 (2012) ........................24

*Schofield v. Metropolitan Life Inc. Co.*, 2009 WL 1035224, *4 (E.D. Cal. April 17, 2009) ............................................................................................................................32

*Schrum v. Burlington Northern Santa Fe Ry. Co.*, 2008 WL 2278137, *12 (D. Arizona May 30, 2008) ....................................................................................................33

*Singh v. Hancock Natural Resources Group, Inc.*, 2017 WL 2275029, *12 (E.D. Cal. May 25, 2017); ..........................................................................................32

*Synapsis, LLC v. Evergreen Data Sys., Inc.*, C 05-01524 JF (RS), 2007 WL 2501614, at *1 (N.D. Cal. Aug. 30, 2007) ...........................................................................35

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000)..............27

*Walker v. Iron Sushi LLC*, 752 Fed. Appx. 910, 915 (11th Cir. 2018) ...........................24

*Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) .........................31

*Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1187 (N.D. Cal. 2004). .............23

## I.   <u>INTRODUCTION</u>

1.      Plaintiff asserts entitlement to a ***reasonable*** fee of $1,926,836.25 for this case, which dealt with the same issues that were brought up in two previous lawsuits by this Plaintiff against these Defendants and which settled for $190,000. Plaintiff did not prevail on his claims and received no relief for his unmeritorious claims for fraud and punitive damages and/or RICO treble damages.

2.      It is also per se unreasonable that, for this straightforward case involving one plaintiff and two defendants who have a prior history of litigation on the same issues, Plaintiff employed three different law firms, four partner-level attorneys, five associate-level attorneys, and three paralegals.  Moreover, in reviewing the billing records submitted by Plaintiff's three law firms, there are countless examples of clearly excessive and unreasonable billing, in addition to duplicate billing for the same work.

3.      Moreover, $650,000 of the $1,926,836.25 fee demand should immediately be deducted because there is no legal basis for a 1.5 multiplier.

4.      This entire litigation was nothing but bad faith over-litigating. It was the thirst of Plaintiff and his counsel to assert inflammatory and unfounded RICO claims as well as their desire for an excessive billing opportunity against 'deep pocket' defendants that drove this litigation.

5.      The claim for reasonable attorney's fees is clearly excessive, and the Plaintiff and his counsel should not be rewarded for their conduct in this matter.

## II.    FACTUAL BACKGROUND

### A. Litigation Background

1.     Counsel for Plaintiff, Gene Brockland, was counsel for Plaintiff in the Original Wakefield action which commenced in 2012.  Mr. Brockland was the primary attorney representing Plaintiff in both these matters, and was readily familiar with the facts, law, claims and defenses in the Original Wakefield matters. *See* Declaration of Julie Ault at ¶2, attached hereto as **Exhibit A**.

2.     The claims in this case arise out of the same set of facts and circumstances and the same set of issues of law as the Original Wakefield matters which were previously litigated and settled, namely alleged copyright infringement of the same sculpture at issue in the Original Wakefield matters, when two additional pieces were located at locations in Florida ("Florida Sculptures").  *Id*.

3.     The two sculptures had, unbeknownst to Olen and Olenicoff, already been installed in the locations in Florida at the time of the 2018 Settlement Agreement reached between the parties which resolved **__all__** copyright infringement claims which existed at the time of the Original Wakefield matters.  *Id.*

4.     Given the history between the parties and the disputes, the instant lawsuit should have been a simple motion to enforce settlement or for breach of a settlement.

5.     Rather, Plaintiff brought similar causes of action as were raised in the Original Wakefield matters with the instant Complaint being an altered version of the Complaints

from the Original Wakefield matters. The primary difference is that Wakefield now included allegations of RICO. Plaintiff did not assert any new or additional factual basis for Wakefield's claims of copyright infringement other than an uninvestigated and meritless allegation that Olenicoff, Olens' staff members, and Olen's legal counsel conspired to hide the Florida Sculptures from Wakefield at the time of the consummation of the settlement agreement which covered all claims arising from the Original Wakefield matters. The unfounded RICO allegations in the instant case caused Olen to retain new legal counsel given conspiracy allegations involved prior counsel William Buus and current counsel, Julie Ault. *Id.* at ¶3.

### B. <u>Plaintiff's Failure to Attempt to Resolve the Case Pre-Suit</u>

6. Neither Plaintiff nor his counsel gave Defendants an opportunity to resolve the issues herein prior to instituting the lawsuit. *Id.* at ¶4. Given the history between the parties, Plaintiff knew that Defendants had settled *Wakefield II* where they discovered additional sculptures soon after the litigation was initiated. Also, there was an established approximate value for the sculptures based on the judgment in *Wakefield I.* There was certainly an opportunity to address this case without the need to waste judicial resources nor expend hundreds of hours of attorney time at great expense to the parties.

7. Instead, on September 27, 2021, Plaintiff filed the instant lawsuit as its first communication to Defendants that the settlement agreement had been breached.

