Marc N. Bernstein (Cal. Bar No. 145837)
mbernstein@blgrp.com
The Business Litigation Group, P.C.
150 Spear Street, Suite 800
San Francisco, CA 94105
Telephone:   415.765.6634
Facsimile:   415.283.4804

Gene J. Brockland (Missouri State Bar No. 32770)
Christopher O. Miller (Missouri State Bar No. 70251)
*Admitted Pro Hac Vice*
gbrockland@amundsendavislaw.com
comiller@amundsendavislaw.com
Amundsen Davis LLC
120 South Central, Suite 700
St. Louis, MO 63105
Telephone:   314.719.3732
Facsimile:   314.719.3733

William J. O'Brien (Cal. Bar No. 99526)
wobrien@onellp.com
One LLP
23 Corporate Plaza Dr., Suite 150-105
Newport Beach, CA  92660
Telephone:   310.866.5157
Facsimile:   310.943.2085

*Attorneys for Plaintiff,*
*Donald Wakefield*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DONALD WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>IGOR OLENICOFF, OLEN PROPERTIES CORP.; and DOES 1 through 10, inclusive,<br><br>Defendants, | Case No. 8:21-cv-1585-CJC-DFM<br><br>*Hon. Douglas F. McCormick*<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Hearing Date:  August 8, 2023<br>Time:           10:00 a.m.<br>Courtroom:   6B<br><br>Complaint Filed: September 27, 2021 |

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND..................................................................1

      A.    Litigation Background.......................................................1

      B.    Early Attempts to Settle...................................................2

      C.    Litigation Efforts..............................................................3

            i.     Motion Practice.......................................................3

            ii.    Discovery.................................................................5

            iii.   Cross-Motions for Summary Judgments.................5

      D.    Resolution of the Case.....................................................5

III.  MEMORANDUM OF LAW.................................................................7

      A.    State Law Regarding Fees is Applicable...........................7

      B.    Legal Standard for Reasonableness of Fees.....................7

            i.     Result Obtained......................................................8

            ii.    Case Was Not Over-Litigated................................9

      C.    Plaintiff is Entitled to a Multiplier...............................10

      D.    Plaintiff's Hours Were Reasonable.................................12

            i.     Research................................................................12

            ii.    Conferences and Communications........................13

            iii.   Internal Memoranda.............................................14

            iv.    Clerical Work........................................................14

            v.     Alleged Inapplicable Billing.................................15

            vi.    Redactions.............................................................15

            vii.   Block Billing.........................................................16

            viii.  Fees for Preparing the Fee Motion are Recoverable.......16

            ix.    Plaintiff's Costs Are Recoverable........................17

IV.   FINAL ADJUSTMENTS TO FEE REQUEST.......................................17

V.    CONCLUSION.................................................................................17

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*,
   361 F.3d 434, 70 U.S.P.Q.2d 434 (7th Cir. 2004) ............................... 11

*Beyond Blond Production, LLC v. Heidman*,
   2021 WL 4860378 (C.D. Cal. 2021) ................................................. 15

*Broadcast Music, Inc. v. Pardon*,
   2015 WL 966184 (E.D. Cal. Mar. 4, 2015) ...................................... 10

*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3d 973 (9th Cir. 2008) .................................................. 8, 16, 17

*Countryman Nevada, LLC v. DOE*,
   193 F.Supp.3d 1174 (D. Ore. 2016) .................................................. 8

*Cruz ex rel. Cruz v. Alhambra School Dist.*,
   601 F.Supp.2d 1183 (C.D. Cal. 2009) ............................................... 8

*Cunningham v. County of Los Angeles*,
   879 F.2d 481 (9th Cir. 1989) .......................................................... 11

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003) ............................................................ 8

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) .................. 8, 12

*Great American Fun Corp. v. Hosung New York Trading, Inc.*,
   42 U.S.P.Q.2d (BNA) 1729 (S.D.N.Y. 1997) ................................... 12

*Invessys, Inc. v. McGraw-Hill Companies, Ltd.*,
   369 F.3d 16, 70 U.S.P.Q.2d (BNA) 1715 (1st Cir. 2004) ................ 12

*JCW Investments, Inc. v. Novelty, Inc.*,
   482 F.3d 910, 82 U.S.P.Q.2d. 1001 (7th Cir. 2007) ........................ 11

*Kerr v. Screen Actors Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) .............................................................. 9

ii

*Kim v. Fujikawa*,
    871 F.2d 1427 (9th Cir. 1989) ........................................................... 13

*Lieb v. Topstone Industries, Inc.*,
    788 F.2d 151 (3d Cir. 1986) ............................................................. 12

