UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV 21-01585-DFM | Date: | August 18, 2023 |
|---|---|---|---|
| Title | Donald Wakefield v. Olen Properties Corp. et al. | | |

| Present: The Honorable | Douglas F. McCormick, United States Magistrate Judge |
|---|---|
| Nancy Boehme | Not Present |
| Deputy Clerk | Court Reporter |
| Attorney(s) for Plaintiff(s): | Attorney(s) for Defendant(s): |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Granting Motion for Attorneys' Fees (Dkt. 147)

Plaintiff moves for attorneys' fees and costs. See Dkt. 147-1 ("Motion"). The Motion is accompanied by Declarations of Gene J. Brockland, William O'Brien, and Marc Bernstein. See Dkts. 147-2 ("Brockland Decl."), 147-11 ("O'Brien Decl."), 147-13 ("Bernstein Decl."). Plaintiff seeks a total award of $1,967,122.50, based on attorneys' fees and costs of $1,320,997.50 and a multiplier of 1.5.[1] See Dkt. 149 ("Reply") at 21. Defendants Igor Olenicoff ("Olenicoff") and Olen Properties Corp. ("Olen") contest the amount sought. See Dkt. 148 ("Opp'n"). Defendants' Opposition is accompanied by Declarations of Spencer M. Sax and Julie Ault. See Dkts. 148-1 ("Sax Decl."), 148-2.

For the reasons set forth below, the Court GRANTS the Motion and awards fees and costs in the total amount of $1,175,979.27.

## I. BACKGROUND

This action is the third of four lawsuits between the parties in connection with Plaintiff's copyrighted sculpture named Untitled. In the first lawsuit, Plaintiff sued Defendants for copyright infringement after he found seven infringing copies and other derivative sculptures of Untitled on Olen's property. See Motion at 5. Plaintiff secured a jury verdict of $450,000 and a permanent injunction against Defendants ordering them to remove and destroy all infringing sculptures. See id.; Brockland Decl. ¶ 18. In the second

---

[1] Plaintiff initially requested a total of $1,926,936.25. See Motion at 5. Plaintiff updated this figure in his Reply to deduct certain billings and add additional fees incurred litigating the instant Motion. See Reply at 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

lawsuit ("Wakefield II"), Plaintiff sued Defendants for copyright infringement after discovering an eighth infringing copy that Defendants had not disclosed. See Motion at 5; Brockland Decl. ¶ 26. Plaintiff agreed to settle Wakefield II based in part on a declaration by Olenicoff that all infringing works had been removed from Olen's property and destroyed. See id. As part of the Wakefield II settlement agreement, Plaintiff covenanted and represented that he would not file any complaints or lawsuits against Defendants. See Dkt. 98-28.

Plaintiff filed this case ("Wakefield III") after discovering two additional infringing sculptures on display at an Olen property in Florida. See Motion at 5; Dkt. 1 ("Complaint"). In addition to copyright infringement claims, Plaintiff alleged claims for civil conspiracy, fraudulent inducement of the Wakefield II settlement agreement, and civil RICO. See Complaint ¶¶ 85-107. After Plaintiff filed Wakefield III, Defendants filed a new case ("Wakefield IV") in state court, alleging that Plaintiff violated the Wakefield II settlement agreement by filing Wakefield III and seeking, inter alia, an order enforcing the covenant not to sue. See Olen Properties Corp., et al. v. Wakefield, No. 8:22-cv-00928, Dkt. No. 1-2. Wakefield IV was removed to the district court, and Judge Carney dismissed the action, concluding that Defendants' claims were compulsory counterclaims in this case. See id., ECF No. 16. With Judge Carney's leave in this case, Defendants filed amended answers with affirmative defenses and counterclaims. See Dkts. 83-85.

The parties consented to this Court's jurisdiction on February 2, 2023. See Dkt. 127. On April 24, 2023, the parties filed a Stipulation for Settlement. See Dkt. 142. Under the terms of their Settlement Agreement, Defendants agreed to pay Plaintiff a lump sum of $190,000 and to allow Plaintiff to take possession and ownership rights of the two alleged infringing sculptures. See Brockland Decl. ¶ 57, Ex. 3 ("Settlement Agreement"), § III.C & III.J. If additional sculptures that are substantially similar to Untitled are later discovered, Defendants agree to destroy them and pay Plaintiff $75,000 in damages for each such sculpture. See id., § III.L. Plaintiff does not owe any costs or legal fees to Defendants in connection with this case. See id., § III.K. Plaintiff, however, is entitled to an award of "reasonable attorneys' fees and costs," as determined by this Court. See id., § III.B. In accordance with the terms of the Settlement Agreement, this motion followed.