8.     As evidenced by counsel's billing records, at least three months passed from when Plaintiff's counsel began billing on the file and when the Complaint was filed. Yet, at no time during this period did Plaintiff or his counsel provide Defendants with a pre-suit demand or attempt to resolve the issues without litigation. Rather, the Defendants first knowledge of the existence of the Florida Sculptures was notification of the filing of the Complaint herein. *Id.*

9.     Failure to provide pre-litigation notice of the claims and the existence of the Florida Sculptures deprived Defendants of the ability to resolve the dispute without incurring the reputational damage which occurred upon the filing of the instant complaint alleging violation of RICO.  *Id.*

10.     Plaintiff's own counsel, Marc Bernstein, admitted he was unaware there had not been a pre-suit demand and disagreed with the approach of instead proceeding with the filing of the lawsuit containing RICO allegations against counsel as well as Defendants. *Id.* at ¶7. Indeed, the second billing entry in the time records was for working up a RICO claim. Plaintiff's counsel did not contemplate the effect of the prior Settlement Agreement until after performing significant research on RICO.

11.     As soon as Defendants were notified of the instant lawsuit, they immediately removed the two sculptures from public view and placed them in storage. *Id.* at ¶ 5.

12.     Soon after the litigation was instituted, in discussions between counsel, Defendants offered a settlement equal to what had been previously established per piece.

In response, Plaintiff's counsel, Mr. Bernstein, asserted millions of dollars in damages and, unfathomably, hundreds of thousands of dollars in fees already incurred. *See* Declaration of Spencer M. Sax, attached hereto as **Exhibit B,** at ¶3.

13.     Thus, Plaintiff was not interested in resolving the claims expeditiously or economically. Rather, the intent was to pursue meritless RICO claims, to threaten punitive damages to deep pocket defendants, and to make this litigation about fees. In his deposition in this matter, Plaintiff testified he received little money from the first two lawsuits between the parties. The attorneys received the majority of the recovery.

14.     Seeing that Plaintiff was not interested in resolving the case but rather was intent on litigating unmeritorious claims in a blatant fee grab attempt, Defendants were left with no choice but to vigorously defend the meritless and previously released claims.

## C. <u>Litigation Efforts</u>

15.     At the inception of the case, Plaintiff asserted millions of dollars in compensatory and punitive damages. Therefore, the defense mounted was warranted due to the outrageous allegations and amount of damages sought. No reasonable attorney would have done less when confronted with claims for punitive damages and RICO violations that had an immediate negative impact on Defendants and which, if Plaintiff prevailed, would have had extremely negative future business impact. Defendants could not have assumed that the case would settle at such a low number and not aggressively defend the

baseless claims. The fact that it did ultimately settle at such a low number, and in line with the per piece amount reached in the settlement agreement from the Original Wakefield matters and what was offered to Plaintiff's counsel at the commencement of the case, shows that Defendants mounted a successful defense.

16.     Further, Plaintiff's counsel repeatedly took the position in their pleadings that liability was already decided in *Wakefield I* and referred to the previous ruling of the Court. However, Plaintiff's position more specifically was that there was collateral estoppel as to liability but not damages. Therefore, Defendants were required to defend against Plaintiff's entire claims, as Plaintiffs would not concede the damages amount already adjudicated in *Wakefield I*, although a figure had been established in that previous litigation.

17.     Moreover, the parties had entered into the 2018 Settlement Agreement, the purpose of which was to resolve <u>all claims</u> between the parties arising from Wakefield's copyright. Therefore, Defendants raised a meritorious defense that the Settlement Agreement barred Plaintiff's claims. As the Court recognized in its Order denying the parties' cross-motions for summary judgment [Dkt. 116], a reasonable jury could conclude that the settlement agreement bars Plaintiff's claims given that the Florida pieces were displayed since 2014, and therefore a claim based on them could have been brought in *Wakefield II,* prior to the 2018 Settlement Agreement.

18.     Finally, the record demonstrates Defendants' multiple attempts to end the litigation, rather than prolong it. The rest of Defendants' record activity represents

preservation of potential defenses, responses to the Plaintiff's affirmative motions and filings, or to manage the time necessary for such responses. All Defendants' pleadings and actions taken in this matter were necessitated by Plaintiff's unreasonably aggressive positions and refusal to abide by the prior settlement agreement governing the claims at issue.