*Maloney v. T3Media, Inc.*,
    2015 WL 3879634 (C.D. CA 2015) ................................................... 10

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................................... 13

*National Grange of the Order of Patrons of Husbandry v. California*
    *State Grange*,
    2016 WL 4765061 (E.D. CA 2016) ................................................... 10

*Parker v. Peters & Freedman, LLP*,
    No. SA CV 17-0667-DFM (C.D. Cal. 2019)...................................... 11

*Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*,
    478 U.S. 546 (1986) ........................................................................ 11

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ......................................................... 12

*Perfect 10, Inc. v. Giganew, Inc.*,
    2015 WL 1746484 (C.D. Cal. 2015) ................................................. 16

*Yue v. Storage Technology Corp.*,
    2008 WL 4185835 (N.D. Cal. 2008) ................................................. 13

**Statutes**

28 U.S.C. § 1980.................................................................................... 17

Copyright Act ........................................................................ 7, 8, 10, 12

Racketeer Influenced and Corrupt Organizations Act............................ 6

**Other Authorities**

Local Rule Rule 54 ............................................................................... 17

## I. INTRODUCTION

In their Response in Opposition to Plaintiff's Motion for Attorney's Fees and Costs (Dkt. 148), Defendants claim that this case represents "bad faith over-litigating" on the part of Mr. Wakefield. (*Id*. at ¶ 4.) Just the opposite is true. In fact, this Court has already expressed concern about "gamesmanship" by ***Defendants*** and concern that they have acted for the purpose of "increas[ing] the cost of litigation." (*Wakefield IV*, Dkt. 16.) Defendants' submissions throughout this case, including those submitted in their recent opposition, reflect bad faith. (*See* Dkt. 147 and 147-01.)

Defendants do not dispute that they have contractually agreed to pay reasonable fees and costs. Nor do they dispute the rates sought by Mr. Wakefield. Instead they request that the Court slash fees by a stunning 75%, based on alleged over lawyering. True to form, Defendants support this request based on misrepresentations, as we show below. This is the same litigation style that added to the work of Plaintiff's counsel. The Court should reject Defendants' effort to bootstrap their own litigation misconduct into a reduction of the fees that their misconduct necessitated.

## II. FACTUAL BACKGROUND

### A. Litigation Background

This case came about only because Defendants lied in *Wakefield I*, necessitating *Wakefield II*, which they settled by lying further, the discovery of which then necessitated *Wakefield III*. Yet Defendants now contend no new case need have been filed, since "given the history between the parties and the disputes," Mr. Wakefield should have known this was just a simple, easy-to-resolve, *Wakefield II* enforcement matter. (Dkt. 148 at ¶ 4.)

Defendants' pugilistic and less-than-candid defense of the prior two cases demonstrates just the opposite. Defendants have never litigated forthrightly; rather, they have used aggressive and unscrupulous tactics, disputing even facts that had

1

already been established in prior litigation. In this case, they have contested the validity of Mr. Wakefield's copyright (established in *Wakefield I*), Defendants' access to his work (same), the substantial similarity of the knock-offs (same), and Mr. Wakefield's damage by their public display (same).  Defendants took an unmeritorious cross-appeal of *Wakefield I*, then challenged the Ninth Circuit's ruling in Mr. Wakefield's favor in a petition for certiorari.  In response to this case, they filed a redundant counterattack in state court, which had to be removed here and then dismissed over their opposition.  Throughout not just the prior litigation but also this one, Defendants have advanced every possible tactic and defense, not excluding dishonest ones.  To now contend that the responses that all of these tactics necessitated were excessive is just a further affront.

Defendants' bare-knuckled and dishonest approach continues through to this moment. Julie Ault's declaration contains false charges about what Mr. Wakefield's counsel told her. *See* Bernstein Reply Decl. at ¶¶ 11-12.  Rather than being relieved of full responsibility, practitioners of this style of litigation should be held fully to account.

## B.  Early Attempts to Settle

Defendants fault Mr. Wakefield for not issuing them a pre-suit settlement demand, suggesting that had he done so this matter would have been quickly resolved.  (Dkt. 148 at ¶¶ 6-12.)  That is not supported by the record.