## II. LEGAL STANDARD

As an initial matter, the parties do not agree about whether Plaintiff's Motion is governed by California law or by the Copyright Act. See Motion at 8-9; Opp'n at 19-21. Plaintiff filed this Motion based on the terms of the Settlement Agreement, which is governed by California Law. See Settlement Agreement, § III.O. Where state law forms the basis for a party's claim to attorneys' fees, it also governs the court's analysis of a fee award motion. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (applying Washington law to fee motion where motion was based on successful settlement providing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

for benefits under an employee stock purchase plan governed by Washington law); Lloyd v. Navy Fed. Credit Union, No. 17-1280, 2019 WL 2269958, at *13 (S.D. Cal. May 28, 2019) (analyzing reasonableness of fee request under California law where request was based on settlement agreement governed by California law). Thus, the Court concludes that California law controls.

Under California law, "the fee setting inquiry . . . begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." PLCM Group, Inc. v. Drexler, 22 Cal.4th 1084, 1095 (2000). "The reasonable hourly rate is that prevailing in the community for similar work." Id. (citations omitted). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007). The lodestar figure may then be adjusted upward or downward to account for: "(1) the contingent nature of the fee award, (2) the results obtained and the number of people that have benefitted from them, (3) the novelty and complexity of the questions involved and the skill displayed in presenting them, and (4) the extent to which the nature of the litigation precluded other employment." Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (citation omitted).

### III. DISCUSSION

**A.   Plaintiff Is Entitled to Attorneys' Fees, Including Fees Spent on This Motion**

Defendants invite the Court to use its discretion to deny Plaintiff's request in its entirety. See Opp'n at 19-21, 35. The Ninth Circuit has not yet decided whether a court may deny all fees and costs based on the excessiveness of the request. See Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1127 (9th Cir. 2008) (declining to decide issue in context of fee award under 42 U.S.C. § 1988), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014). However, California state courts, as well as federal courts in other circuits, have held that a court may deny a fee request in its entirety where the request is so outrageously excessive that it shocks the conscience of the court. See, e.g., Serrano v. Unruh, 32 Cal.3d 621, 635 (1982); Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., No. 05-2200, 2009 WL 10669361, at *21 (C.D. Cal. 2009) (collecting cases).

Here, Plaintiff's request is not outrageously excessive. Although Plaintiff's lodestar figure is over $1.3 million, this figure includes work performed over the course of two years, including extensive motion practice, discovery, and trial preparation. Accordingly, Plaintiff is entitled to some amount of attorneys' fees.

In addition, although Defendants argue that "Plaintiff should not be allowed to recover fees for seeking fees," Opp'n at 36, Defendants cite no authority to support this

argument. Plaintiff argues that such fees are clearly compensable, relying on Camacho v. Bridgeport Financial, Inc., 523 F.3d 973 (9th Cir. 2008). See Reply at 20-21. The Camacho court recognized that in federal "statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." 523 F.3d at 981. Because Plaintiff's fee motion is based on a settlement agreement governed by California law, Camacho is not directly applicable. Nevertheless, it appears that fees incurred litigating a fee motion are generally compensable under California law as well. See, e.g., Nagesh v. BMW of N. Am., LLC, No. 18-00839, 2021 WL 1060357, at *4 (E.D. Cal. Mar. 19, 2021) (in fee request under Song-Beverly Act, finding hours billed litigating fee motion were compensable); Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 579 (2004), as modified (Jan. 12, 2005) (in attorney fee award under private attorney general doctrine, noting that fees incurred litigating fee award may be enhanced in certain circumstances).

Accordingly, the Court considers Plaintiffs' time spent on the instant Motion as part of the lodestar figure. See Reply at 21 (noting an additional $36,420 in fees not requested in the initial Motion); Dkt. 149-1 ("Brockland Reply Decl."); Dkt. 149-3 ("O'Brien Reply Decl."). However, because no evidence was submitted in support of the hours worked by Business Litigation Group, P.C., after June 22, 2023, the Court declines to award the additional $3,150 of fees and $18.80 of costs claimed by Bernstein. See Dkt. 149-5 ("Bernstein Reply Decl.") ¶ 13.