### i. <u>Motion Practice</u>

19. Plaintiff points to the motion practice in this case to paint Defendants as vexatious litigants. However, the motion practice was required due to (1) Plaintiff's outrageous and factually bare allegations, including RICO violations, and the millions of dollars in damages that Plaintiff was seeking in this case; (2) Plaintiff's refusal to apply the damages amount established in *Wakefield I* while asserting that liability had already been decided; and (3) Plaintiff's failure to acknowledge the force and effect of the prior 2018 Settlement Agreement between the parties:

    a. Defendants' Motion to Transfer Venue to the Southern District of Florida: The subject of the lawsuit was two sculptures located in Boynton Beach, Florida. Further, Defendant Olenicoff is a resident of Florida. Finally, because Plaintiff's claims were not for enforcement of the prior Settlement Agreement, there was no need to bring the lawsuit in the same court that decided the Original Wakefield matters. Having the case proceed in Florida would have prevented unnecessary travel to California for hearings and other matters.

    b. Defendants' Motion to Dismiss: Because the parties entered into a prior Settlement Agreement that was intended to resolve all claims between them and Plaintiff's allegations in this lawsuit dealt with sculptures that were

purportedly on display at the time of the prior settlement, this was a valid motion to bring to try to put an end to the litigation.

c. Plaintiff's Removal of State Court Claim: The state court claim dealt with a contractual matter, separate and apart from the statutory and federal claims raised by Plaintiff. There was no continuing jurisdiction provision in the prior Settlement Agreement requiring Defendants to file a lawsuit in federal court.

d. Plaintiff's Motion to Dismiss Count III of the Counterclaim: Plaintiff took the position that liability was established but not damages. Therefore, Defendants were required to defend against Plaintiff's claims, as Plaintiffs would not concede the damages amount.

20.    Importantly, Plaintiff does not reference Defendants' Motion to Bifurcate and Stay [Dkt. 69], which Defendants filed to simplify litigation, limit expenses, and promote judicial economy. Defendants sought to have the Court review the issue of the validity of the 2018 Settlement Agreement (considering Plaintiff's allegations of fraud) prior to reviewing any issues regarding copyright infringement or RICO violations. However, Plaintiff vehemently opposed Defendants' motion, thereby complicating the litigation and requiring Defendants to vigorously defend all aspects of the baseless claims.

21.    Moreover, Plaintiff was overly litigious from start to finish, even refusing to agree to allow Defendants leave to amend their Answer and Affirmative Defenses to assert a counterclaim, requiring the parties to fully brief the issues. The Court ultimately granted Defendants' Motion.

22.     Finally, it should be noted that there was only a total of 1 hour and 10 minutes of hearing time in the entire case, meaning that the Court did not require oral argument or extensive briefing by the parties.

### ii.     <u>Discovery</u>

23.     This case did not involve extensive discovery.  Only three depositions were taken: Plaintiff's counsel took the Defendants' depositions for a total of 9.5 hours, and Defendants' counsel took Plaintiff's deposition for a total of 3.75 hours. There was also limited written discovery.

24.     Plaintiff references a lengthy Motion to Compel production of documents. In fact, the motion itself was 3 pages and related to Interrogatory No. 2 directed to each Defendant and several of Defendant's Response to Plaintiff's Requests to Produce. The required Joint Stipulation submitted by the parties regarding the Motion to Compel resulted in a 106-page document and will be addressed below.

25.     Prior to Plaintiff's filing his Motion to Compel, the parties undertook multiple discussions about the objections and requested documents. Defendants' counsel advised that, as to many requests, there were no responsive documents and agreed to make other revisions in attempts to resolve the issues without unnecessary motion practice.

26.     However, Plaintiff repeatedly asked for documents protected by the attorney-client privilege and did not accept when Defendants rightfully objected to producing said

documents. Plaintiff thereafter aggressively asserted the attorney-client privilege should not be applicable, which was a significant portion of the arguments raised in the Motion to Compel.  Ultimately, the Court did not agree with Plaintiff's position. Rather, the Motion to Compel was granted only to the extent that Defendants were required to amend their responses to explicitly say that there were no responsive documents. *See* Order [Dkt 108].

27.    Further, Plaintiff's Motion to Compel was DENIED as to Interrogatory No. 2. Moreover, the Court's Order only granted IN PART the Motion to Compel Request No. 51 seeking financial statements and federal tax returns; DENIED the Motion as to Requests 52, 53, and 54 regarding other financial documents; and granted the  Motion as to Requests 55 and 56.

28.    Although the Joint Stipulation submitted by the parties regarding the Motion to Compel resulted in a 106-page document, half of those arguments were Defendants' responses to Plaintiff's arguments, and the same arguments were repeated numerous times. Thus Plaintiff's inclusion of the page count was done for the 'shock' effect and should be disregarded.

29.    Finally, another informal discovery dispute arose because of Plaintiff's counsel's fishing expedition to find subjects for future lawsuits at Olen's headquarters. In hearing regarding same, Plaintiff's counsel essentially admitted they were looking for potential future litigation against Defendants by other artists when they sought to photograph other artwork at Olen's headquarters.  This discovery dispute only serves to

reveal Plaintiff counsel's true intent in bringing the instant lawsuit, an attempt to gain a large attorney fee and to find other potential future lawsuits, not to seek any unique recovery on behalf of their client.