The decision not to issue a pre-suit demand was discussed by Mr. Wakefield's counsel, Gene Brockland and Marc Bernstein.  *See* G. Brockland Declaration at ¶¶ 2-3.   Counsels' concern was based on Mr. Brockland's intimate familiarity with the prior litigation history.  Mr. Brockland knew that, if Mr. Wakefield did not file suit before issuing a demand, Defendants would find some pretext for filing a preemptive one. *See* Brockland Reply Decl. at ¶ 5.  Mr. Wakefield declined to play defense in Defendants' chosen forum. *Id*.  Any doubt about Defendants' strategy was removed by their early motion to transfer

this case to the Southern District of Florida, and by their filing a separate suit for breach of contract in California state court. *See* Brockland Reply Decl. at ¶¶ 6-7. Unsurprisingly, Messrs. Brockland and Bernstein decided that it would be best to file suit first, but they immediately sought to engage Defendants counsel in settlement discussions. *See id.* at ¶ 9.

Those early discussions demonstrated that any pre-suit outreach would not have resolved the case. *See* Bernstein Reply Decl. at ¶ 2. Defendants were not prepared to pay anything close to Mr. Wakefield's demand. *See id.* at ¶¶ 2, 11. At no time until after the Court ruled on the cross-motions for summary judgment, and only when the case was close to trial, did Defendants begin to discuss the kinds of terms on which this case could settle. *See id.* at ¶ 3. Even then, Defendants did not finally agree to all terms until April 21, 2023, when Plaintiff was just days away from conducting a Court-ordered inspection of the artwork and sculptures at Olen Headquarters over strenuous objections from Defendants. *See* Brockland Reply Decl. at ¶ 10.

### C. Litigation Efforts

The efforts expended by Mr. Wakefield's counsel in this case, outlined in detail in the opening memorandum and declarations in support of this motion, were eminently reasonable given the stakes in the litigation, and were necessitated by the aggressive, scorched-earth defense mounted by the Defendants.

#### i. Motion Practice

Defendants suggest that the motion practice in this case was unnecessarily complex, but they fail to acknowledge that most of the motion practice by Mr. Wakefield was essentially defensive in nature. That is, Mr. Wakefield was simply responding to Defendants' unreasonable tactics. Defendants themselves created the complexity—and did so unnecessarily.

As outlined previously by Plaintiff, more than 400 of the approximately 1500 hours expended by Mr. Wakefield's Amundsen Davis attorneys, his lead

counsel, resulted from having to counter unreasonable positions taken by the Defendants.  This included the following services necessitated by the Defendants' unmeritorious and burdensome litigation tactics:

- Defeating Defendants' Motion to Transfer to the Southern District of Florida;

- Defeating Defendants' Motion to Quash Service on Igor Olenicoff;

- Defeating Defendants' Motion to Dismiss;

- Removing the state court action filed by Defendants to this Court and getting it;

- Obtaining dismissal of the Olen Parties' counter-claim seeking to invalidate Mr. Wakefield's copyright registration dismissed, with the Court mentioning that litigation on that point would be a waste of the parties' and the Court's resources; and

- Filing an extensive Motion to Compel the production of documents made necessary by the Olen Parties' extensive and improper objections, only to later be told that the Defendants simply had no responsive documents.

(Dkt. 147-01 and 147-02.)

Defendants falsely state that Mr. Wakefield failed to mention Defendants' Motion to Bifurcate and Stay.  (*See* Dkt. 148 at ¶ 20.)  In fact, Mr. Wakefield cited that motion as one of many examples of Defendants' dilatory tactics, which he successfully opposed.  (*See* Dkt. 147-2 at ¶ 36.)  Defendants now suggest that their Motion to Bifurcate and Stay was meant to be a cost-saver, when in fact it would have increased costs by potentially requiring two trials instead of one.

Defendants' current contention that it is Plaintiff who drove up the cost of this litigation, not them, is belied by this Court's own ruling when it dismissed *Wakefield IV* because the Olen Parties' claims therein should have been brought as counterclaims in this case.  The Court was concerned about "gamesmanship" by

the Olen Parties and also expressed concern "that the purpose of filing *Wakefield IV* was to seek out a different judge or simply increase the cost of litigation." (*Wakefield IV*, Dkt. 16.)  In light of that, it is disingenuous at best for Defendants to suggest that it was Mr. Wakefield who unnecessarily drove up the cost of this litigation.

### ii.    Discovery

Defendants contend that little was done in the way of discovery in this case, because only three depositions were taken.  (Dkt. 148 at ¶23.)  Far more discovery was done, however, besides just those three depositions.  Defendants ignore the substantial written discovery that was propounded by Plaintiff to both Defendants and responded to by Plaintiff.  (*See* Dkt. 147-02 at ¶ 72.)