### B. The Total Hours Billed Are Not Entirely Reasonable[2]

While Plaintiff is entitled to attorneys' fees, the Court finds that certain of the hours billed are not reasonable and subtracts them from the lodestar figure, as discussed below.

#### 1. Inter/Intra-Office Communication and Block Billing

Defendants object to a total of 227.7[3] hours on the ground that the time entries show excessive inter/intra-office conferencing and communications. See Opp'n at 31; Sax Decl. at 86-116. The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" McGrath v. County of Nevada, 67 F.3d 248, 256 (9th Cir. 1995) (quoting Kim v. Fujikawa, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, courts in this circuit often reduce fee awards for time spent on internal communications. See Durham v. FCA US LLC, No. 17-0596, 2020

---

[2] Defendants do not challenge Plaintiff's counsel's hourly rates, which the Court finds to be reasonable.

[3] Defendants object to 228 hours, but Plaintiff has withdrawn 0.3 of those hours (billed by T. Chen on May 17, 2023) in response to Defendants' clerical work objections. See Reply at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

WL 243115, at *5 (E.D. Cal. Jan. 16, 2020) (collecting cases); see also SEC v. Capital Cove Bancorp LLC, No. 15-0980, 2016 WL 6078324, at *4 (C.D. Cal. June 29, 2016) ("[C]ourts often reduce the hours claimed for internal communications when such communications are the result of inflationary billing practices."); Coles v. City of Oakland, No. 03-2961, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) (explaining that a "disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate").

Here, Plaintiff chose to involve three law firms on this case, each with its own partner-level attorney (Brockland of Amundsen Davis, Bernstein of Business Litigation Group, and O'Brien of One LLP). See Brockland Decl. ¶¶ 3-4, 64. Over 80% of the total hours were billed by these three partners and one senior associate with Brockland's firm, Chris Miller. See Brockland Decl., Ex. 4; Bernstein Decl., Ex. 1; O'Brien Decl.; Ex. A. Most of the inter/intra-office communications to which Defendants object involve these timekeepers. See Sax Decl. at 86-116. The Court acknowledges that multiple law firms were employed for valid strategic reasons. But given this team structure, and given that the bulk of the work was performed by relatively senior attorneys, Plaintiff's lawyers were obligated to perform efficiently, minimize unnecessary inter/intra-office communications, and avoid duplicative billing. Instead, the time entries show significant time spent conferencing and preparing/reviewing internal communications, with some communications being double or even triple billed. Some examples include:

| Date | Attorney | Hours | Description |
| --- | --- | --- | --- |
| 11/24/21 | Miller | 1 | Attend conference call (via Zoom) with co-counsel and D. Wakefield regarding Motion to Transfer and other related issues. |
| | Bernstein | 1.3 | Prepare for and attend meeting with Bill and Bene re response to motion to change venue. |
| | O'Brien | 1.3 | Conference call with Don Wakefield, Gene Brockland, Marc Bernstein, and Chris Miller about transfer motion, etc. . . . . |
| 1/12/22 | Brockland | 0.5 | Teleconference with M. Bernstein and B. O'Brien. |
| | Bernstein | 0.9 | Call with Gene and Bill about Don Issue; call with Tsui and Richard re Olen's response deadline to the complaint. |
| 1/19/22 | Brockland | 0.4 | . . . e-mails with co-counsel (0.20); teleconference with co-counsel (0.20). |
| | Bernstein | 1.4 | Confer with Marc re deadlines Olen Prop MTD. |
| | O'Brien | 0.7 | Emails with co-counsel about opposing motion to dismiss; emails with co-counsel about briefing schedule. |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Date | Attorney | Hours | Description |
|---|---|---|---|
| 11/11/22 | Brockland | 0.3 | . . . teleconference with co-counsel regarding Motion for Partial Summary Judgment (0.30). |
| | Miller | 1.5 | Zoom conference call with G. Brockland and B. O'Brien to discuss motion for partial summary judgment in advance of upcoming filing deadline (of 11/14). |
| | O'Brien | 1.9 | Calls and emails with Gene Brockland and Chris Miller about summary judgment motion; . . . . |

The Court concludes that some across-the-board reduction of these hours is appropriate. However, because Defendants have included block-billed entries in their objections and have used the full amount of time billed for each entry, 227.7 hours is not an accurate estimate of the total time spent on intra/inter-office communications. This is especially true with respect to the 97.9 hours that Defendants attribute to O'Brien. See Sax Decl. 103-16 (identifying time entries from O'Brien ranging from 0.1 to 6.7 hours).