### iii.   <u>Cross-Motions for Summary Judgment</u>

30.    Plaintiff's counsel argues that Plaintiff received a positive ruling from the Court in its Order denying the parties' cross-motions for summary judgment, which is wholly incorrect [Dkt. 116]. Contrary to what Plaintiff states in his Motion, the Court did not rule that Mr. Wakefield would be entitled to recover statutory damages (and thus attorneys' fees) if he prevailed. The Court rather stated that "Plaintiff ***may seek*** statutory damages under Section 504(c)(1)." [Dkt. 116 at p. 10] (emphasis added). Allowing the Plaintiff to seek damages does not equate to entitlement. Further, the Order did not address whether Plaintiff had conclusively proven that the sculptures were not in place prior to registration of the copyright. That was something to be determined at trial.

31.    Further, the Court ultimately ruled that "a reasonable jury could also conclude that the settlement agreement was not fraudulently induced. If the jury did so, it could also reasonably decide that the settlement agreement bars Plaintiff's claims given that the Florida statutes were displayed since 2014, and therefore a claim based on them could have been brought in Wakefield II." [Dkt. 116] at p. 11-12.

32.    Nevertheless, the potential for fee exposure existed prior to the Court's ruling, both because of Plaintiff's allegations regarding copyright infringement and the date that

the second sculpture was installed and his claims for violation of RICO. Therefore, it is not as if Plaintiff prevailed in the denial of the motions for summary judgment and created fee entitlement.

33.    It is patently false for Plaintiff to assert that the settlement occurred due to the Court's ruling on the summary judgment motions. Rather, the parties compromised because the judge denied the motions, making it clear that a jury would have to decide the issues in this case. Where Plaintiff wanted Defendants to pay him millions of dollars, and the Defendants did not want to pay this outrageous and frivolous amount, the parties compromised for $190,000. If Plaintiff felt that he had prevailed on the cross-motions for summary judgment, it is unlikely that he would have settled the case for $190,000, nearly the same amount offered by Defendants to resolve the case at the outset of this litigation.

### D. Resolution of the Case

34.    The parties resolved this lawsuit for $190,000 except for attorneys' fees and costs.

35.    On or about January 21, 2023, a settlement agreement in principle was reached through telephonic discussions.  Defendants' counsel, Ms. Ault, proposed to Plaintiff's counsel, Mr. Bernstein, a 'pens down' stay of the case while the parties memorialized the agreement so as to avoid a run up of attorney time preparing for an imminently approaching

trial date.  Mr. Bernstein refused and instead Plaintiff's firms continued to prepare for trial and incur significant fees.  *See* Ault Declaration at ¶6.

36.     The Settlement Agreement lays out that Plaintiff could seek an award of attorneys' fees and costs. It did not establish Plaintiff as the prevailing party or prevent Defendants from attacking the validity or reasonableness of Plaintiff's requested fees.

37.     The settlement amount was a fraction of what Plaintiff sought in the lawsuit and what was demanded at the start of the lawsuit to resolve. Plaintiff did not establish new law. He did not prevail on his claims for punitive damages for fraud. He did not prevail on his claim for treble damages under a RICO violation.

38.     In fact, Plaintiff's counsel, Marc Bernstein admitted to Defendants' counsel his case had been "over lawyered" with several firms representing Plaintiff.  *See* Ault Declaration at ¶ 7.

39.     Defendants agreed to pay a <u>reasonable</u> fee award[1] as determined by the court, as Defendants trusted the Court to make an award commensurate with the small settlement, the lack of significance of the case, and the limited discovery.  Plaintiff's counsel should not be rewarded for their outrageous fee demand, particularly as this case was taken on a

---

[1] It may be determined by the Court that Plaintiff acted unreasonably in commencing this suit in light of the Settlement Agreement which covered all claims of infringement of the subject copyright and thus any award of fees beyond the Plaintiff counsels' contingency fee is unreasonable.

contingency and Plaintiff's counsel is now seeking a windfall, as counsel bargained for their fee in their retainer agreement.

### III.   MEMORANDUM OF LAW

### A. FEDERAL COPYRIGHT LAW REGARDING FEE AWARD SHOULD BE UTILIZED

40.   Plaintiff argues that the Court should look at California state law regarding the method for determining the award of attorneys' fees rather than federal Copyright law. However, doing so runs afoul of the causes of action raised and position taken by Plaintiff in this lawsuit.  Further, clearly Plaintiff does not want the Court to rely on Copyright law regarding the method for determining attorneys' fees because fee awards are completely discretionary under Copyright law.

41.   As the Supreme Court noted, "[t]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994). Rather, while creative work is to be encouraged, broad public availability of literature, music, and the other arts should be promoted. *Id*.

42.   In *Fogerty*, the Supreme Court established several criteria to guide the exercise of the trial court's authority in awarding fees.

43.   First, the Copyright Act's statutory language identifies that an award of attorneys' fees, even to a prevailing party, is **entirely discretionary**. There is no "precise

rule or formula" for awarding fees. *Id.* at 533, 534 (emphasis added). *See also Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (discussing the *Fogerty* factors).