### iii.    Cross-Motions for Summary Judgment

As previously explained by Plaintiff, the result of the cross-motions for summary judgment was very favorable for Plaintiff, as the Court held open the door to statutory damages and attorneys' fees.  (*See* Dkt. 148 at ¶¶ 51-2.)  This Court's finding of a "legally significant difference" between the Olen Parties' pre- and post-registration infringement as a result of the *Wakefield I* lawsuit, jury verdict and the Ninth Circuit appeal, all culminating in a destruction award (Dkt. 116 at p. 10) was a game-changer in this case.  Defendants ultimately agreed to pay Plaintiff's attorneys' fees, no doubt because the writing was on the wall for them on that issue following the summary judgment ruling.

### D.    Resolution of the Case

Defendants' statement that this lawsuit was resolved for "$190,000 except for attorneys' fees and costs" is an over-simplification.  (Dkt. 148 at ¶ 34.)  It is accurate that Defendants paid Mr. Wakefield $190,000.  They also allowed him to pick up the two offending knock-offs so that he could be adequately assured of their destruction.  Essentially, with that provision in the Settlement Agreement Mr. Wakefield obtained the injunctive relief he sought, but without a trial.  Defendants

also agreed to pay Mr. Wakefield's attorneys' fees and costs, reserving only the right to challenge the amount, not his entitlement to payment, another substantial victory without a trial.  Defendants also agreed that they would take nothing from Mr. Wakefield, despite their counterclaims in which they sought to recover their own attorneys' fees and the alleged damage to their reputation caused by Mr. Wakefield asserting his claims of RICO violations.  Finally, they agreed to terms that will allow Mr. Wakefield to continue to enforce his copyright in the event he discovers a future infringement by them.  (*See* Settlement Agreement, Dkt. 147-5 and Bernstein Reply Decl. at ¶ 9.)

Regarding the timing of the settlement, Defendants now claim that Mr. Wakefield should have done no work on this case after January 21, 2023, when Ms. Ault suggested they put "pens down." (Dkt. 148 at ¶ 35.)  There was no settlement at that time, so it would have been inappropriate to cease work on a case that was then set for trial on Feb. 21, 2023.  (*See* Bernstein Reply Decl. at ¶¶ 4-7.) Once the case was removed from the trial docket by Judge Carney on January 26, 2023, counsel ceased work on pre-trial compliance and trial preparation matters. From and after that date, the work that was done was on finalizing the settlement, engaging in a settlement conference suggested by the Court, and filing the Motion for Attorneys' Fees and Costs.   (*See* Invoices; Dkt. Nos. 147-6, 147-12 and 147-14.)

Finally, Mr. Wakefield must address Julie Ault's false statements about settlement conversations she supposedly had with Marc Bernstein.  At no point did Mr. Bernstein ever say to Ms. Ault, or anyone, that the case had been over-lawyered or that he disagreed with Mr. Wakefield's strategy of not sending a pre-suit demand.  (*See* Bernstein Reply Decl. at ¶¶ 11-12.)  Ms. Ault's false attribution of statements to Mr. Bernstein that she alleges occurred in settlement discussions is beyond the pale and constitutes litigation misconduct.

III.   **MEMORANDUM OF LAW**

   A.   **State Law Regarding Fees is Applicable**

As stated in Plaintiff's motion, Plaintiff has two contractual bases for an award of attorneys' fees.  (*See* Dkt. 147-1.)  Defendants simply ignore one of those bases: Defendants' commitment in the Settlement Agreement to pay the fees awarded by the Court, with California law to apply. (*See* Dkt. 147-05.) Defendants offer no response to that.

In addition, the *Wakefield II* Settlement Agreement provided that the prevailing party in an action to enforce it would be entitled to attorneys' fees.  (*See* Dkt. 106-04, ¶ 5.4.)  While Mr. Wakefield sought to rescind that settlement agreement in *Wakefield III*, Defendants sought to enforce it, but have instead paid Plaintiff damages of $190,000, have allowed him to take possession of the infringing sculptures, have agreed to take nothing from him, and have agreed to pay his attorneys' fees.  Thus, Plaintiff is in the position of a prevailing party with respect to defending against the *Wakefield II* Settlement Agreement, which is also governed by California law.  Thus, there are two contractual bases for the current award of attorneys' fees.

   B.   **Legal Standard for Reasonableness of Fees**

Should the Court apply federal copyright law to this motion, the result should be the same.  The Copyright Act method for determining attorneys' fees is similar to California state law.  First, the Court determines a reasonable "lodestar" fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  Second, the Court determines whether that fee should be adjusted upward or downward.

When awarding fees under the Copyright Act, the Supreme Court has set forth several factors to be considered, including: "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of

7

compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, n. 19, 114 S.Ct. 1023, 1033 n. 19, 127 L.Ed.2d 455 (1994). "The Ninth Circuit has added as additional considerations: the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff."   *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).