In their Opposition, Defendants also object to O'Brien's time entries in general because many of them are block-billed. See Opp'n at 34; Sax Decl. at 134-35. This objection is also well-taken. O'Brien's entries not only fail to identify the time spent on inter/intra-office communications, but many of them also group together unrelated tasks. See, e.g., O'Brien Decl., Ex. A at 15 (time entry listing work performed in connection with motion to dismiss counterclaims, stipulation to extend discovery, and proposed summary judgment order). Because O'Brien's entries prevent the Court from obtaining an accurate estimate of time spent on individual tasks, the Court finds that a 30% across-the-board reduction of all of O'Brien's hours billed on this case (231.30 hours) is warranted. See Welch, 480 F.3d at 948 (suggesting that a reduction of block-billed hours by 10% to 30% is appropriate). Thus, in addition to any other reductions set forth in this Order, the Court first reduces the total fee award by $48,500 to reflect an approximate 30% reduction in O'Brien's total hours.

Defendants also object to 73.9 hours of attorney and paralegal time entries showing time spent preparing and reviewing internal memoranda. See Opp'n at 32; Sax Decl. at 116-24. However, many of these entries include time spent both conducting research and documenting research findings. Moreover, many of these entries belong to associates at Amundsen Davis, and Brockland's time entries suggest that he billed minimal hours for time spent reviewing the memos. The time spent documenting research results and communicating them to Plaintiff's co-counsel does not appear to be unreasonable, and counsel's decision to delegate research tasks to associates does not amount to an unnecessary duplication of attorney efforts. See Kim, 871 F.2d at 1435 n.9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

With respect to the inter/intra-office communication time entries from the remaining two firms (129.8 hours),[4] the Court uses a blended rate of $750 based on the billing rates of the three main timekeepers at those firms (Brockland, Miller, and Bernstein) and applies a 40% reduction to those hours (52 hours, $39,000 in total). Accordingly, for the reasons stated above, the Court reduces the fee award by a total of $87,500.

**2. Billing Not Directly Related to Defendants**

Defendants argue that Plaintiff should not recover 15.4 hours of attorney and paralegal time spent on work related to John Liang, an unserved defendant who was dismissed from this action; and 9.1 hours of attorney and paralegal time spent preparing engagement agreements, discussing litigation funding, and preparing counsel's pro hac vice motions. See Opp'n at 33; Sax Decl. at 130-33. Plaintiff argues that these hours are recoverable because they were "inextricably intertwined" with compensable matters and related to the handling of this case. See Reply at 19 (citing Beyond Blond Prods., LLC v. Heldman, No. 20-5581, 2021 WL 4860378, at *4 (C.D. Cal. Mar. 22, 2021)). The Court agrees with Plaintiff with respect to time spent on work related to John Liang but disagrees with respect to counsel's other tasks.

In Beyond Blond, the district court determined that the party requesting fees could recover for time spent researching issues relating to their anti-SLAPP motion even where those issues did not end up being included in the motion, finding that such work was "inextricably intertwined with an anti-SLAPP motion." 2021 WL 4860378, at *4. Here, Plaintiff contends that Liang was the broker who facilitated Defendants' acquisition of the infringing statutes from China. See Reply at 19. Given the alleged connection between Liang and Defendants, Plaintiff's time spent attempting to serve Liang was sufficiently intertwined with the rest of the litigation, and Plaintiff may recover those fees and costs.

However, as to Plaintiff's counsel's time spent discussing engagement and funding and preparing pro hac vice applications, the Court finds that these are not recoverable. See Tarango v. City of Bakersfield, No. 16-0099, 2017 WL 5564917, at *15 (E.D. Cal. Nov. 20, 2017) ("[D]istrict courts in the Ninth Circuit do not often award attorney's fees . . . associated with *pro hac vice* admission.") (collecting cases). Accordingly, the Court deducts the following hours from the fee award: 2 hours by Brockland and 2 hours by O'Brien ($3,050 in total).[5]

---

[4] As to Brockland's additional time entries for fees incurred after filing the Motion, the Court has reviewed these and determined that no reductions for inter/intra-office communications are necessary. See Brockland Reply Decl., Ex. 1.