44.    Second, the trial court may not award attorney's fees as a matter of course. Rather, the court **<u>must</u>** make a more particularized, case-by-case assessment. *Id.* at 533 (emphasis added).

45.    Next, "**<u>defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement</u>**. *Id.* at 527 (emphasis added).

46.    Finally, the *Fogerty* Court delineated "several nonexclusive factors" to inform a court's fee-shifting decisions, including ""frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 534, n.19 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)). In deciding whether to award fees under the Copyright Act, the district court should also consider the degree of success obtained on the claim. *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996).

47.    "Litigation conduct that needlessly increases the expense of resolving copyright disputes neither encourages innovation nor appropriately rewards an author's creation" and should be avoided. *Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174, 1183 (D. Or. 2016).

48.     The *Countryman* court felt that one of Plaintiff's primary objectives in undertaking its litigation conduct was to increase the bases for a prevailing party fee petition, which is not the sort of conduct that furthers the objectives of the Copyright Act or should be rewarded." *Id.*  Looking at the totality of the circumstances, the *Countryman* court exercised its discretion to deny Plaintiff any attorney's fees, notwithstanding the fact that Plaintiff had prevailed on the merits of its copyright claim. *Id*.

49.     In the instant case, Plaintiff's claims were not contractual in nature. The counts of Plaintiff's Complaint were for (1) copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) civil conspiracy; (5) fraud in the inducement, and (6) civil RICO. [Dkt. 1]. Furthermore, Plaintiff is not entitled to attorneys' fees under the 2018 Settlement Agreement because he did not bring an action for enforcement of the Settlement Agreement. As admitted in the Motion, he brought an action to rescind the 2018 Settlement Agreement, not for enforcement of the Settlement Agreement.

50.     Accordingly, this Court should be guided by the legal precedent which gives the Court the discretion to deny an award of fees entirely.

## B. LEGAL STANDARD FOR REASONABLENESS OF ATTORNEYS' FEES

51.     Even if the Court is inclined to award Plaintiff fees, the amount that Plaintiff is seeking is so unreasonable and egregious that it should not be entertained.

52.     The Ninth Circuit has adopted the "lodestar" method for calculating attorney fees. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). "The lodestar is the product of a reasonable hourly rate and a reasonable number of hours. The court then may adjust the lodestar based on a variety of factors. Germane factors include the nature, difficulty, and extent of the litigation, the skill it required, the attention given, and the success or failure of the enterprise, as well as other factors." *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 744.

53.     "The benchmark in determining attorney fees is reasonableness." *Id*. The district court has wide discretion in determining the reasonableness of attorneys fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). The Court "'may not uncritically accept a fee request,' but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." *Id*. (quoting *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002).

54.     As the Supreme Court laid out in *Hensley v. Eckerhart*:

> **The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary**, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. **"In the private sector, 'billing judgment' is an important component in fee setting.** It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

461 U.S. at 433–34 (emphasis added). *See also Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1187 (N.D. Cal. 2004). Therefore, a reduced award might be fully justified by a general observation that an attorney over-litigated a case, and a trial court is not required to state each charge it finds reasonable or unreasonable. *LYMS, Inc. v. Millimaki*, 08CV1210-GPC(NLS), 2014 WL 12695754, at \*5 (S.D. Cal. Mar. 25, 2014).

55.     That does not end the inquiry. The court must review other considerations that may lead the court to adjust the fee downward, including the important factor of the "results obtained." *Hensley*, 461 U.S. at 434.

### i.     <u>Result Obtained</u>

56.     If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. **<u>Again, the most critical factor is the degree of success obtained.</u>**" *Id*. at 436 (emphasis added).

57.     "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. *See also Rey v. Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1239 (2012) (Where work was not

"expended in pursuit of the ultimate result achieved," a reduced fee is appropriate.) (internal citations omitted).

58.     Further, there are "special circumstances" that can render the award of any attorney's fees unjust and "so-called nuisance settlements represent such a circumstance. *See Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162 (S.D. Fla. 2003). Where plaintiff's counsel had "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees" by "continuously employ[ing] a strategy of delay and obfuscation . . . to ward off the inevitable resolution of the case." *Id*. Because plaintiff's counsel had pursued a "strategy of 'shaking down' Defendants with nightmarishly expensive litigation solely in pursuit of attorney's fees," such conduct "must not be rewarded." *Id*.

59.     Finally, courts have held that rejected settlement offers are an appropriate factor to consider in assessing the reasonableness of a request for attorney fees. *See Walker v. Iron Sushi LLC*, 752 Fed. Appx. 910, 915 (11th Cir. 2018); *Haworth v. State of Nev.*, 56 F.3d 1048, 1050 (9th Cir. 1995); *Earl v. Beaulieu*, 620 F.2d 101, 103 n.3 (5th Cir. 1980). Further, courts can consider the total recovery compared to size of requested fee award when ruling on request for attorney's fees. Therefore, the Court should consider Plaintiff's failure to settle the case at the inception when Defendants offered to do so.