When awarding attorney fees under the Copyright Act, "[t]he calculation of the lodestar does not end the Court's inquiry."   *Cruz ex rel. Cruz v. Alhambra School Dist.*, 601 F.Supp.2d 1183, 1196 (C.D. Cal. 2009). "Instead, the lodestar may be adjusted in light of additional considerations, including the important factor of the results obtained."   *Id.*

Defendants' reliance on *Countryman Nevada, LLC v. DOE*, 193 F.Supp.3d 1174 (D. Ore. 2016), to attack Mr. Wakefield's fee request is misplaced.  In fact, *Countryman* demonstrates exactly why the amount of fees requested here is reasonable.  In *Countryman*, Plaintiff's fee request was reduced because its counsel unnecessarily increased litigation costs.  For example, the defendant in *Countryman* agreed to waive service, but plaintiff would not accept that offer and instead used a commercial process server to serve defendant.  *Id*. at 1177.  By contrast, here it was Defendant Olenicoff who actively dodged service, and who moved, unsuccessfully, to quash Plaintiff's service by mail.  (Dkt. 45, 50 and 60.) Early on in *Countryman*, defendants' counsel advised plaintiff's counsel that defendants were "trying to admit liability" and settle the matter quickly. *Countryman* at 1177.  Here, Defendants refused to admit liability, even denying issue preclusion from *Wakefield I.*

### i.      Result Obtained

In most Copyright Act cases, the lodestar amount is considered presumptively reasonable.  *See, e.g., Camacho v. Bridgeport Financial, Inc*., 523 F.3d 973 (9th Cir. 2008).  It can be adjusted up or down in rare cases based on the

factors set forth in *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), one of which is the result obtained.

Defendants suggest that the results obtained here were poor.  On the contrary, the results obtained for Mr. Wakefield were substantial, especially by comparison to *Wakefield I* and *Wakefield II*, neither of which involved counter-claims, as this case did.  *Wakefield I*, after a trial and appeal, resulted in:

- Damages of $75,000 per copy
- A destruction order, but with limited ability for Plaintiff to verify destruction
- No attorneys' fees

*Wakefield II*, settled before trial, resulted in:

- Damages of $55,000 per copy
- A destruction agreement, but with limited ability for Plaintiff to verify destruction
- No attorneys' fees

*Wakefield III*, settled before trial, has resulted in:

- Damages of $95,000 per copy
- Plaintiff recovering the copies so he can be assured of their destruction
- Defendants' agreement to pay reasonable attorneys' fees and costs
- Defendants taking nothing on their counter-claims

Thus, Mr. Wakefield has achieved a substantially better result in the current case than he did in either of his prior two cases.

### ii.    Case Was Not Over-Litigated

Defendants' contention that this case was over-litigated is false.  Defendants point to the fact that Plaintiff had multiple timekeepers, but ignore the fact that the vast majority of the work was performed by just four of them:  Gene Brockland, Chris Miller, Bill O'Brien and Marc Bernstein.  It is not unreasonable for multiple

attorneys to work together on briefs; common sense dictates that a number of people may contribute to a joint product.  *See, e.g., National Grange of the Order of Patrons of Husbandry v. California State Grange*, 2016 WL 4765061 (E.D. CA 2016).  Defendants themselves utilized at least four principal attorneys, two at Spencer Sax's firm—Spencer Sax and Katherine Moum—and two at Olen Corp.—Julie Ault and Kaylee Gifford.  The number of lawyers used by Plaintiff was commensurate with Defendants' staffing of the case and did not lead to the case being over litigated.

Much of Defendants' argument that Plaintiff over-litigated this case appears to be premised on Spencer Sax's declaration, in which he laboriously points out the number of hours billed by Plaintiff's counsel in comparison to the lengths of the briefs.  This is faulty reasoning, for several reasons.  First, length of briefs does not necessarily relate to the complexity of the legal issues involved.  Second, Mr. Sax ignores that virtually every motion he cites was also accompanied by declarations and exhibits, all of which added to the preparation time.  Finally, as set out in Mr. Brockland's prior Declaration (Dkt. 147-02), most of the motion practice about which Mr. Sax now complains was necessitated by the unreasonable positions taken by Defendants.