[5] Because O'Brien's block-billed entries also include various other compensable tasks, the Court deducts only a portion of the 6.6 hours to which Defendants object.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

    3.    **Clerical Work**

Defendants contend that 51.6 total hours (billed by a combination of paralegals and attorneys) of time should be deducted as clerical work. See Opp'n at 32-33. "[P]urely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989). Thus, "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009).

Plaintiff has agreed to withdraw claims for 30.6 of those hours, all billed by paralegals. See Reply at 19. Plaintiff argues that the remaining time entries reflect substantive work. However, in addition to the hours billed by paralegals, the following attorney time entries reflect clerical work:

| Date | Attorney | Hours | Description |
|---|---|---|---|
| 9/23/21 | Bernstein | 0.2 | Work on complaint filing. |
| 10/24/21 | Bernstein | 0.4 | Review and approve 11 calendaring dates triggered by service of the Olen summons; respond to Tsui's question about flng of the returned summons. |
| 2/9/22 | Brockland | 0.1 | Coordinate service with S. Thomas. |
| 10/5/22 | DeGregorio | 0.6 | Download cases cited by Olenicoff in Opposition to Wakefield's Motion to Dismiss or Stay. |

See Sax Decl. at 124-28. In addition, each of the block-billed entries from O'Brien identified by Defendants (15.7 hours in total) reflect a combination of substantive and clerical work. See id. at 128-30. Given this, the Court finds it appropriate to deduct, in addition to the 1.3 hours above, approximately 10% of O'Brien's applicable time entries (1.6 hours) ($1,900 in total).

    4.    **Over-Litigation**

As both sides note, this case involved a significant amount of motion practice. Defendants argue that "[t]his entire litigation was nothing but bad faith over-litigating" by Plaintiff. See Opp'n at 6, 25-26. Defendants accuse Plaintiff's counsel of asserting "inflammatory and unfounded RICO claims" and chasing after an "excessive billing opportunity" against Defendants. Id. at 6. The Court has reviewed the motions filed in this case. For the most part, Plaintiff's motions were reasonable and obtained the relief sought from the Court. See, e.g., Dkt. 88 (Motion to Dismiss Counterclaims (granted)); Dkt. 94 (Motion to Compel (granted in part)). Plaintiff also successfully opposed Defendants' motions. See, e.g., Dkt. 22 (Motion to Change Venue); Dkt. 51 (Motion to Quash Summons (denied)). Moreover, while this Court remains skeptical about the strategy of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

including civil RICO claims in this action, Plaintiff's counsel at the hearing identified persuasive reasons for pursuing a RICO claim. Moreover, the Court's review of the docket and the time entries show that minimal time was spent litigating the RICO claims. See, e.g., Bernstein Decl., Ex. 1.

However, not all of Plaintiff's litigation activity was reasonable. Plaintiff opposed (1) Defendant's Motion for Leave to File Amended Answers (Dkt. 79); and (2) Defendants' Motion for Extension of Time to File Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. 102). The Court agrees with Defendants that these oppositions were unnecessary.

Motion for Leave to File Amended Answers: When Judge Carney granted Plaintiff's motion to dismiss Wakefield IV, the court indicated that dismissal was without prejudice to Defendants moving to amend their Wakefield III answer to raise the Wakefield IV claims as counterclaims. See Dkt. 83 at 2 (citation omitted). Plaintiff nonetheless opposed Defendants' motion for leave to amend, arguing that the motion was factually unsupported, that Defendants had "unduly delayed their counterclaim in bad faith and for a dilatory motive," and that Defendants were pursuing an improper and futile counterclaim. See Dkt. 80. Judge Carney found these arguments unpersuasive. See Dkt. 83. In particular, Judge Carney explained that the policy favoring amendment should be applied with "extreme liberality," highlighted that Defendants' motion was timely under the scheduling order, and rejected Plaintiff's futility argument because such arguments "are better resolved through a challenge to the merits of the proposed counterclaim after it is filed rather than through a challenge to the filing of the proposed counterclaim in the first place." See id. at 3-4 (citations omitted). Given Judge Carney's clear indication that Defendants could pursue counterclaims in Wakefield III, and given his rejection of Plaintiff's arguments, the Court concludes that Plaintiff's opposition was unwarranted.