## ii.    <u>Over-Litigating the Case</u>

60.    "Trial judges deciding motions for attorney fees properly may consider whether the attorney seeking the fee has become personally embroiled and has, therefore, overlitigated the case." *Karton*, 61 Cal. App. 5th at 738.

61.    "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum v. Moses,* (2001) 24 Cal.4th 1122, 1138). In *Karton,* the trial court reasoned that "[t]he issues of this case do not appear particularly complex, and the request for fees is vastly in excess of what is reasonable. Fees three times the award [do] not seem to be reasonable, nor [do] 600 hours of attorney time." *Karton*, 61 Cal. App. 5th at 743.

62.    Further, in *Rey v. Madera Unified Sch. Dist.*, plaintiffs requested compensation for 3,028.8 hours expended in litigating the case, including 195.45 hours for filing the complaint; 68.65 hours for other prelitigation planning; 353.45 hours on the preliminary injunction motion; and 109.55 hours identifying, retaining, and working with experts, for a total of 727.1 hours. Plaintiffs also claimed 979.5 hours for establishing and defending their fees. The trial court reduced the hours to 500, explaining:

> "The court is troubled by the number of hours claimed by the attorneys for the plaintiffs. Again, the court has considered all of the evidence presented by the parties. However, the final product observed by the court would suggest to the court that many of the hours worked by the plaintiffs' attorneys on this case were duplicative of work performed by other plaintiffs' attorneys.

203 Cal. App. 4th 1223, 1243 (2012). The appellate court agreed, holding that "[a] plaintiff is not automatically entitled to all hours claimed in the fee request." *Id*.

63.    Finally, a request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. *Hensley*, 461 U.S. at 437. However, as seen here, Plaintiff's counsel has used its Motion for Fees to assert additional tens of thousands of dollars in fees.

## C. **PLAINTIFF IS NOT ENTITLED TO A FEE MULTIPLIER**

64.    Plaintiff wrongly argues that counsel is entitled to a multiplier due to the taking this case on a contingency and the risk involved. First, because Plaintiff's counsel took this case on a contingency, granting the amount sought would be a windfall, as 40% of $190,000 is $76,000. Further, Plaintiff has not presented, and in fact Plaintiff's counsel refused to present, the contingency fee retainer agreement that would permit counsel to request fees in excess of the contingency fee already received.

65.    The contingency multiplier only comes into play when there is a high risk of loss and to promote attorneys taking specific cases, like civil rights cases. This is not that kind of case.

66.    In the Ninth Circuit, a multiplier may be used to adjust the lodestar amount upward only in "rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably

low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations and citations omitted).

67.     Further, no contingency enhancement is appropriate "unless the applicant can establish that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 733-734 (1987).

68.     In *City of Burlington v. Dague*, the Supreme Court held that a contingency enhancement would result in duplicate recovery, as the lodestar already considers the difficulty in establishing the merits of a case. 505 U.S. 557, 562-564 (1992). Also, to award a contingency enhancement due to the risk of loss based on the merits of the case "**would be to provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones**. . . . We think that an unlikely objective of the "reasonable fees" provisions. These statutes were not designed as a form of economic relief to improve the financial lot of lawyers." *Id*. *See also Yahoo!*, 329 F. Supp. 2d at 1187 (allowing a contingency enhancement would create unintended problems, including "indiscriminately encouraging nonmeritorious cases" and effectively shifting all the fee applicant's attorney fees to the other side whether or not the fee applicant prevails).

69.     Further, a contingency fee arrangement governs what the prevailing party must pay the attorney, not what the court requires the losing party to pay the prevailing

party. *Id*. at 559 (citing *Venegas v. Mitchell*, 495 U.S. 82, 90 (1989)). Thus, the Court should not adjust a reasonable fee to account for the risks in an attorney's litigation portfolio. *Yahoo!*, 329 F. Supp. 2d at 1186-87.

70.     Finally, it is disingenuous for Plaintiff to assert that there was a significant risk involved in taking this case. As Plaintiff asserted throughout the case, the issues had already been decided in *Wakefield I*. Plaintiff came into the lawsuit in a strong position having received a judgment in *Wakefield I* and a swift settlement in *Wakefield II*. This is not a case where the odds were stacked against Plaintiff, requiring him to utilize a contingency arrangement to get counsel to represent him. Rather, the odds were stacked in his favor.

71.     Even if the Court applies the *Ketchum* factors regarding contingency multipliers, Plaintiff is not entitled to a multiplier. As to the first factor, this is not the first litigation between the parties. Plaintiff's counsel was well-versed in the factual and legal issues. Also, there is nothing novel or difficult about a party attempting to seek statutory damages or fees under the Copyright Act. As to the second factor, it is disingenuous for Plaintiff to assert that they employed some extraordinary skill in getting the result in this case, a nominal settlement compared to the millions of dollars in damages asserted. As to the third factor, simply because Plaintiff's counsel billed egregious amounts of time to perform tasks which were not commensurate with the effort required, the work produced, or the result obtained does not entitle them to claim that it precluded other employment.