Defendants cannot litigate tenaciously and then complain about the time necessarily spent in response.  *See, e.g., Maloney v. T3Media, Inc*., 2015 WL 3879634 (C.D. CA 2015).  In addition, just complaining about the number of hours spent is not persuasive.  Defendants' failure to introduce any evidence or specific argument to suggest how much time should have been spent in preparing motions implicitly confirms that the hours billed were reasonable.  *Id.*

## C.    Plaintiff is Entitled to a Multiplier

Plaintiff recognizes that Courts in the Ninth Circuit only rarely apply a multiplier in Copyright Act cases.  *See, e.g. Broadcast Music, Inc. v. Pardon*, 2015 WL 966184, at *4 (E.D. Cal. Mar. 4, 2015) (citing *Van Gerwin v. Guarantee Mut.*

10

*Life. Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (holding that a multiplier may be used only in rare and exceptional cases)).  For the reasons Plaintiff previously cited, Plaintiff submits that this is one of those cases.  Plaintiff has submitted ample evidence from the declarations of Messrs. Brockland, O'Brien and Bernstein that constitutes the type of "specific evidence" required to establish the merits of an upward adjust of the lodestar amount.  *See, e.g., Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565 (1986); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

In opposing the award of a multiplier, Defendants seem to suggest that Plaintiff should be limited to recovering a fee of 40% of the $190,000 they paid, based on a standard contingent fee arrangement.  (Dkt. 148, ¶ 64.)  That is not what the law provides.  *See, e.g., Assessment Technologies of WI, LLC v. WIREdata, Inc*., 361 F.3d 434, 439, 70 U.S.P.Q.2d 434 (7th Cir. 2004) (Contingent fee arrangements differ from hourly and other standard fee agreements; "were it not for the expectation of an additional, court-ordered award if the suit was successful but yielded little in the way of damages, the plaintiff might not have been able to interest a lawyer in taking the case in the first place. So the percentage specified in the contract should not cap such awards."); *JCW Investments, Inc. v. Novelty, Inc*., 482 F.3d 910, 920, 82 U.S.P.Q.2d. 1001 (7th Cir. 2007) (approving attorney's fee award of $575,099.82, almost five times the amount recovered as copyright lost profits, where defendant unnecessarily increased the fees sought by contesting practically every issue).  In one non-Copyright Act fee case, this Court awarded attorneys' fees of $112,420 after a settlement of $11,000, or over ten times the amount of damages paid*. See Parker v. Peters & Freedman, LLP;* Case No. SA CV 17-0667-DFM, Dkt. 126.  In view of the above, neither Plaintiff's lodestar amount, nor the amount that results after application of a multiplier of 1.5, is unreasonable in comparison to the settlement amount paid.

1    Finally, Mr. Wakefield recognizes that the total fees and costs requested
2  here are substantial.  The Court should bear in mind, however, that this is the third
3  time that Mr. Wakefield has found Defendant stealing his copyrighted sculpture,
4  two of those times occurring ***after*** Defendants were enjoined by this Court from
5  doing so.  Defendants have also knocked off at least two other sculptors, requiring
6  them to enforce their rights.  (Dkt. 1.)  One of the considerations of a fee award
7  under the Copyright Act is deterrence.  *See, e.g., Perfect 10, Inc. v. CCBill LLC*,
8  488 F.3d 1102 (9th Cir. 2007); *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151 (3d
9  Cir. 1986); *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994).  This is a further reason
10  not to diminish Plaintiff's fees, and to allow a multiplier.  Perhaps it will cause
11  Defendants to hesitate before again creating unauthorized copies of artists' works.

12        **D.    Plaintiff's Hours Were Reasonable**

13    Plaintiff's use of lawyers from three law firms to prosecute this action is
14  irrelevant.  What matters is that the total hours expended during this cross-firm
15  collaboration are reasonable, regardless of whether they were expended by one,
16  two or three law firms.  As is seen from the invoices submitted, there were four
17  lawyers (Gene Brockland and Chris Miller of Amundsen Davis, William O'Brien
18  of One LLP, and Marc Bernstein of The Business Litigation Group) who were
19  principally responsible for handling this case.  That this team of four lawyers were
20  in three different firms, as opposed to being in the same firm, is a byproduct of
21  firm size, not litigation efficiency. *See* Bernstein Reply Decl. at ¶ 12.

22        **i.    Research**

23    Defendants generally contend that Plaintiff should not be able to bill for
24  legal research needed for the multiple motions filed in this case (Dkt. 148 at ¶¶ 74-
25  77), yet they provide no legal support for this argument.  In fact, the law allows
26  recovery for research time and expense.  *See, e.g., Great American Fun Corp. v.*
27  *Hosung New York Trading, Inc.*, 42 U.S.P.Q.2d (BNA) 1729, (S.D.N.Y. 1997)
28  (allowing recovery for substantial factual research); *Invessys, Inc. v. McGraw-Hill*

*Companies, Ltd.*, 369 F.3d 16, 70 U.S.P.Q.2d (BNA) 1715 (1st Cir. 2004) (allowing recovery for online research fees paid to third parties such as Westlaw or Lexis); *Yue v. Storage Technology Corp.*, 2008 WL 4185835 2008 (N.D. Cal.) (abrogated on other grounds) (allowing recovery of fees for researching and analyzing issues in the case).