Motion for Extension of Time: Defendants sought a three-week extension to file their opposition to Plaintiff's partial summary judgment motion because discovery was ongoing and because Defendants' local counsel was occupied with trial in another case. See Dkt. 102. Plaintiff opposed, arguing that Defendants had not provided supporting declarations or other evidence and had not shown why they could not file their opposition in the time allotted. See Dkt. 104. In granting Defendants' motion, Judge Carney observed that Plaintiff's motion and evidence totaled 1,228 pages in length, that under the Local Rules, Defendants' opposition to Plaintiff's motion would be due just one week after Plaintiff filed the motion, and that several key depositions had just taken place. See Dkt. 105 at 1. Considering the circumstances of the case at that time, the Court concludes it was not reasonable for Plaintiff to oppose Defendants' brief extension request.

Based on the time entries, the Court estimates that Plaintiff's counsel billed approximately $17,000 opposing the Motion for Leave to File Amended Answers and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

approximately $9,000 opposing the Motion for Extension of Time. See Brockland Decl., Ex. 4; Bernstein Decl. Ex. 1; O'Brien Decl. Ex. A; see also Sax Decl. at 34-37. The Court therefore reduces the fee award by the approximate amounts billed for these opposition filings ($26,000 in total).

    **5.**    **Costs**

Plaintiff seeks $28,016.54 in total costs. See Motion at 16; Bernstein Reply Decl. ¶ 13. As noted above, the Court declines to award $18.80 of additional costs incurred after Plaintiff filed the Motion because no evidence has been submitted in support of those costs. In addition, Defendants object to Plaintiff's request for costs in connection with travel expenses, research, and discovery, and courier fees, arguing that they are beyond the scope of taxable costs under Federal Rule of Civil Procedure 54, Local Rule 54-3, of 28 U.S.C. § 1980. See Opp'n at 34-35. Plaintiff argues that he can recover all reasonable costs based on the language of the Settlement Agreement. See Reply at 21.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. "A court must first look to the plain meaning of the agreement's language." Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006) (citing Cal. Civ. Code §§ 1638, 1644). However, where an agreement uses technical words, such "words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." Cal. Civ. Code § 1645.

Here, the Settlement Agreement provides that Plaintiff may recover "reasonable attorneys' fees and costs" from Defendants. Settlement Agreement, § III.B. In the context of federal litigation, the term "costs" most commonly refers to taxable costs as defined under 28 U.S.C. § 1920 (and, where applicable, § 1821). See Rimini St., Inc., v. Oracle USA, Inc., 139 S. Ct. 873, 877 (2019) (referring to §§ 1821 and 1920 as the "general 'costs' statute" and explaining that these sections "in essence define what the term 'costs' encompasses" in federal statutes providing for an award of costs); see also Fed. R. Civ. P. 54; L.R. 54-3. Moreover, Plaintiff would not be entitled to such costs if he had prevailed on either his copyright infringement claims or his RICO claims. See Rimini, 139 S. Ct. at 878 (interpreting "full costs" under 17 U.S.C. § 5050 to be limited to costs under 28 U.S.C. §§ 1821 and 1920, stating rule that a "statute awarding 'costs' will not be construed as authorizing an award of litigation expenses beyond the six categories listed in §§ 1821 and 1920, absent an explicit statutory instruction to that effect"); Ally Bank v. Karakasevic, No. 11-0896, 2016 WL 7971245, at *3 (N.D. Cal. Dec. 19, 2016), report and recommendation adopted sub nom. Fid. Nat'l Title Ins. Co. v. Castle, 2017 WL 11628063 (N.D. Cal. Jan. 24, 2017) ("As the prevailing parties in this action, Plaintiffs may recover attorneys' fees pursuant to RICO (see 18 U.S.C. § 1964(c)) and costs pursuant to 28 U.S.C. § 1920 and Civ. L.R. 54-3.").

Accordingly, the Court interprets the phrase "reasonable . . . costs" in the Settlement Agreement to refer to taxable costs under § 1920. Of Plaintiff's claimed costs, only the following are compensable as taxable costs: $402 in filing fees, $939.96 in fees for service of process, $3,256.35 in deposition costs ($4,598.31 in total).[6] The Court therefore deducts all other costs ($23,418.23 in total) from the cost award.