Rather, it appears they did so due to inexperience.  Finally, as to the fourth factor, as discussed above, there was no risk of non-payment, due to the prior litigation between the parties.

72.     Therefore, the Court should immediately reduce $650,000 off the top of the grossly exaggerated fee request, which has not been made in good faith.

### D. PLAINTIFF'S HOURS WERE NOT EXPENDED REASONABLY

73.     In the case at bar, the concern was not with being made whole but rather with the amount of attorney's fees that could be billed.  Here, the billing records show egregiously excessive billing for tasks and research and as well as improper billing.

#### i.     Excessive Time for Task/Excessive Research

74.     Plaintiff improperly seeks to recover attorneys' fees for outrageously excessive billing for tasks for drafting and for research. Defendants object to these billing practices, because under the facts and circumstances of this case, the billing was clearly excessive. This case was straightforward involving one plaintiff and two defendants who have a prior history of litigation on the same issues. Plaintiff's lead counsel, Gene Brockland, was involved in the prior litigation and thus was familiar with the issues. Yet, Plaintiff employed three different law firms, four partner-level attorneys, five associate-level attorneys, and three paralegals.

75.     Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum*, 24 Cal.4th at 1132 (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). To determine the number of compensable hours, the court must consider "whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Gates*, 987 F.2d at 1397. Fees may be reduced for expenses that appear excessive, redundant, or otherwise unnecessary in light of the tasks performed. *Hensley*, 461 U.S. at 434.

76.     One of Plaintiff's three law firms, which constituted the most extensive portion of the fees sought, is located in St. Louis, Missouri.  Associates from the Missouri firm billed excessively for researching California law. If counsel was going to charge California hourly rates, they should not have billed for excessive research to familiarize themselves with California law.  First, it is unclear why such research was necessary when two California law firms were also representing Plaintiff. Further, Defendants should not be responsible for reimbursing unknowledgeable counsel on the law of the venue in which the action is brought.

77.     Given the admitted over-lawyering by Plaintiff's counsel, Defendants object to the time entries as more fully set forth in the Declaration of Spencer M. Sax, attached hereto as **Exhibit B**. *See* Exhibit B at pp. 2-86.

### ii.   <u>Intra-Firm and Inter-Firm Conferencing/Communications</u>

78.   Plaintiff improperly seeks to recover attorneys' fees for the: (1) internal communications/conferencing at the Amundsen Davis law firm; (2) communications between attorneys at the Amundsen Davis law firm and attorneys at One LLP and/or attorneys/staff at The Business Litigation Group, P.C; and (3) internal communications at the Business Litigation Group, P.C. Courts have held that "in general, counsel should not bill for internal communications and communicating with each other, as such time is unnecessary." *In Re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 2023 WL 4109573, *9 (N.D. Cal. June 20, 2023) (J. Breyer) (*quoting Durham v. FCA US LLC*, 2020 WL 243115, *5 (E.D. Cal. Jan. 16, 2020).

79.   It is unreasonable to double or triple bill a client for internal meetings or where partners are providing instructions to junior associates. *See Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594, *3 (E.D. Cal. Sept. 9, 2013); *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007). The movant has not provided persuasive justification for the intraoffice meeting and/or communications among counsel and staff. *See also Schofield v. Metropolitan Life Inc. Co.*, 2009 WL 1035224, *4 (E.D. Cal. April 17, 2009).

80.   Defendants object to these time entries as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 86-116.

### iii. <u>Internal Memoranda</u>

81.     Courts in this circuit routinely disallow time spent on preparation of internal research or other types of memoranda and the associated time spent reviewing the memoranda. *See Singh v. Hancock Natural Resources Group, Inc.*, 2017 WL 2275029, \*12 (E.D. Cal. May 25, 2017); *Celestine v. FCA US LLC*, 2019 WL 4274092, \*6 (E.D. Cal. Sept. 10, 2019); *Flores v. FCA US LLC*, 2019 WL 6211367, \*6 (E.D. Cal. Nov. 21, 2019); *Gauchat-Hargis*, 2013 WL 4828594, \*3.

82.     Defendants object to these time entries as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 116-124.

### iv. <u>Clerical Work</u>

83.     Plaintiff improperly seeks to recover for clerical tasks which are not compensable in the Ninth Circuit. *See Campbell v. Astrue*, 2011 WL 2493749, \*2 (E.D. Cal. June 21, 2011) ("Attorneys and paralegals may not legitimately bill for clerical or secretarial work") (citing *Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10 (1989)). *See also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (filing, transcript and document organization time is clerical); *Celestine*, 2019 WL 4274092, \*8 (calendaring deadlines are clerical); *Martinez v. Semi-Tropic Cooperative Gin & Almond Huller, Inc.*, 2023 WL 3569906, \*30-31 (E.D. Cal. May 19, 2023) (clerical tasks also include retrieving electronic court documents, copying, printing, emailing documents to attorneys, e-filing, bates

labeling, attorney communications to support staff regarding filing, and communications with courtroom deputy).