In his declaration, Mr. Sax simply quotes the invoices submitted and argues that it's just too much time. The quoted time entries cover drafting of motions and memoranda in support and, separately, the research needed to support those pleadings. It is incumbent on any litigant to properly advocate on behalf of their client, and legal research is a necessary part of that. No deduction for hours spent on legal research is warranted.

### ii.    Conferences and Communications

Plaintiff acknowledges that some courts have refused to grant fee awards to the extent fees sought are for internal conferences and communications. There is, however, no blanket prohibition against such conferences, nor blanket rule that they are not compensable. The key is that the attorneys are to avoid redundant activities, but "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of efforts." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989) (finding that participation of more than one attorney may be necessary depending on the complexity of legal issues and the breadth of factual evidence involved). In addition, in reviewing a fee request, the court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). "The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." *Id.*

Defendant would have the court disallow a total of 228 hours for conferences and communications, 79.2 hours billed by Amundsen Davis, 50.9 billed by The Business Litigation Group and 97.9 billed by One LLP.  A review of the entries cited by Mr. Sax, however, does not reveal unnecessary duplication of efforts.  Some conferences were only billed by one of the attendees. Conferences typically involved only two attendees, not a phalanx of lawyers as Mr. Sax intimates.  Some of the conferences were with Mr. Wakefield himself.  In short, there is no credible basis for deducting 228 hours from Plaintiff's fee request.

### iii.   Internal Memoranda

Defendants claim that Plaintiff improperly billed for drafting and reviewing internal memoranda.  (Dkt. 148, ¶¶ 81-82.)  Mr. Sax endeavored to point out the offending time entries in his declaration, which total 73.9 hours.  (Dkt. 148-01 at p. 116, l. 26 - p. 124, l. 16.)  As those entries show, however, many of them were for legal research and then drafting of a memorandum summarizing such research.  As argued above, legal research is compensable.  It is logical to conclude that the drafting of memoranda memorializing the results of that research is also compensable.  Drafting of memoranda under those circumstances is certainly not unreasonable or unjustified.  In fact, it would be absurd not to document research in a memorandum, and likewise absurd for other attorneys not to review such a memorandum.  Defendants' argument that billing for such matters is improper is simply nonsensical.

### iv.   Clerical Work

Defendants contend that 51.6 hours should be deducted from the time entries for alleged clerical work.  (Sax Declaration, Dkt. 148-01, p. 124, l. 18 – p. 130, l. 7.)  Plaintiff acknowledges that clerical work is not properly billable, but believes that the attorney time identified by Mr. Sax as being "clerical" does not fall within that unacceptable category.  This is especially so with regard to the time entries of Mr. O'Brien, which clearly identify substantive legal work being

14

1   performed.  (Sax Declaration, Dkt. 148-01, p. 128, l. 24 – p. 130, l. 6.)

2       Plaintiff will withdraw his claim for all work done by paralegals identified

3   by Mr. Sax as being clerical in nature, resulting in the following reductions:

| Timekeeper | Hours | Rate($) | Dollars ($) |
|---|---|---|---|
| T. Chen | 26.9 | 175 | 4707.50 |
| S. Thomas | .5 | 175 | 87.50 |
| A. Starks | 3.2 | 175 | 560 |
| | | **TOTAL:** | **$5355** |

### v.   Alleged Inapplicable Billing

Without citation to any authority, Defendants object to counsel billing 15.4
hours related to Defendant John Liang, who Plaintiff was never able to serve, and
billing 9.1 hours related to the pursuit of litigation funding and the preparation of
pro hac vice filings.  (Sax Declaration, Dkt. 148-01, p. 130, l. 8 – p. 133, l. 21.)
All billing that is "inextricably intertwined" with compensable matters is
recoverable.  *See, e.g., Beyond Blond Production, LLC v. Heidman*, 2021 WL
4860378 (C.D. Cal. 2021).  The challenged hours here are minimal, and they were
related to the handling of this case.  Mr. Liang was the broker who facilitated the
Defendants' ordering of the knock-offs from China, after Defendants provided
photographs and specifications to him.  (Complaint, Dkt. 1, ¶ 21.)  As such, it was
reasonable for Plaintiff to try to serve him, and he was directly tied to the
allegations against the Olen Defendants.  Regarding litigation funding and pro hac
vice pleadings, those matters were also reasonably related to the pursuit of this
case against Defendants, and should be compensable.