**C.     The Court Declines to Adjust the Fee Award Upward or Downward**

The Court has discretion to adjust the lodestar amount based on (1) the contingent nature of the fee award, (2) the results obtained, (3) the novelty and complexity of the issues involved and counsel's skill displayed, and (4) the extent to which the nature of the litigation precluded other employment. See Parkinson, 796 F. Supp. 2d at 1170. A multiplier should be used to adjust the lodestar amount only in "rare and exceptional cases . . . [where] the lodestar amount is unreasonably low or unreasonably high." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotation marks omitted).

Here, Plaintiff argues that a multiplier of 1.5 is appropriate. See Motion at 13-16. Defendants argue that (i) Plaintiff is not entitled to a multiplier, and (ii) the fee award should be reduced by 75% based on Plaintiff's partial success. See Opp'n at 26-29, 35; see also Dkt. 150 (collecting cases involving downward reduction based on limited success of claims). The Court concludes that neither a multiplier nor a downward adjustment is warranted.

First, the nature of this case does not warrant a multiplier. "The purpose of . . . multiplier[] for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." Ketchum v. Moses, 24 Cal.4th 1122, 1132 (2001). Although Plaintiff's counsel took on some risk in pursuing this claim, much of that risk was based on the Wakefield II Settlement Agreement—a contract that Plaintiff entered into while represented by Brockland. See Brockland Decl. ¶ 26. Finally, while Plaintiff argues that there was risk inherent in this litigation based on Defendants' demonstrated ability to "drag out this litigation for years," Motion at 15, Plaintiff's fee award adequately compensates Plaintiff's counsel for their time spent on motion practice.

Second, while the terms of the Settlement Agreement reflect a degree of success for Plaintiff, it is not such a high degree of success as to warrant an upward multiplier. In general, in cases where a plaintiff obtains "only partial or limited success, the product of

---

[6] Pro hac vice and various related fees are not taxable. See L.R. 54-3.1. Likewise, costs for videotaping or recording are not taxable unless recording of the deposition by video or audio means was ordered by the Court before the taking of the deposition. See L.R. 54-3.5.

hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). In that case, the court has discretion to "attempt to identify specific hours that should be eliminated, or it may simply reduce the award" based on the degree of success. Id. at 436-37. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435. "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

Here, the terms of the Settlement Agreement are less favorable to Plaintiff than a judgment in his favor on each of his claims may have been. For example, the payment Plaintiff obtained ($95,000 per alleged infringing sculpture) does not reflect the treble damages sought in his RICO claim and is less than the statutory damages he sought ($150,000 per sculpture). See Dkt. 1 at 26. However, Plaintiff recovered nearly two-thirds of the amount he sought in statutory damages for each alleged infringing sculpture, took ownership of the alleged infringing sculptures, secured a remedy for any other substantially similar sculpture discovered on Defendants' property in the future, and established his entitlement to reasonable attorneys' fees and costs. See Settlement Agreement §§ III.B, III.C, III.J, III.L. In contrast, Plaintiff owes Defendants nothing in connection with this litigation. See id., § III.K. Given this, the Court concludes that the fee award set forth in this Order is proportional to the degree of success Plaintiff obtained in this case.

Third, this case did not present novel or difficult issues to justify a multiplier. While Plaintiff highlights that he is one of few plaintiffs to successfully argue entitlement to attorneys' fees for pre-registration infringement under an exception to Section 412 of the Copyright Act, see Motion at 14, the filings in this case do not suggest that this issue was extensively litigated. See, e.g., Dkt. 113 at 20-23 (devoting less than four pages of summary judgment opposition brief to statutory damages issue).

Fourth, Plaintiff has not shown that the nature of this case precluded counsel from engaging in other employment. While Plaintiff's counsel certainly devoted significant time to this matter, the lodestar figure, which includes above-average billing rates for Brockland and Miller, the two attorneys who billed the greatest number of hours on this case, is sufficient to compensate counsel for their time spent. See Brockland Decl. ¶¶ 87, 89. Accordingly, apart from the deductions outlined above, the Court declines to make further adjustments to the fee award.

## IV.   CONCLUSION

Plaintiff's Motion is GRANTED. Applying the lodestar method using the reduced attorney hours and costs discussed above, the Court finds that Plaintiff is entitled to a total award of $1,175,979.27. Defendants shall pay this award in accordance with the terms of the Settlement Agreement.