84.     Defendants object to these time entries as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 124-130.

### v.     <u>Inapplicable Billing</u>

85.     Plaintiff improperly seeks to recover attorneys' fees for work that is not applicable to the Olen Defendants. This includes, but is not limited to, billing directed to John Liang, a defaulted, unrelated defendant, preparation of engagement agreements, time spent discussing litigation funding, and time spent on Plaintiff's counsel's pro hac vice motions.

86.     Defendants object to these time entries as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 130-133.

### vi.     <u>Billing Where Narrative/Description is Completely Redacted</u>

87.     Plaintiff has not met his burden concerning the Motion for Attorney's Fees where he seeks to recover for time when the entire narrative/description is redacted.  Under these circumstances, neither the Court nor Defendants' counsel can assess whether the time sought is reasonable.

88.     Defendants object to these time entries as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 133-134.

### vii.    <u>Block Billing</u>

89.    A review of the time submitted by One LLP reflects block billing which the Court should reduce. *See Rahman v. FCA US LLC*, 549 F. Supp.3d 1199, 1206 (C.D. Cal. March 29, 2022) (reducing fee award for block billing).

90.    Defendants object to these time entries with examples as more fully set forth in **Exhibit B**. *See* Exhibit B at pp. 134-135.

## E.    <u>PLAINTIFF'S COSTS ARE NOT RECOVERABLE</u>

Defendants object to Plaintiff's request for costs that are not within ambit of the Federal Rule, 54, Local Rule 54-3, or 28 U.S. C. Section 1920. A judge may tax as costs the following:

> (1) clerk fees;
> (2) court report fees;
> (3) fees and disbursements for printing and witnesses;
> (4) fees for necessary exemplification and copies of papers;
> (5) docket fees;
> (6) fees court appointed experts, interpreters, and salaries, fees, expenses, and costs of special interpretation services.

*Synapsis, LLC v. Evergreen Data Sys., Inc.*, C 05-01524 JF (RS), 2007 WL 2501614, at *1 (N.D. Cal. Aug. 30, 2007) (citing 28 U.S.C. § 1920). Neither Civ. L.R. 54-3 nor 28 U.S.C. § 1920 provides a basis for many of the costs claimed" such as travel expenses. *Id*.

Plaintiff improperly seeks recovery of travel expenses, research and discovery, and courier fees. Travel was unnecessary as there were no live hearings, and Plaintiff's personal

travel and travel of the Missouri counsel to California for a deposition was unwarranted when local counsel is located across the street from Defendant Olen's office.   Moreover, it is unclear why Plaintiff is seeking filing fees and court costs in the amount of $902, which does not accurately represent filing fee costs in this district, or why Plaintiff is seeking filling fees and court costs that were incurred in May 2023, at the conclusion of the lawsuit.   Thus, Plaintiff's requests for all costs other than for depositions and actual filing fees should be denied.

## IV. <u>CONCLUSION</u>

Defendants respectfully request that the Court deny the amount of fees sought by Plaintiff as the filing of the case was unnecessary since the parties had a settlement agreement and offered to pay the same amount as in that agreement. However, if the Court is inclined to award a fee to Plaintiff's counsel, the fee should reflect the nature of the recovery achieved, which was almost identical to the amount offered by the Defendants at the outset of the case, and additional reductions as follows. First, Plaintiff is not entitled to any fee multiplier. Second, any fee award should be limited to the ***reasonable*** fees incurred prior to Defendants' motion to bifurcate the case to have the Court determine the applicability of the settlement agreement while staying the remainder of the case. Defendants did so to simplify issues and in the interest of judicial economy, which Plaintiff rejected. Also, the amount should further be limited to reflect the reasonable staffing of the case. Because this case was so egregiously overstaffed, a 75% reduction is warranted. Next,

any amount awarded should be further limited by rejecting any fees incurred after the parties reached a verbal settlement agreement on January 21, 2023, when Defendants wanted a "pens down" stay. Finally, any amount awarded should be further limited in that Plaintiff should not be allowed to recover fees for seeking fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Response contains 7,191 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 18, 2023.

/s/ Spencer Sax
SPENCER M. SAX
SACHS SAX CAPLAN
Attorneys for Olen Properties Corp. and Igor Olenicoff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

**I hereby certify that on July 18, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send a Notice of Electronic Filing to the following CM/ECF registrants:**

Marc N Bernstein
Business Litigation Group PC
150 Spear Street Suite 800
San Francisco, CA 94105

William J O'Brien
One LLP
23 Corporate Plaza Drive, Suite 150-105
Newport Beach, CA 92660

Gene J. Brockland
SmithAmundsen LLP
120 South Central, Suite 710
St. Louis, MO 63105

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed on July 18, 2023 at Newport Beach, California.

*/s/ Julie A. Ault*
Julie A. Ault