### vi.   Redactions

Defendants would have the court reduce the lodestar amount by 8.6 hours,
with 3.9 of them being billed by T. Chen and 4.7 having been billed by M.
Bernstein.  (Sax Declaration, Dkt. 148-01, p. 133, l. 23 – p. 134, l. 13.)  Those
redactions were necessary to protect certain attorney-client privilege matters, and

15

1   were so minimal that they do not materially impact the overall review of the

2   invoices.  Should the Court decide that those billings should be deducted from the

3   lodestar amount, however, the result would be a lodestar deduction of $4207.50,

4   representing a $682.50 reduction for Ms. Chen's time and a $3525 reduction for

5   Mr. Bernstein's time.

6                    **vii.    Block Billing**

7           Defendants question certain of Mr. O'Brien's time entries for alleged block

8   billing.  Mr. Sax would apparently have the court toss out those entries entirely,

9   which is inappropriate.  To the extent Mr. O'Brien engaged in any block billing, it

10  was minimal.  A prevailing party is not required to record in great detail how each

11  minute of his time was expended, instead, the prevailing party seeking attorneys'

12  fees need only identify the general subject matter of his time expenditures to meet

13  the burden of establishing that its fee request is reasonable.  *See, e.g., Perfect 10,*

14  *Inc. v. Giganew, Inc*., 2015 WL 1746484 (C.D. Cal. 2015).  As a result, it is not

15  appropriate to completely discount Mr. O'Brien's efforts.

16                  **viii.   Fees for Preparing the Fee Motion are Recoverable**

17          In their Conclusion, once again without citing any authority, Defendants

18  contend that Plaintiff should not be able to recover fees for the filing of his Motion

19  for Attorneys' Fees and Costs, the attendant declarations and this Reply.  (Dkt.

20  148, p. 36, ll. 4-5.)  Not only is this argument without support in the case law, it is

21  absolutely contrary to the *Camacho* case that Defendants cited throughout their

22  Opposition, but for other purposes.  This is yet another example of Defendants'

23  unreasonable tactics used throughout this litigation.  This time, Defendants ignore

24  the duty of candor to the Court and stake out a position that is not only

25  unsupported by case law, but is directly contrary to a case they cited multiple

26  times.  As the *Camacho* court stated, but Defendants failed to mention, "In

27  statutory fee cases, federal courts, including our own, have uniformly held that

28  time spent in establishing the entitlement to and amount of the fee is compensable.

16

"*Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008), *citing In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). In short, Plaintiff is entitled to his fees in bringing this motion.

### ix.   Plaintiff's Costs Are Recoverable

Defendants contend that Plaintiff may only recover costs that are taxable under Federal Rule 54, Local Rule 54-3, or 28 U.S.C. Section 1980, but that is not what the Settlement Agreement provides. The Settlement Agreement states that Plaintiff is entitled to recover from Defendants his reasonable attorneys' fees and costs; it does not specify that Plaintiff can only recover taxable costs. (Dkt. 147-05.) Plaintiff's costs are very reasonable for a case of this magnitude and are fully recoverable.

## IV.   FINAL ADJUSTMENTS TO FEE REQUEST

As set forth in the Declarations of Messrs. Brockland, O'Brien and Bernstein filed herewith, along with the accompanying invoices, counsel has incurred an additional $36,420 in attorneys' fees not requested in Plaintiff's Motion for Attorneys' Fees and Costs. Adding those amounts to the prior lodestar amount requested of $1,284,557.50, and then reducing it for the clerical billings and redacted billings discussed above, results in a final lodestar amount of $1,320,977.50. Increasing that by a multiplier adjustment of 1.5 results in a fee request of $1,967,122.50.

## V.   CONCLUSION

Despite having lost to Mr. Wakefield years ago, and despite having been enjoined from further infringement, when caught infringing a third time Defendants deployed every defense they had tried unsuccessfully before, and upped the ante with additional, aggressive and frivolous tactics.

/ / /

/ / /

/ / /

In light of all of that, Mr. Wakefield' request for an award of attorneys' fees in the amount of $1,967,122.50, based on a lodestar amount of $1,284,557.50, and costs of $27,997.74, is reasonable.

ONE LLP

Dated: July 25, 2023

*/s/ William J. O'Brien*
William J. O'Brien

*Attorneys for Plaintiff,*
*Donald Wakefield*

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,283 words, which complies with the word limit of L.R. 11-6.1.

*/s/ William J. O'Brien*
William J. O'Brien
One LLP